**SCHONBRUN SEPLOW**
**HARRIS HOFFMAN & ZELDES, LLP**
HELEN I. ZELDES (220051)
hzeldes@sshhlaw.com
BEN TRAVIS (305641)
btravis@sshhlaw.com
501 W. Broadway, Suite 800
San Diego, CA 92101
Telephone: (619) 400-4990

PAUL L. HOFFMAN (71244)
hoffpaul@aol.com
JOHN C. WASHINGTON (315991)
jwashington@sshhlaw.com
200 Pier Avenue, #226
Hermosa Beach, CA 90245
Telephone: (310) 396-0731

CATHERINE E. SWEETSER (271142)
csweetser@sshhlaw.com
11543 West Olympic Blvd.
Los Angeles, CA 90064
Telephone: (310) 396-0731

**INTERNATIONAL RIGHTS ADVOCATES**
TERRENCE P. COLLINGSWORTH
(pro hac vice forthcoming)
tc@iradvocates.org
621 Maryland Ave NE
Washington, D.C. 20002
Telephone: (202) 543-5811

*Attorneys for Plaintiff,*
LORI MYERS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORI MYERS, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>STARBUCKS CORPORATION, a Washington Corporation; MARS, INC., a Delaware Corporation; THE QUAKER OATS COMPANY, a New Jersey Corporation and; DOES 1-10, inclusive,<br><br>Defendants. | Case No:<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Lori Myers ("Plaintiff") brings this action, on behalf of herself and all others similarly situated against Starbucks Corporation ("Starbucks"), Mars Inc. ("Mars"), The Quaker Oats Company ("Quaker") and Does 1-10 (collectively "Defendants"). Plaintiff alleges the following based upon information and belief, the investigation of counsel, and personal knowledge as to the allegations pertaining to herself.

## NATURE OF THE CASE

1.      Defendants, some of the largest retailers of chocolate products in the United States, profit off the booming market for social and environmentally conscious goods by labeling their products as sustainably and/or ethically sourced. In reality, Defendants know the chocolate used in those products is anything but.

2.      Defendants' chocolate is not the product of sustainable farming practices but unethical child and slave labor in West Africa.  A recent study conducted by Tulane University concluded that more than 2 million children are involved in the Worst Forms of Child Labor on cocoa plantations in Cote d'Ivoire and Ghana, where Defendants' chocolate is sourced.[1] Child slavery is endemic in cocoa harvesting in West Africa[2] and the "Chocolate industry drives rainforest disaster in [the] Ivory Coast" – so much so, that at the current pace of deforestation there will be no forest left in the Ivory Coast by 2030.[3]

---

[1] https://makechocolatefair.org/sites/makechocolatefair.org/files/newsimages/tulane_university_-_survey_research_on_child_labor_in_the_cocoa_sector_-_30_july_2015.pdf

[2] See, e.g., Peter Whoriskey and Rachel Siegel, *Cocoa's child laborers*, Wash. Post, June 5, 2019, https://www.washingtonpost.com/graphics/2019/business/hershey-nestle-mars-chocolate-child-labor-west-africa/.

[3] https://www.theguardian.com/environment/2017/sep/13/chocolate-industry-drives-rainforest-disaster-in-ivory-coast

3. Notwithstanding knowing that its cocoa is primarily procured from farms using the Worst Forms of Child Labor, Starbucks fraudulently claims its Hot Cocoa Mix products are made with "ethically sourced cocoa" and that it "purchas[es] cocoa that's grown and traded in an ethical and transparent way."

4. Dove similarly claims its chocolate is "traceable from the farms into [their] factory" and deceptively displays the Rainforest Alliance seal – inducing consumers to believe its chocolate is also ethically and ecologically produced.

5. Quaker expressly claims that its Chocolate Chip Chewy Bars "support sustainably sourced cocoa through Cocoa Horizons" and "Cocoa Horizons aims to improve the livelihood of cocoa farmers and their communities through the promotion of sustainable farming practices," all the while knowing its supply chain is rife with child slave labor and causing massive deforestation. It is abhorrent to equate slavery, child labor and massive deforestation to a "sustainable" or "ethical" practice.

6. Defendants' labeling misleads consumers into believing their products are procured in accordance with socially and/or environmentally responsible standards, when they know they are not.

It is an exceedingly profitable fib:  the "sustainability" market is booming:  "42% of global consumers want more new products in the market that are socially responsible and environmentally friendly."[4]  Nielsen studies show

---

[4] *See* Nielsen (the leading global analytics company that provides statistics on "what consumers watch and buy") presentation "The Sustainability Imperative: Consumer Expectations & How to Grow with Sustainability" at: https://www.utz.org/wp-content/uploads/2016/06/Nielsen_Customer-Expectations-How-to-drive-growth-with-sustainability-UTZ-June-2016-sent.pdf at 22.

that sustainable chocolate vastly outperforms competition and sustainability claims sell.[5]

7.     Plaintiff was misled by the affirmative misrepresentations on Defendants' product packaging concerning the ethical sourcing, traceability and environmentally responsible procurement of their cocoa. Had she been aware of the misrepresentations described herein, she would not have purchased Defendants' products.

8.     Plaintiff thus brings this action pursuant to: (i) California's Business & Professions Code §§ 17200, et seq. (the Unfair Competition Law or "UCL"); and (ii) California Civil Code §§ 1750, et seq. (the Consumers Legal Remedies Act or "CLRA"). Plaintiff brings this action on behalf of a nationwide class for restitution and injunctive relief, and any other relief deemed appropriate by the court to which this case is assigned.

## I.   JURISDICTION AND VENUE

9.     This Court has personal jurisdiction over Defendants, because Defendants have conducted and continue to conduct business in the State of California, and because Defendants have committed the acts and omissions complained of herein in the State of California.

10.     This court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. 1332(d), as Plaintiff (California), Starbucks (Washington), Mars (Virginia) and Quaker (New Jersey) are diverse, there are over 100 class members, and the amount in controversy exceeds $5 million.

---

5 See "Sustainability Sells: Linking Sustainability Claims to Sales" at: https://www.nielsen.com/us/en/insights/article/2018/sustainability-sells-linking-sustainability-claims-to-sales/; and "What's Sustainability Go to do With it?" at: https://www.nielsen.com/us/en/insights/report/2018/whats-sustainability-got-to-do-with-it/

11.     Venue is proper in the Central District of California, because a substantial portion of the acts giving rise to this action occurred in this district. Specifically, Plaintiff purchased the offending cocoa products within this District.

## II.     PARTIES

12.     **Plaintiff Myers** is, and at all times mentioned herein was, an individual citizen of the State of California and resident of Moreno Valley, California. On several occasions during the Class period, including in or about December 2019, Plaintiff purchased Defendant Starbucks' hot cocoa products labeled with the "made with ethically sourced cocoa" labeling on them purporting that the company, "purchas[es] cocoa that's grown and traded in an ethical and transparent way." On several occasions during the Class Period, Plaintiff purchased Defendant Mars' Dove dark chocolate bar products labeled as "traceable from the farms into [their] factory." On several occasions during the Class period, including in or about December 2019, Plaintiff purchased Defendant Quaker's Chocolate Chip Chewy bar products labeled with "supports sustainably sourced cocoa through Cocoa Horizons" and "Cocoa Horizons aims to improve the livelihood of cocoa farmers and their communities through the promotion of sustainable farming practices."

13.     Plaintiff relied upon Defendants' misrepresentations about the social standards and practices in place in their supply chains in making her decision to purchase the products. Plaintiff suffered injury in that she would not have bought the hot cocoa, Dove, or Chewy products had she known that the products were not "ethically sourced" not "traceable" and not "sustainable" but rather produced off the backs of child and slave labor.

14.     **Defendant Starbucks** is a Washington corporation with its principal place of business in Seattle, Washington. It is one of the largest coffee houses and coffee manufacturers in the world and also manufactures a line of hot chocolate

15.     **Defendant Mars** is a Delaware corporation with its principal place of business in McLean, Virginia. It owns Dove chocolate and is one of the largest chocolate manufacturers in the world.

16.     **Defendant Quaker** is a New Jersey corporation with its principal place of business in Chicago, Illinois. It is a large American food conglomerate.

## III.   FACTUAL ALLEGATIONS

### A.   The Cocoa Supply Chain in West Africa:
Child Labor and Environmental Degradation Are Well-Known and Undisputed

17.     Starbucks, Mars and Quaker are well aware that cocoa farming in West Africa relies heavily on child labor and slavery. Children on Ivorian cocoa plantations are subjected to what the International Labor Organization (ILO) terms the "Worst Forms of Child Labor" – including trafficking, slavery, and exposure to toxic chemicals and hazardous tools.

18.     Rather than decreasing after various industry commitments made over more than two decades, child labor has increased in West Africa. According to the 2015 Tulane Report, a major study of the West African cocoa industry commissioned by the United States Department of Labor, the increase in cocoa production has also led to a growth in child laborers to 2.1 million children in Côte d'Ivoire and Ghana.[6] Of this number, 1,153,672 children working in the cocoa sector are involved in hazardous work, including using machetes to cut trees or cocoa pods, burning fields, carrying heavy loads, handling agro-pharmaceutical products, as well as being deprived of schooling.[7]

---

[6]https://makechocolatefair.org/sites/makechocolatefair.org/files/newsimages/tulane_university_-_survey_research_on_child_labor_in_the_cocoa_sector_-_30_july_2015.pdf

[7] *Id.*

19.     Recent studies have also confirmed the longstanding claim that many of the children who perform hazardous work on cocoa plantations in West Africa do so under conditions of forced labor. In Côte d'Ivoire alone, between 2013 and 2017, an estimated 2,000 children were forced to work without remuneration by someone other than a parent. During the same period, 14,000 children were estimated to be victims of forced child labor in the cocoa agriculture sector in Ghana.[8]

20.     The U.S. Department of Labor describes the conditions of forced labor in chilling detail: "[s]ome children are sold by their parents to traffickers, some are kidnapped, and others migrate willingly but fall victim to traffickers who sell them to recruiters or farmers, where they end up in conditions of bonded labor. Some farmers buy the children and refuse to let them leave the farm until the debt of their purchase has been worked off. The children are frequently not paid for their work; some of their wages are paid to the recruiter or trafficker. These children are held against their will on isolated farms, are locked in their living quarters at night, and are threatened and beaten if they attempt to escape. They are punished by their employers with physical abuse. They are forced to work long hours, including overtime, and are required to work even when they are sick. Some children are denied sufficient food by their traffickers and employers."[9]

21.     The number of cocoa farmers in Côte d'Ivoire and Ghana is estimated to be around 2 million. The majority of these farmers are also dispersed around the country in a region called the "cocoa belt," located across the southern region of Côte d'Ivoire.

22.     Their small operation and fragmented presence across the country favor a system in which farmers sell to intermediaries who collect the beans and

---

[8] https://www.globalslaveryindex.org/2018/findings/importing-risk/cocoa/
[9] https://www.dol.gov/sites/dolgov/files/ILAB/reports/EO_Report_2014.pdf

gather them in warehouses. These intermediaries are either cooperatives, where the farmers are part of a cooperative system, or individuals called "middlemen", who are not part of any formal organization. Middlemen collect beans across diverse farms in the cocoa belt, where no monitoring takes place, to sell to grinders or traders, and then to manufacturers such as Defendants.

23.     In Cote d'Ivoire, a small percentage of farmers, estimated at 20%, are in a formal cooperative system. ***In other words, the vast majority of the cocoa sourced in the country comes from untraceable farms***, in which child and slave labor is a common and widespread practice.

24.     Defendants Starbucks and Mars, with their businesses dependent on cocoa from Côte d'Ivoire, both through their own business operations and their membership and participation in industry groups like the World Cocoa Foundation (WCF)[10], have knowledge of the many public reports on the widespread use of child labor harvesting cocoa on the farms they were working with and purchasing from.  At the most recent 8th Annual World Cocoa Foundation Meeting in August 2018 the industry admitted it could not make its 2020, or even 2025 goal of eradicating child labor in the cocoa supply chain. Effectively abandoning any set date, the Foundation admitted it was not likely it would meet its "aspiration for 2020" nor other targets "for the eradication of child labor by 2025.[11]

25.     Defendant Quaker, both through its own business operations and its participation in Cocoa Horizons, has knowledge of the many public reports on the widespread use of child labor harvesting cocoa on the farms it works with and purchases from.

---

[10] https://www.worldcocoafoundation.org/about-wcf/members/
[11] https://www.worldcocoafoundation.org/blog/2018-child-labor-cocoa-coordinating-group-8th-annual-meeting-remarks/

26.     There has been extensive public reporting from official and credible sources that documents the endemic problem of child labor in the cocoa sector of West Africa. Defendants, along with the rest of the cocoa industry, are  aware of this reporting and have specific knowledge of the extensive child labor in the cocoa sector.

**B.     Defendants Nevertheless Deceptively Label their Chocolate as "Ethically Sourced" "Traceable" or "Sustainable"**

27.     Notwithstanding Defendants' knowledge that the cocoa supply chain in Cote d'Ivoire and Ghana is inundated with child labor and child slave labor, Defendants have the audacity to place patently false statements on their products, purporting that they are made of "ethically sourced" cocoa or that they are fully "traceable" from the farms to the factory where they are manufactured or that they support "sustainably sourced cocoa". .These statements stand in stark contrast with reality.

**Starbucks' Labeling Misrepresentations**

28.     Starbucks' Double Chocolate Hot Cocoa, Salted Caramel Hot Cocoa and Marshmallow Hot Cocoa products prominently display on their front packaging that they are made with "ethically sourced" cocoa.  This statement is also accompanied by another claim that appears on the side of the packaging purporting that "Starbucks is committed to purchasing cocoa that's grown in an ethical and transparent way".

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16
17
18
19
20
21

29.   **Starbucks' Chocolate is Sourced from Child and Slave Labor in West Africa.**  Starbucks' chocolate is sourced from farms in West Africa.  As Starbucks - as a member of the World Cocoa Foundation[12] - is well-aware, child labor and slave labor is endemic in its West African cocoa supply chain and there is no way it can assure its cocoa is "ethically sourced". **Starbucks' "Ethical" Sourcing Labeling is False and Misleading**

22
23
24
25
26

30.   Ethical sourcing is commonly understood as ensuring that decent labor standards are met during the manufacturing of products, including at the sourcing material stage. In involves paying fair wage to everyone involved at any stage of the products' development, ensuring them safe and hygienic conditions, reasonable hours and ensuring that no children are working in the supply chain.

27
28

[12] https://www.worldcocoafoundation.org/about-wcf/members/

31.   In other words, ethical sourcing is the process of ensuring that the products made are obtained through responsible and sustainable methods, including ensuring that all human rights of the workers are met, and that all social and environmental aspects of the workers and the surrounding communities are considered.[13]

Starbucks makes false ethical claims on its packaging. It also makes these statements without any supporting evidence, in an attempt to mislead ethical consumers and to boost its sales.

**1.    There Are No "Ethical" Environmental Protocols in Place in Starbucks' Cocoa Supply Chain**

32.    Starbucks' production and purchasing mechanisms in West Africa do not follow any sustainable environmental protocols, and adversely affect the local ecosystem.

33.   The rainforest in Côte D'Ivoire has decreased from 16 million hectares in 1960, making up half of the country, to less than 2 million hectares by 2010.  Starbucks' overproduction and indiscriminate purchasing in Côte D'Ivoire has contributed to this mass deforestation. An estimated 40 percent of the Ivorian cocoa harvest currently comes from inside classified or protected areas. This has devastating consequences not only for biodiversity and the local microclimate (including desertification and changing weather patterns).

34.   Many of Côte D'Ivoire's national parks and protected areas have been entirely or almost entirely cleared of forest and replaced with cocoa growing operations. For years, the world's major chocolate companies have been buying cocoa grown through the illegal deforestation of national parks and other protected forests, in addition to driving extensive deforestation outside of protected areas.

---

[13] http://www.intertek.com/blog/2016-11-15-ethical-sourcing/

35.     In the world's two largest cocoa producing countries, Ivory Coast and Ghana, the market created by the chocolate industry, including by Starbucks' active participation, has been the primary source for the destruction of environmentally protected areas. As Mighty Earth reports, "many of the country's national parks and conservation lands have been cleared of their forest to make way for cocoa operations to feed demand from large chocolate companies".[14]

36.     Starbucks currently has no protocols in place to prevent purchasing cocoa produced on protected lands. Additionally, upwards of 80 percent of cocoa production and sales are done without properly tracing the source of the cocoa. Accordingly, a large percentage of Starbucks' cocoa is knowingly grown in and purchased from protected nature reserves. As demand continues to expand in cocoa production, rainforests are cut down for new cocoa fields.

37.     In addition to mass deforestation, the current known and common practices around cocoa farming is not sustainable. There is excessive use of fertilizers and pesticides and a loss of biodiversity. Chemicals pollute waterways, killing wildlife and harming communities. Deforestation exposes shade-dependent plants to full sun, which increased the biosphere's susceptibility to disease.

## 2.     Slavery and Forced Child Labor Are Not "Ethical" Sourcing Practices

38.     The number of children working in dangerous conditions on cocoa farms in West Africa has increased considerably in recent years and Starbucks' sourcing practices have not contributed to improving the living conditions of cocoa producers or of children.

39.     Starbucks cannot publicly claim that it adopts "ethical sourcing practices" and that it is committed to buying cocoa produced in an ethical manner when in fact, its sourcing practices are perpetuating a system that relies on, and

[14] http://www.mightyearth.org/wp-content/uploads/2017/09/chocolates_dark_secret_english_web.pdf

thus increases child labor and child slave labor. A value chain that furthers structural poverty and child slave labor can never be called ethical.

40.     Child and Forced Labor are a well-known scourge in the cocoa industry, and Starbucks has knowledge that the use of child labor and trafficking remains widespread and endemic. As stated in the latest Cocoa Barometer Report: "Not a single company or government is anywhere near reaching the sector-wide objective of the elimination of child labour, and not even near their commitments of a 70% reduction of child labour by 2020."[15]

### 3.     Starbucks' COCOA Program is Deceptive

41.     Starbucks' internal certification program is a clear attempt by Defendant to profiteer off a growing market trend of ethical consumers, without taking tangible actions to eradicate these practices in its supply chain.

42.     Starbucks makes misleading ethical claims on its packaging and attempts to justify them with its COCOA program and its participation in the World Cocoa Foundation.

43.     Starbucks' COCOA program, however, consists solely of mandating verification organizations to audit farms. These third-party organizations are trained and audited by another global organization, SCS Global Services, and not by Starbucks itself. Starbucks provides no data regarding the number of farms that are audited through this program, the results of the audits, the number of children found in child labor or forced labor situations and the measures taken if incidents are found.

44.     What is well-known, however, is that "untraced cocoa" constitutes approximately 80% of cocoa production in West Africa. Therefore, even the flawed monitoring and auditing programs the industry purports to have in place only – at best -- take place in a fraction of the farms providing cocoa to any

---

[15] https://www.voicenetwork.eu/wp-content/uploads/2019/07/2018-Cocoa-Barometer.pdf

company sourcing cocoa in West Africa, including Starbucks. Any ethical sourcing claims are without substantiation as Starbucks does not know the working conditions and child labor occurrence of most farms from which it procures cocoa.

45.    More importantly, the COCOA program does not provide any prevention, mitigation or remediation actions to ensure that human rights violations, including child and slave labor, are being addressed and remediated, in general in its supply chain. Child and slave labor are so widespread in this industry that Starbucks cannot contend its cocoa is "ethical" while it has virtually no program in place to address this issue.

46.    Starbucks' membership in the World Cocoa Foundation ("WCF") is also far from ensuring consumers that the cocoa procured by Starbucks is "ethical". The WCF is an almost exclusively industry-backed body and does not insure cocoa is child or slave labor-free, rather admits that the industry cannot meet its goals on this front.

47.    Starbucks makes false assurances that its Hot Cocoa Mix products are "ethically sourced" but Starbucks has set in place no measures to actually ensure that its supply chain is free of child and slave labor and that farmers are paid a fair and decent wage for their labor, making the claims baseless and deceptive for consumers who rely on the packaging before making purchasing decisions.

48.    Starbucks knowingly misleads consumers by conveying an ethical image, inconsistent with what its sourcing practices really are.

**Mars' Labeling Misrepresentations**

49.    Mars advertises its Dove dark chocolate bar products as "traceable from the farms to [their] factories" and prominently displays the Rainforest Alliance Certification seal on the back of their packaging, a third-party certifier which holds itself out as the benchmark for the sustainable production of cocoa. Rainforest Alliance certified products supposedly stand for ethical and sustainable

farming, including better working conditions and better care for the natural environment.



50. **Mars' Chocolate is Sourced from Child and Slave Labor in West Africa.** Mars' chocolate is sourced from farms in West Africa.  Mars is well-aware that no organization in West Africa has the ability to trace chocolate in such a way at this time.   Mars is a member of the World Cocoa Foundation and knows that it's "pledge to use 100% certified cocoa by 2020"[16] is not attainable. See footnotes 10, 11; and *supra*. Nevertheless, Dove continues to promote and profiteer off its sustainability myth.

---

[16] https://dovechocolate.com/tagged/superiorchocolate

### 1.   Mars Does Not Trace Most of its Beans, Making Any "Traceability" Claims Baseless

51.    Chocolate companies, including Mars, still cannot identify the farms where all their cocoa comes from. Mars can, at best, trace only 24 percent of its cocoa back to farms,[17]  let alone track whether child labor was used in producing it.

52.    Mars' claims on its Dove chocolate bars that they are "traceable from the farms to [their] factories" are thus patently misleading, because no chocolate company in the industry has so far achieved traceability.

53.    Traceability is a profitable misrepresentation because it resonates with consumers, leading them to believe that the chocolate is procured transparently through "fair trade" practices.

54.    Mars cannot substantiate its traceability claims since it does not know the working conditions and child labor instances in the vast majority of farms where it procures cocoa.  Mars cannot make traceability claims as it does not know the social practices occurring in the overwhelming number of these farms and simply does not know who its suppliers are.

### 2.   The Rainforest Alliance Seal Used by Dove Dark Chocolate on its Product Labels is Misleading.

55.    Dove dark chocolate bar products couple their false assurances of "traceability" with the bogus seal of the Rainforest Alliance Certification (which is responsible for almost 80% of so-called certified cocoa).

56.    A recent report sheds light on the fact that "certification programs have failed to lift farmers out of poverty or achieve any significant industry-wide

---

[17] https://www.washingtonpost.com/graphics/2019/business/hershey-nestle-mars-chocolate-child-labor-west-africa/

improvements, and give consumers a misleading impression that farmers experience decent conditions."[18]

57.     Rather than a serious program aimed at helping farmers, Rainforest Alliance runs a business-friendly certification, one that lacks social and environmental standards and is poorly enforced.[19]

58.     A recent study reports that almost all cocoa workers "do not know whether the farms where they were employed were certified or not, and many farmers were unaware of whether their farms were certified or, if they were, what certification required of them."[20] This is important because the certification programs rely heavily on ***self-reporting*** and ***self-verification*** as the primary mechanism for auditing and reporting – both an incredibly unrealistic mechanism (demanding that a child victim stand up to their oppressor or a farmer risk losing their certificates), and a highly inaccurate measure. Indeed, only a small percentage of certified farmers are even aware of the minimum age for children to work on their farm.

59.     Additionally, auditing takes place in less than 40% of these "certified" farms and most schemes rely heavily on "self-verification" by farmers.

60.     Further, Rainforest Alliance, like the other so-called "fair trade" initiatives mislead the public by creating the false impression that they are certifying cocoa as child-labor-free when they do not in fact assess the extent of child labor in their member companies' production. In addition, Rainforest Alliance admits that in West Africa they mix "certified" beans with uncertified beans to maintain supply.

---

[18]https://static1.squarespace.com/static/5810dda3e3df28ce37b58357/t/5d321076 f1125e0001ac51ab/1563562117949/Empty_Promises_2019.pdf, page 15.
[19] *Id.*
[20] *Id.*

61.     The *Washington Post* recently exposed the reality of these sham programs that do little more than mislead consumers into thinking that "fair trade" means child labor free.[21] By now, after years of a mutually-beneficial relationship, Rainforest Alliance is essentially an integrated extension of the cocoa industry. For example, Han de Groot, President of Rainforest Alliance is a member of Nestle/Nespresso's external board of directors.

62.     Rainforest also purports to pay farmers a premium for joining cooperatives which allegedly use fair labor. In fact, the small premium is usually not paid to farmers. Instead, it is paid directly to the cooperatives, who retain it for their own benefit with no financial remuneration to the cocoa farmers.

63.     Rainforest Alliance's ineffectual nature is known to Mars, as is the fact that beans are untraceable and not monitored by blockchain or any other technology.

64.     Meanwhile, Dove products continue to sell the image of offering consumers "fair trade" products, when in fact, the auditing standards and requirements are watered down, "certified" farmers receive virtually no higher benefits to lift them out of poverty, and consumers are further deceived.

**Quaker Oat's Labeling Misrepresentations**

65.     Quaker's Chocolate Chip Chewy Bars prominently display on the front of their packaging that they "support[] sustainably sourced cocoa through Cocoa Horizons." This claim is accompanied by another claim on the back of the packaging that, "Cocoa Horizons aims to improve the livelihood of cocoa farmers and their communities through the promotion of sustainable farming practices."

---

[21] Peter Whoriskey, *Chocolate companies sell 'certified cocoa.' But some of those farms use child labor, harm forests*, WASH. POST, Oct. 23, 2019, https://www.washingtonpost.com/business/2019/10/23/chocolate-companies-say-their-cocoa-is-certified-some-farms-use-child-labor-thousands-are-protected-forests/.

COMPLAINT



66.    **Quaker Oat's Chocolate is Sourced from Child and Slave Labor in West Africa.** Cocoa Horizons sources its chocolate from West Africa and no organization in West Africa has the ability to trace chocolate in such a way at this time.  Nevertheless, Quaker Oats intentionally or recklessly continues to promote and profiteer off its sustainability myth.

              **1.**      **Quaker's "Sustainable" Labeling is False and Misleading**

67.    Quaker makes false sustainability claims on its packaging that it "supports sustainably sourced cocoa through Cocoa Horizons." It makes these sustainability statements without any supporting evidence and these statements are misleading.

68.    Chocolate companies, including Quaker, still cannot identify the farms where all their cocoa comes from, let alone whether child labor was used in producing it.

69.     Meanwhile, sustainability is a highly profitable misrepresentation because it resonates with consumers, leading them to believe that the chocolate is procured transparently through "fair trade" practices, where farmers and workers are economically viable, and where child labor occurrences do not happen.

70.     Quaker cannot substantiate its sustainability claims since it does not know the working conditions and child labor instances in the vast majority of farms where it procures cocoa.  Quaker cannot make sustainability claims as it does not know the social practices occurring in the overwhelming number of these farms and simply does not know who its suppliers are.

### 2.    Cocoa Horizons Promoted on Quaker Products is Misleading

71.      The Quaker Chocolate Chip Chewy Bar products couple their false assurances of "sustainability" with the reference to the deceptive Cocoa Horizons labeling.

72.     Cocoa Horizons is a nonprofit formed by Barry Callebaut, one of the world's largest cocoa processors and chocolate manufacturers.  Cocoa Horizon's programs are implemented by Barry Callebaut.[22]

73.     Cocoa Horizons' claims its mission is to improve the livelihoods of cocoa farmers and their communities through the promotion of sustainable, entrepreneurial farming, improved productivity, and community development, which protect nature and children.[23] However, Barry Callebaut themselves admitted recently that only 26% of the farmer groups from which it sourced products in 2018-2019 had programs to prevent child labor.[24]

---

[22] https://www.cocoahorizons.org/program

[23] *Id.*

[24] https://www.reuters.com/article/us-barry-callebaut-cocoa/barry-callebaut-cites-progress-in-helping-cocoa-farmers-tackle-child-labor-idUSKBN1Y72BJ

74. Quaker's reference to Cocoa Horizons on the labels is misleading and intended to deceive the customer into believing that the cocoa is actually being sourced from sustainable and child-labor free farms when the vast majority of it is not.

75. All of these claims are blatantly exhibited on Defendants' product packaging. Reasonable consumers, such as Plaintiff, considered Defendants' assertions and relied upon them as true when choosing whether to purchase these products, and would not have done so had they known the truth behind these labels.

## CLASS ACTION ALLEGATIONS

76. Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other similarly situated individuals (the "Class"), defined as follows:

> All United States residents who purchased Defendants' Products marked with the "ethically sourced", "traceability" or "sustainable" claims within the United States from the period of four years prior to the filing of this Complaint to the present. Excluded from the Class are any of Defendants' officers, directors, or employees; officers, directors, or employees of any entity in which Defendants currently have or have had a controlling interest; and Defendants' legal representatives, heirs, successors, and assigns.

77. At this time, Plaintiff does not know the exact number of Class members; however, given the nature of the claims and the number of stores in the United States selling Defendants' Products, Plaintiff believes that the Class members are so numerous that joinder of all members is impracticable.

78.     There is a well-defined community of interest in the questions of law and fact involved in this case. The following questions of law and fact are common to the Class members and predominate over questions that may affect individual Class members:

1.     whether Defendants misrepresented the social benefits of products labeled with socially beneficial claims;

2.     whether Defendants' labeling, marketing, advertising, and/or selling of its products with socially beneficial misrepresentations constituted an unfair and/or deceptive trade practice;

3.     whether Defendants participated in and pursued the common course of conduct complained of herein;

4.      whether Defendants were enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendants to retain the benefits conferred upon them by Plaintiff and the other Class members; and

5.     whether Defendants' labeling, marketing, advertising, and/or selling of its products with socially beneficial misrepresentations violated the CLRA.

79.     Plaintiff's claims are typical of those of the Class because Plaintiff, like all Class members, purchased Defendants' products bearing the socially beneficial labeling in a typical consumer setting and sustained damages from Defendants' wrongful conduct.

80.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in litigating complex class actions. Plaintiff has no interests that conflict with those of the Class.

81.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

82.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met, as Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the Class as a whole.

83.     Defendants' conduct is generally applicable to the Class as a whole and Plaintiff seeks, inter alia, equitable remedies with respect to the Class as a whole. As such, Defendants' systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

84.     The requirements of Fed. R. Civ. P. 23(b)(3) are met as common issues predominate over any individual issues, and treatment of this matter as a class action is superior to numerous individual actions.

85.     The litigation of separate actions by Class members would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from performing the challenged acts, whereas another might not. Additionally, individual actions may be dispositive of the interests of the Class, although certain Class members are not parties to such actions.

**COUNT I**

**Unfair and Deceptive Acts and Practices In Violation of**

**the California Consumers Legal Remedies Act**

**(For Injunctive Relief Only)**

86.     Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint and further alleges as follows:

87.     This cause of action is brought pursuant to the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

88.   Plaintiff and the other Class members are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the products at issue for personal, family, or household purposes.

89.   Plaintiff and Defendants, and the other Class members and Defendants, have engaged in "transactions," as that term is defined by California Civil Code §1761(e).

90.   The conduct alleged in this complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA and the conduct was undertaken by Defendants in transactions intended to result in, and which did result in, the sale of goods to consumers.

91.   As alleged more fully above, Defendants have violated the CLRA by falsely representing to Plaintiff and the other Class members that the cocoa contained in their products is "ethically sourced", "traceable" or "sustainable".

92.   As a result of engaging in such conduct, Defendants have violated California Civil Code § 1770(a)(2), (a)(3), (a)(5), (a)(7), and (a)(9).

93.   Pursuant to California Civil Code § 1780(a)(2) and (a)(5), Plaintiff seeks an order of this Court that includes, but is not limited to, an order requiring Defendants to:

   a.   Remove and/or refrain from making statements representing that products are derived from alleged ethical farming or provide other social benefits; and/or

   b.   Remove and/or refrain from making representations that socially beneficial claims indicate that a product has been independently verified as having been produced using socially responsible practices.

94.   Plaintiff and the other Class members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

95.    The unfair and deceptive acts and practices of Defendants, as described above, present a serious threat to Plaintiff and the other Class members.

96.    Plaintiff seeks injunctive relief for violation of this Act.

97.    On February 19th, 2020, Plaintiff sent letters to Defendants via certified mail that provided notice of Defendants' violations of the CLRA and demanded that within thirty (30) days from that date, Defendants correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. The letters also stated that if Defendants refuse to do so, a complaint seeking damages in accordance with the CLRA will be filed. If Defendants fail to rectify the unlawful, unfair, false, and/or deceptive practices alleged herein, Plaintiff will seek leave to amend this Complaint to seek damages for violation of this Act.

## COUNT II

### Violation of California's Unfair Competition Law

98.    Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint and further alleges as follows:

99.    By committing the acts and practices alleged herein, Defendants have violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the Class as a whole, by engaging in unlawful, fraudulent, and unfair conduct.

100.    **Unlawful Conduct.** Defendants have violated the UCL's proscription against engaging in unlawful conduct as a result of violations of the CLRA, Cal. Civ. Code § 1770(a)(2), (a)(3), (a)(5), (a)(7), and (a)(9), as alleged above.

101.    **Unfair Conduct.** Defendants' acts and practices described above also violate the UCL's proscription against engaging in unfair conduct.

102.    Plaintiff and the other Class members suffered a substantial injury by virtue of buying products that they would not have purchased absent Defendants'

unlawful, fraudulent, and unfair marketing, advertising, packaging, and labeling or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly marketed, advertised, packaged, and labeled products.

103.   There is no benefit to consumers or competition from deceptively marketing and labeling products that purport to provide consumers with a socially responsible alternative to other products, as determined according to independent standards.

104.   Plaintiff and the other Class members had no way of reasonably knowing that the products they purchased were not as marketed, advertised, packaged, or labeled. Thus, they could not have reasonably avoided the injury each of them suffered.

105.   The gravity of the consequences of Defendants' conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other Class members.

106.   Defendants' violations of the UCL continue to this day. Pursuant to California Business and Professional Code § 17203, Plaintiff and the Class seek an order of this Court that includes, but is not limited to, an order requiring Defendants to:

      a.    Remove and/or refrain from making statements representing that its chocolate products are "ethically sourced" "traceable" or "sustainable";

      b.    Remove and/or refrain from making representations that the environmental and socially beneficial seals or certifications indicate that a product has been independently verified as having been produced using environmentally sound and socially responsible practices;

c.      provide restitution to Plaintiff and the other Class members;

d.      disgorge all revenues obtained as a result of violations of the UCL; and

e.      pay Plaintiff's and the Class's attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on behalf of herself and the Class as follows:

A.      an order certifying the proposed Class; appointing Plaintiff as representative of the Class; and appointing Plaintiff's undersigned counsel as Class counsel;

B.      a declaration that Defendants are financially responsible for notifying Class members of the pendency of this suit;

C.      an award of restitution pursuant to California Business and Professions Code §§ 17203 and 17535 for Class members;

D.      an award of disgorgement pursuant to California Business and Professions Code §§ 17203 and 17535 for Class members;

E.      an order enjoining Defendants' unlawful and deceptive acts and practices, pursuant to California Business and Professions Code §§ 17203 and 17535, to remove and/or refrain from making statements representing that its products are "ethically sourced" or "traceable";

F.      injunctive relief for Class members pursuant to California Civil Code §1780;

G.      an order awarding Plaintiff and the other Class members the reasonable costs and expenses of suit, including their attorneys' fees; and

H.      any further relief that the Court may deem appropriate.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury for all claims so triable.


Date: February 19, 2020          SCHONBRUN SEPLOW HARRIS
                                 HOFFMAN & ZELDES, LLP


                                 By: /s/ *Helen I. Zeldes*
                                 Helen I. Zeldes (220051)
                                 hzeldes@sshhlaw.com
                                 501 W. Broadway, Suite 800
                                 San Diego, CA 92101
                                 Telephone: (619) 400-4990

                                 Attorneys for Plaintiff,
                                 LORI MYERS

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT