David A. Forkner (*pro hac vice to be filed*)
David M. Horniak (State Bar No. 268441)
Youlin Yuan (*pro hac vice to be filed*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
E-mail: dforkner@wc.com
E-mail: dhorniak@wc.com
E-mail: yyuan@wc.com

John K. Rubiner (State Bar No. 155208)
FREEMAN MATHIS & GARY, LLP
550 South Hope Street, Suite 2200
Los Angeles, CA 90071
Telephone: (213) 615-7060
E-mail: jrubiner@fmglaw.com

*Attorneys for Defendant Mars Wrigley Confectionery US, LLC*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

LORI MYERS, an individual, on behalf of herself and all others similarly situated,

Plaintiff,

vs.

STARBUCKS CORPORATION, a Washington Corporation; MARS WRIGLEY CONFECTIONERY US, LLC, a Delaware Corporation; THE QUAKER OATS COMPANY, a New Jersey Corporation; and DOES 1–10, inclusive,

Defendants.

**Case No. 20-CV-00335-CJC-SHK**

**MARS'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Hearing Date: August 3, 2020
Time: 1:30 p.m.
Place: Courtroom 7C
Judge: Hon. Cormac Carney

**NOTICE OF MOTION**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 3, 2020, at 1:30 p.m., or as soon thereafter as this matter may be heard, either in Courtroom 7C of this Court, located at 350 West 1st Street, Los Angeles, California, or by videoconference or teleconference (if the Court prefers), Defendant Mars Wrigley Confectionery US, LLC will and hereby does move the Court for an order dismissing Plaintiff's First Amended Complaint for Violation of California Consumer Protection Laws and each claim therein without leave to amend.

This Motion is made pursuant to Federal Rules of Civil Procedure 8(a), 9(b), 12(b)(6), and 12(f) on the grounds that:

I. Plaintiff has failed to state a claim because no reasonable consumer would be deceived by DOVE® Dark Chocolate labels;

II. Plaintiff lacks standing to seek injunctive relief under Article III of the United States Constitution; and

III. Plaintiff cannot pursue claims on behalf of a nationwide class.

The Motion is based upon this Notice; the accompanying Memorandum of Points and Authorities, Request for Judicial Notice, declarations, and exhibits; any reply memorandum; the pleadings and files in this action; and such other matters as may be presented at or before the hearing. This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on April 16, 2020.

Dated: May 22, 2020

Respectfully submitted,

By: /s/ David M. Horniak

David A. Forkner (*pro hac vice to be filed*)
David M. Horniak (State Bar No. 268441)
Youlin Yuan (*pro hac vice to be filed*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
E-mail: dforkner@wc.com
E-mail: dhorniak@wc.com
E-mail: yyuan@wc.com

John K. Rubiner (State Bar No. 155208)
FREEMAN MATHIS & GARY, LLP
550 South Hope Street, Suite 2200
Los Angeles, CA 90071
Telephone: (213) 615-7060
E-mail: jrubiner@fmglaw.com

*Attorneys for Defendant Mars Wrigley Confectionery US, LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .... iv

MEMORANDUM OF POINTS AND AUTHORITIES .... 1

INTRODUCTION .... 1

BACKGROUND .... 2

LEGAL STANDARD .... 7

ARGUMENT .... 8

I. Plaintiff Fails To State a Claim. .... 8

A. Plaintiff Fails To Plead a Misrepresentation. .... 8

1. Plaintiff Fails To Allege a Plausible Affirmative Misrepresentation. .... 9

2. Plaintiff Fails To Allege a Plausible Implied Misrepresentation. .... 12

II. Plaintiff Lacks Standing To Seek Injunctive Relief. .... 19

III. Plaintiff Cannot Pursue California State Law Claims On Behalf of a Nationwide Class. .... 21

A. Extra-Territorial Application Violates California Law. .... 21

B. Extra-Territorial Application Is Unconstitutional. .... 22

C. Extra-Territorial Application Contravenes California's Choice-of-Law Rules and Precludes Class Certification. .... 23

CONCLUSION .... 24

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 7, 18

*Banks v. Nissan N. Am., Inc.*,
No. C 11-2022 PJH, 2012 WL 8969415 (N.D. Cal. Mar. 20, 2012) ........ 24

*Barber v. Nestle USA Inc.*,
154 F. Supp. 3d (C.D. Cal. 2015), *aff'd*, 730 F. App'x 464 (9th Cir. 2018) ........ 17

*Becerra v. Dr Pepper/Seven Up, Inc.*,
945 F.3d 1225 (9th Cir. 2019) ........ 9, 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 7, 12

*Castano v. Am. Tobacco Co.*,
84 F.3d 734 (5th Cir. 1996) ........ 23

*Chapman v. Pier 1 Imps.*,
631 F.3d 939 (9th Cir. 2011) (en banc) ........ 20

*Clapper v. Amnesty Int'l USA*,
133 S. Ct. 1138 (2013) ........ 20

*Cordes v. Boulder Brands USA, Inc.*,
No. CV 18-6534 PSG (JCX), 2018 WL 6714323 (C.D. Cal. Oct. 17, 2018) ........ 20

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir.), *cert. denied*, 139 S. Ct. 640 (2018) ........ 7

*Davison v. Kia Motors Am., Inc.*,
No. SACV 15-00239-CJC(RNBx), 2015 WL 3970502 (C.D. Cal. June 29, 2015) ........ 23, 24

*Delman v. J. Crew Grp., Inc.*,
No. 16-CV-9219-MWF, 2017 WL 3048657 (C.D. Cal. May 15, 2017) ........ 11

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) ........ 9, 11

*Ehlers v. Ben & Jerry's Homemade Inc.*,
No. 2:19-cv-00194, 2020 WL 2218858 (D. Vt. 2020) ........ 10, 11

*Forsher v. The J.M. Smucker Co.*,
No. 5:19CV00194, 2020 WL 1531160 (N.D. Ohio Mar. 31, 2020) ........ 12

*Frenzel v. Aliphcom*,
76 F. Supp. 3d 999 (N.D. Cal. 2014) ........ 24

*Garcia v. Sony Comput. Entmt. Am., LLC*,
859 F. Supp. 2d 1056 (N.D Cal. 2012) ........................................ 15

*Gen. Tel. Co. v. Falcon*,
457 U.S. 147 (1982) ........................................ 8

*Hadley v. Kellogg Sales Co.*,
243 F. Supp. 3d 1074 (N.D. Cal. 2017) ........................................ 7, 9, 12, 13

*Hairston v. S. Beach Bev. Co., Inc.*,
No. 12-cv-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ........................................ 10

*Hall v. SeaWorld Entm't, Inc.*,
747 F. App'x 449 (9th Cir. 2018) ........................................ 8

*Hodsdon v. Mars, Incorporated*,
891 F.3d 857 (9th Cir. 2018) ........................................ iv, 8, 9, 10

*Jackson v. Gen. Mills, Inc.*,
No. 18-CV-2634-LAB (BGS), 2019 WL 4599845 (S.D. Cal. Sept. 23, 2019) ........................................ 20, 21

*Joslin v. Clif Bar & Co.*,
No. 4:18-CV-04941-JSW, 2019 WL 5690632 (N.D. Cal. Aug. 26, 2019) ........................................ 20

*Kramer v. Wilson Sporting Goods Co.*,
No. CV 13-6330-JFW, 2013 WL 12133670 (C.D. Cal. Dec. 13, 2013) ........................................ 24

*Kwan v. SanMedica Int'l*,
854 F.3d 1088 (9th Cir. 2017) ........................................ 8, 9, 12

*Lewis v. Casey*,
518 U.S. 343 (1996) ........................................ 19

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ........................................ 23, 24

*McKinnon v. Dollar Thrifty Auto. Grp., Inc.*,
No. C12–4457–SC, 2013 WL 791457 (N.D. Cal. Mar. 4, 2013) ........................................ 21

*Oxina v. Lands' End, Inc.*,
No. 14-cv-2577-MMA (NLS), 2015 WL 4272058 (S.D. Cal. June 19, 2015) ........................................ 22

*Perez v. Kroger Co.*,
No. 2:17-cv-02448-ODW (AGR), 2017 WL 3601998 (C.D. Cal. Aug. 18, 2017) ........................................ 9

*Phillips Petrol. Co. v. Shutts*,
472 U.S. 797 (1985) ........................................ 22

*Reed v. Dynamic Pet Prods.*,
No. 15cv0987-WQH-DHB, 2015 WL 4742202 (S.D. Cal. July 30, 2015) ........................................ 22

*Retail Wholesale & Dep't. Store Union Local 338 Ret. v. Hewlett-Packard Co.*, 52 F. Supp. 3d 961 (N.D. Cal. 2014), *aff'd*, 845 F.3d 1268 (9th Cir. 2017)................................ 17

*Rikos v. P&G Co.*, No. 1:11-cv-226, 2012 WL 641946 (S.D. Ohio Feb. 28, 2012) ................................................ 22

*Route v. Mead Johnson Nutrition Co.*, No. CV 12-7350-GW(JEMx), 2013 WL 658251 (C.D. Cal. Feb. 21, 2013)........................... 8, 24

*Ruiz v. Darigold, Inc.*, No. C14-1283RSL, 2014 WL 5599989 (W.D. Wash. Nov. 3, 2014)........................................... 8

*Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009) ........................................................................... 24

*Shanks v. Jarrow Formulas, Inc.*, No. LA CV 18-09437 PA, 2019 WL 7905745 (C.D. Cal. Dec. 27, 2019)................................. 20

*Smith v. Allmax Nutrition, Inc.*, No. 1:15-cv-007744-SAB, 2015 WL 9434768 (E.D. Cal. Dec. 24, 2015)................................. 24

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009)........................................................................................... 19

*United Consumers' Action Network v. Powernet Glob. Commcn's*, No. 06CV1773-H (RBB), 2006 WL 8455370 (S.D. Cal. Oct, 20, 2006) .................................. 22

*United States v. Corinthian Colls.*, 655 F.3d 984 (9th Cir. 2011)......................................................................................... 2

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003)....................................................................................... 7

*Vinci v. Hyundai Motor Am.*, No. SA CV 17-0997-DOC, 2018 WL 6136828 (C.D. Cal. Apr. 10, 2018)................................ 23

*Von Saher v. Norton Simon Museum*, 592 F.3d 954 (9th Cir. 2010)....................................................................................... 15

*Weiss v. Trader Joe's Co.*, No. 818CV01130JLSGJS, 2018 WL 6340758 (C.D. Cal. Nov. 20, 2018) ................................ 10

*Wilson v. Frito-Lay N. Am.*, 961 F. Supp. 2d 1134 (N.D. Cal. 2013) ....................................................................... 21

**STATE CASES**

*Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605 (1987)........................................................................................ 22

*Diamond Multimedia Systems, Inc. v. Superior Court*, 19 Cal. 4th 1036 (1999) ........ 21

*Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295 (2011) ........ 14

*McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68 (2010) ........ 23, 24

*N. Ala. Salmon Co. v. Pillsbury*, 174 Cal. 1, 162 P. 93 (1916) ........ 21

*Norwest Mortg., Inc. v. Superior Court*, 72 Cal. App. 4th 214 (1999) ........ 22

*Rubenstein v. The Gap, Inc.*, 14 Cal. App. 5th 870 (2017) ........ 13

*Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125 (2020) ........ 12, 13

*Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (2011) ........ 21

*Wershba v. Apple Comput., Inc.*, 91 Cal. App. 4th 224 (2001) ........ 23

**OTHER AUTHORITIES**

*Traceable*, *Cambridge Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/traceable ........ 13

*Traceable*, *Dictionary.com*, https://www.dictionary.com/browse/traceable?s=t ........ 13

*Traceable*, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/traceable ........ 13

*Fair Trade*, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/fair trade ........ 13

*Fair Trade*, *Thesaurus.com*, https://www.thesaurus.com /browse/fair-tradin ........ 13

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Plaintiff has filed a putative nationwide class action against Mars for alleged misstatements that do not appear on DOVE® Dark Chocolate products. She claims that DOVE® Dark Chocolate labels induce "consumers to believe its chocolate is . . . ethically and ecologically produced," and free from deforestation, poverty, or "child and slave labor in West Africa." First Am. Compl. ("FAC"), ECF No. 31 ¶¶ 2, 4, 13, 56, 61, 64.

But, DOVE® Dark Chocolate labels speak to none of these things. There are no affirmative statements, promises, or guarantees regarding West Africa, labor practices, farming practices, production practices, sustainability, deforestation, poverty, or child or slave labor. And, absent such affirmative mistatements, "manufacturers do not have a duty to disclose" any social, political, or environmental challenges endemic to the West African cocoa production "because they are not physical defects that affect the central function of the chocolate products." *Hodsdon v. Mars, Incorporated*, 891 F.3d 857, 860 (9th Cir. 2018).

Attempting to fabricate a duty where there is none, Plaintiff isolates and distorts select text from certain DOVE® Dark Chocolate labels and criticizes the seal of the Rainforest Alliance, an international non-profit organization working to solve environmental and social challenges across the globe. The full and complete sentence on the label reads: "We buy cocoa from Rainforest Alliance Certified™ farms, traceable from the farms into our factory." FAC ¶ 49. Plaintiff does not (and cannot) allege this limited statement is untrue. She cannot stretch its meaning beyond its plain language, by expanding it to all cocoa sourced from all farms in West Africa or defining "traceable" to mean the absence of deforestation, poverty, and child and forced labor. And Plaintiff cannot invoke California consumer protection laws to hold Mars responsible for her criticisms of Rainforest Alliance and its ongoing efforts to improve the endemic environmental and social problems in West Africa. Neither Rainforest Alliance, nor DOVE® Dark Chocolate labels guarantee the efficacy of those efforts or suggest to a reasonable consumer that Rainforest Alliance can single-handedly ensure that cocoa supplied from West Africa is free from deforestation, poverty, and child or forced labor. Plaintiff's attempt to impose liability on Mars for such a non-existent and implausible representation would, if

countenanced, lead to the liability of every consumer-goods manufacturer who so much as indicates on its packaging support for a worthwhile social or environmental cause.

Plaintiff fails to state a plausible claim for relief against Mars. Alternatively, she lacks standing to seek injunctive relief, and her attempt to bring a putative nationwide class under California consumer protections laws fails on its face. As such, Plaintiff's first amended complaint against Mars should be dismissed.

**BACKGROUND**

Plaintiff filed her first amended class action complaint against defendants Mars Wrigley Confectionery US, LLC ("Mars"),[1] Starbucks Corporation ("Starbucks"), and The Quaker Oats Company ("Quaker Oats"). *See* FAC at 1. Although Plaintiff sued three defendants in one action, Plaintiff's allegations differ as to each. *See id.* ¶¶ 3, 28–48 (Starbucks); *id.* ¶¶ 4, 49–64 (Mars); *id.* ¶¶ 5, 65–75 (Quaker Oats).[2] As for Mars, it is a leading confectionery company and one of "the largest retailers of chocolate products in the United States." *Id.* ¶ 1; *see id.* ¶ 15 (Mars "is one of the largest chocolate manufacturers in the world"). Its many iconic brands include M&M'S®, SNICKERS®, 3 MUSKETEERS®, MILKY WAY®, TWIX®, MARS®, and DOVE®.[3]







---

[1] In her original complaint, Plaintiff named as defendant Mars, Incorporated. Plaintiff's FAC replaced Mars, Incorporated with Mars Wrigley Confectionery US, LLC.

[2] Plaintiff does not allege Mars is responsible for statements on Starbucks' or Quaker Oats' products. And undifferentiated allegations about other defendants cannot support claims against Mars. *See, e.g.*, *United States v. Corinthian Colls.*, 655 F.3d 984, 997–98 (9th Cir. 2011) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." (internal quotation marks omitted)).

[3] Mars's brands of chocolate products also include: AMICELLI™, AMERICAN HERITAGE™ chocolate, BOUNTY, CELEBRATIONS chocolate, Ethel M® chocolates, GALAXY® chocolate, Maltesers®, and MY M&M'S®. *See* https://www.mars.com/made-by-mars/mars-wrigley.






Plaintiff's allegations against Mars concern DOVE® Dark Chocolate. The DOVE® brand consists of a variety of silky smooth chocolate products, including milk and dark chocolate candies, ice cream, and nuts and fruits.

Specifically, Plaintiff alleges that the labels of certain DOVE® Dark Chocolate products led her to believe that Mars's cocoa supply chain was free of West-African child and forced labor. *Id.* ¶¶ 4, 12–13, 49–64. But the labels for those DOVE® Dark Chocolate products do not contain affirmative statements regarding labor practices in West Africa or guarantee a supply chain free from child or forced labor, as illustrated below:






Mars's Request for Judicial Notice ("RJN") Ex. A; FAC ¶ 49.

Absent any such affirmative statement, Plaintiff first alleges she was misled by the sentence fragment, "traceable from the farms into [the] factory." FAC ¶ 12; *see id.* ¶¶ 4, 49, 52. Plaintiff alleges this partial statement is false. She claims "no chocolate company in the industry has so far achieved [overall] traceability." *Id.* ¶ 52; *see also id.* ¶ 23 ("[T]he vast majority of the cocoa sourced in the country comes from untraceable farms."); *id.* ¶ 44 ("'[U]ntraced cocoa' constitutes approximately 80% of cocoa production in West Africa."). Plaintiff further alleges that "Mars can, at best, trace only 24 percent of its cocoa back to farms." *Id.* ¶ 51.

Plaintiff, however, omits the full statement she challenges: "We buy cocoa from Rainforest Alliance Certified™ farms, traceable from the farms into our factory," followed by a web address, www.mars.com/rainforest-alliance. The complete statement is illustrated below:




RJN Ex. A at 3; FAC ¶ 49.

The full text states that "[w]e buy cocoa *from Rainforest Alliance Certified™ farms*," and that the cocoa purchased from these farms is traceable to Mars's factory. *Id.* (emphasis added). Plaintiff does not allege that the amount of cocoa purchased for DOVE® Dark Chocolate products from these Rainforest Alliance Certified™ farms falls outside the approximately 24% of Mars's global cocoa purchasing admittedly traceable to farms. *See* FAC ¶ 51 (citing *Washington Post* article stating Mars can trace up to 24% of its global cocoa supply to the farmer level). Plaintiff also omits that although *certain* DOVE® Dark Chocolate products bear the Rainforest Alliance seal and traceability statement—as illustrated by the single example depicted in her first amended complaint, *see id.* ¶ 49—many DOVE® Dark Chocolate products do not carry the seal or say anything about traceability, as illustrated below:






RJN Ex. B.

Plaintiff additionally attacks the Rainforest Alliance seal on the packaging for certain DOVE® Dark Chocolate products. *See* FAC ¶¶ 4, 49, 55. The Rainforest Alliance seal on select DOVE® Dark Chocolate products consists of a frog logo with the words, "Rainforest Alliance Certified Cocoa":




RJN Ex. A; FAC ¶ 49.

Rainforest Alliance is an international nonprofit organization. Like Mars, manufacturers around the globe support Rainforest Alliance's work by purchasing ingredients from Rainforest Alliance Certified™ farms. Rainforest Alliance reports that "[t]housands of products bearing the Rainforest Alliance Certified seal are found on shelves, in advertisements, and websites around the world." RJN Ex. C at 2 (https://www.rainforest-alliance.org/faqs/what-does-rainforest-alliance-certified-mean). Some of those products are illustrated below:




RJN Ex. D.

According to its website, "[s]ince 1987, the Rainforest Alliance has worked to build a global alliance of people who share [its] vision of a world where people and nature thrive in harmony." RJN Ex. E at 4 (https://www.rainforest-alliance.org/impact). It describes itself as "working at the intersection of business, agriculture, and forests to make responsible business the new normal" by "building an alliance to protect forests, improve the livelihoods of farmers and forest communities,

promote their human rights, and help them mitigate and adapt to the climate crisis." RJN Ex. F at 2 (https://www.rainforest-alliance.org/about). As part of its efforts, Rainforest Alliance promulgates standards and objectives for farms and conducts periodic audits to assess compliance with those standards. *See* RJN Ex. G (https://www.rainforest-alliance.org/business/sustainable-farming/farm-certification/how-to-get-rainforest-alliance-certified-a-guide-for-farmers/); FAC ¶ 49 (Rainforest Alliance is "a third-party certifier"). The certification standards and nature and scope of its audits are openly disclosed on the Rainforest Alliance website. *See* RJN Ex. H (https://www.rainforest-alliance.org/business/wp-content/uploads/2017/11/03_rainforest-alliance-sustainable-agriculture-standard_en.pdf).

Plaintiff decries the Rainforest Alliance seal as "bogus" and criticizes Rainforest Alliance and other certification programs, among other things, for failing: (1) "to lift farmers out of poverty;" (2) to achieve "industry-wide improvements;" or (3) to ensure certified chocolate is "child-labor-free." FAC ¶¶ 55, 56, 60. But, as the materials Plaintiff cites in her FAC make clear, these are complex, multi-dimensional problems driven by, among other things, "structural poverty," "price instability," "lack of school or other infrastructure," "inability to enforce the laws," "the nature of small-scale farming," and "political violence." RJN Ex. O at 23, 46 (FAC ¶ 51 n.17); RJN Ex. N at 6 (FAC ¶ 40 n.15); RJN Ex. M at 4–5 (FAC ¶ 19 n.8); RJN Ex. L at 83–84 (FAC ¶ 2 n.1).

Standard-setting organizations like Rainforest Alliance "have no direct control over a variety of variables that are essential to farmers' livelihoods, including access to infrastructure (schools, health care, roads and access to markets, etc.), the quality and enforcement of land laws, availability of inputs, etc." RJN Ex. N at 41 (FAC ¶ 40 n.15). Accordingly, although Rainforest Alliance states it is "working," "improv[ing]," "promot[ing]," and "help[ing]," neither Mars, the Rainforest Alliance seal, nor Rainforest Alliance itself claims that Rainforest Alliance certification has solved all of these problems, or guarantees that chocolate sourced from Rainforest Alliance certified farms is entirely free of deforestation, poverty, or child and forced labor. To be sure, as noted in one of the articles Plaintiff cites in her FAC, "*none of the three major 'product certifiers' have claimed to offer a guarantee with respect to labor practices*." RJN Ex. O at 43 (FAC ¶ 51 n.17) (emphasis added).

Nonetheless, Plaintiff alleges that the Rainforest Alliance seal and the quoted "traceability"

sentence fragment on select DOVE® Dark Chocolate products constitute "unfair methods of competition and unfair and deceptive acts and practices" under the California Consumers Legal Remedies Act ("CLRA") §§ 1770(a)(2), (a)(3), (a)(5), (a)(7), and (a)(9), and "unlawful, fraudulent, and unfair conduct" under California's Unfair Competition Law ("UCL"), Cal. Bus & Prof. Code §§ 17200–210. FAC ¶¶ 90, 92, 99. On behalf of a nationwide class, Plaintiff seeks disgorgement, restitution, and a nationwide injunction that would prohibit Mars from, among other things, "making representations that the environmental and socially beneficial seals or certifications indicate that a product has been independently verified as having been produced using environmentally sound and socially responsible practices." FAC ¶ 106; *see id.* ¶ 93. These claims cannot survive a motion to dismiss.

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). There must be "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and a claim must be supported by facts sufficient to "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555.

Because Plaintiff's claims are grounded in fraud, they must also satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir.) (internal quotation marks omitted), *cert. denied*, 139 S. Ct. 640 (2018) (Mem.). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). Among other things, the rule "requires specific factual pleading that indicates why allegedly fraudulent statements are false or misleading." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1090 (N.D. Cal. 2017).

Federal Rule of Civil Procedure 12(f) authorizes courts to strike "from a pleading an

insufficient defense or any redundant, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Although courts typically defer ruling on class allegations until the class certification stage, "where the matter is sufficient obviously from the pleadings, a court may strike class allegations." *Route v. Mead Johnson Nutrition Co.*¸ No. CV 12-7350-GW(JEMx), 2013 WL 658251, at *8 (C.D. Cal. Feb. 21, 2013); *see Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982) ("Sometimes the issues are plain enough from the pleadings to determine whether the interests of absent parties are fairly encompassed within the named plaintiff's claim.").

## ARGUMENT

### I. Plaintiff Fails To State a Claim.

Plaintiff has failed to state a viable claim against Mars because she has failed to allege an actionable misrepresentation under the UCL or CLRA.

#### A. Plaintiff Fails To Plead a Misrepresentation.

The Ninth Circuit has held that "California consumer protection laws do not obligate [Mars] to label [its] goods as possibly being produced by child or slave labor." *Hodsdon*, 891 F.3d at 860. "In the absence of any affirmative misrepresentations" regarding child or slave labor, "manufacturers do not have a duty to disclose the labor practices in question," because "they are not physical defects that affect the central function of the chocolate products." *Id.* This reasoning also bars claims premised on the alleged failure to disclose information about other social, environmental, or economic problems—such as deforestation and poverty—that are not "physical defects that affect the central function" of chocolate products. *See, e.g.*, *Hall v. SeaWorld Entm't, Inc.*, 747 F. App'x 449, 451 (9th Cir. 2018) (omission about treatment of orcas at SeaWorld not actionable under *Hodsdon*).

Plaintiff's claims against Mars do not relate to physical defects that affect the central function of DOVE® Dark Chocolate products. Thus, to state a claim, Plaintiff must identify an "affirmative misrepresentation" on the labels of those products. Simply pointing to a sentence fragment or seal and calling it an "affirmative misrepresentation" is not enough. *See, e.g.*, *Ruiz v. Darigold, Inc.*, No. C14-1283RSL, 2014 WL 5599989, at *4 (W.D. Wash. Nov. 3, 2014) (rejecting attempt to state a CLRA claim based on a sentence fragment). Nor is it sufficient to claim the label is "baseless" or lacks "substantiat[ion]." FAC ¶ 54; *see Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096–97 (9th Cir.

2017) ("California law does not provide a private cause of action for claims that advertising lacks substantiation."). Instead, she must plead "specific facts pointing to actual falsehood." *Id.* at 1097.

Even then, California law requires Plaintiff also to "show that members of the public are likely to be deceived."[4] *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (internal quotation marks omitted). This is known as the "'reasonable consumer' test." *Id.* The reasonable consumer test "requires more than a mere possibility that [the] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Id.* (internal quotation marks omitted). Rather, it "requires a probability that a significant portion of the general consuming public or targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* at 1228–29 (internal quotation marks omitted).

Here, Plaintiff has not identified an affirmative misrepresentation, let alone one likely to deceive a significant portion of the general consuming public. A plain reading of the label for DOVE® Dark Chocolate products confirms it is neither false nor misleading. As such, Plaintiff's claims should be dismissed. *See id.* at 1229–30 (dismissing claims alleging consumer deception where reasonable consumers would not be misled); *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965–66 (9th Cir. 2016) (same).

**1. Plaintiff Fails To Allege a Plausible Affirmative Misrepresentation.**

The labels for DOVE® Dark Chocolate products contain no affirmative statements about deforestation, trafficking, farming income levels, or "child and slave labor in West Africa." FAC ¶¶ 2, 13, 56, 64. The words "forest," "trees," "farming," "farmer," "income," "trafficking," "labor,"

[4] The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. This disjunctive language "establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Hodsdon*, 891 F.3d at 865 (internal quotation marks omitted). In the case of alleged false advertising, the "reasonable consumer" test applies regardless of whether Plaintiff alleges "unlawful," "unfair," or "fraudulent" conduct. *See, e.g.*, *Perez v. Kroger Co.*, No. 2:17-cv-02448-ODW (AGR), 2017 WL 3601998, at *4 (C.D. Cal. Aug. 18, 2017) (reasonable consumer test applies to false advertising claims brought under UCL "fraudulent" and "unfair" prongs); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1098 (N.D. Cal. 2017) (reasonable consumer test applies to UCL "unlawful" claims "grounded in fraud," including deceptive labeling). The "reasonable consumer" test also applies to Plaintiff's "unlawful" UCL claim because the predicate unlawful conduct Plaintiff alleges are violations of the CLRA, to which the "reasonable consumer" test applies.

"child," "slave," "forced," "sustainable," "ethical," "ecological," "free," and "trade," including their synonyms and derivatives, do not appear on the labels. *See, e.g.*, *id.* ¶ 49; RJN Ex. A. Nor do the labels purport to speak to the alleged "extensive public reporting [of] the endemic problem of child labor in the cocoa sector of West Africa."[5] FAC ¶ 26.

The only text Plaintiff quotes from a DOVE® Dark Chocolate label is a sentence fragment: "traceable from the farms into [the] factory." FAC ¶¶ 12, 49, 52. Plaintiff attacks this sentence fragment by alleging "Mars Does Not Trace Most of its Beans"; "Mars can, at best, trace only 24 percent of its cocoa back to farms"; Mars's cocoa is not "fully 'traceable'"; Mars "cannot identify the farms where all [its] cocoa comes from"; and "no chocolate company in the industry has so far achieved [overall] traceability." *Id.* ¶¶ 27, 51–52. But the challenged labels make no such traceability claims, and "a reasonable consumer would not assume things about a product other than what the statement actually says." *Weiss v. Trader Joe's Co.*, No. 818CV01130JLSGJS, 2018 WL 6340758, at *5 (C.D. Cal. Nov. 20, 2018) (brackets and internal quotation marks omitted) (dismissing UCL and CLRA claims); *Hairston v. S. Beach Bev. Co., Inc.*, No. 12-cv-1429, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012) (dismissing labeling claim "based on a single out-of-context phrase found in one component of Lifewater's label"); *see also Ehlers v. Ben & Jerry's Homemade Inc.*, No. 2:19-cv-00194, 2020 WL 2218858, at *6 (D. Vt. 2020) (dismissing claim premised on alleged misrepresentation "that is neither contained on Ben & Jerry's ice cream cartons nor on its website" and which is not "a reasonable interpretation of the statements that *do* appear on Ben & Jerry's products and website").

Here, the full statement on the challenged DOVE® Dark Chocolate label reads: "*We buy cocoa from Rainforest Alliance Certified™ farms*, traceable from the farms into our factory. www.mars.com/rainforest-alliance." FAC ¶ 49 (emphasis added). Plaintiff does not (and cannot)

[5] "[I]n compliance with the California Transparency in Supply Chains Act of 2010 ('Supply Chains Act'), Mars . . . disclose[s] on its website its efforts to combat slavery and labor abuses in its supply chain." *Hodsdon*, 891 F.3d at 860–61. The Supply Chains Act requires retailers "to disclose on their websites their 'efforts to eradicate slavery and human trafficking from [their] direct supply chain for tangible goods offered for sale." *Id.* at 861 n.1 (alteration in original) (internal quotation marks omitted).

deny that Mars buys cocoa from various countries for select DOVE® Dark Chocolate products that is traceable to Rainforest Alliance Certified™ farms. Instead, she seeks to expand this limited statement to be a representation that Mars can trace all or nearly all of its worldwide cocoa purchases from West African farms. *See id.* ¶¶ 27, 51–52; *id.* ¶ 51 ("Chocolate companies, including Mars, still cannot identify the farms where all their cocoa comes from."): *id.*¶ 50 (Mars sources chocolate "from farms in West Africa"); *id.* ¶ 44 ("'[U]ntraced cocoa' constitutes approximately 80% of cocoa production in West Africa.").

That reading is not plausible and ignores both the actual words and their context. "The question is how a reasonable consumer would interpret the phrase . . . *in the context of the specific commercial interaction that Plaintiff has challenged*." *Delman v. J. Crew Grp., Inc.*, No. 16-CV-9219-MWF (ASx), 2017 WL 3048657, at *7 (C.D. Cal. May 15, 2017) (emphasis added). Here, context matters, as the challenged statement appears on *only* select DOVE® Dark Chocolate products and pertains *only* to cocoa sourced for those products from Rainforest Alliance Certified™ farms. The challenged statement does not reference West Africa or the many other countries from which Mars sources cocoa, including Brazil, Cameroon, Columbia, Dominican Republic, Ecuador, Indonesia, Nigeria, Papua New Guinea, and Peru. Plaintiff has not pleaded, and cannot plausibly plead, that a reasonable consumer would interpret the statement, in context, to pertain to products other than select DOVE® Dark Chocolate products, farms other than Rainforest Alliance Certified™ farms, or only West African farms. *See id.*; *Ehlers*, 2020 WL 2218858, at *2, *6–7 (dismissing claim that Ben & Jerry's advertising about "Caring Dairy" program is likely to mislead reasonable consumers to conclude that all dairy suppliers participate in program, where claim "is grounded on a single phrase in a single heading on a multipage website which is neither false nor misleading when considered as a whole"); *see also Ebner*, 838 F.3d at 963 ("likely to deceive" requires more than "a mere possibility that [the] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner'").

Moreover, Plaintiff does not (and cannot) allege the particular subset of cocoa in question is not "traceable from the farms into [Mars's] factory." RJN Ex. A; FAC ¶ 49. Plaintiff's conclusory allegation that "Mars cannot substantiate its traceability claims," FAC ¶ 54, is insufficient as a matter

of law to claim deception. *See Kwan*, 854 F.3d at 1097. And, Plaintiff admits Mars can trace up to "24 percent of its cocoa back to farms." FAC ¶ 51. Plaintiff pleads no facts to support a conclusion that the cocoa volume for a select number of DOVE® Dark Chocolate products falls outside 24 percent of Mars's substantial global chocolate supply. To the extent she attempts to imply otherwise, that implication is false and does not "raise a right to relief above a speculative level."[6] *See, e.g.*, *Twombly*, 550 U.S. at 555; *see also Forsher v. The J.M. Smucker Co.*, No. 5:19CV00194, 2020 WL 1531160, at *4–5 (N.D. Ohio Mar. 31, 2020) (holding "generalized statistics" that "50% of the sugar production in the U.S. . . . comes from sugar beets" insufficient to state plausible claim under California consumer protection laws that products are not "natural" because they contain sugar derived from GMO sugar beets).

**2. Plaintiff Fails To Allege a Plausible Implied Misrepresentation.**

Absent affirmative statements about deforestation, farming income levels, or "child and slave labor in West Africa," Plaintiff seeks to imply these statements from (1) the sentence fragment: "traceable from the farms into [the] factory;" FAC ¶¶ 12, 49, 52; and (2) the Rainforest Alliance seal itself, *see id.* ¶¶ 4, 55–64. But, "an implied representation is actionable only if a reasonable consumer *is likely to infer that representation from the label's affirmative content*." *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1138 (2020) (emphasis added). Here, Plaintiff cannot plausibly allege a reasonable consumer is likely to infer from the label of select DOVE® Dark Chocolate products that merely buying cocoa from Rainforest Alliance Certified™ farms means no deforestation, no poverty among farmers, or a West African supply chain that is entirely free of child and forced labor.

**a. "Traceable" Does Not Mean No Deforestation, Poverty, or Child or Forced Labor.**

Plaintiff claims the word "traceable" means that "chocolate is procured transparently through 'fair trade' practices," including that no child labor "was used in producing" the cocoa. FAC ¶¶ 51,

---

[6] By failing to plead specific facts supporting actual falsity, Plaintiff has also failed to satisfy the requirements of Rule 9(b). *See Hadley*, 243 F. Supp. 3d at 1090 (Rule 9(b) "requires specific factual pleading that indicates why allegedly fraudulent statements are false or misleading").

53–54. But that is not what "traceable" means.[7] "Traceable" means only "capable of being traced." *Traceable*, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/traceable; *see Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228–29 (9th Cir. 2019) (using Merriam-Webster to define "diet"); *see also Traceable*, *Cambridge Dictionary*, https://dictionary.cambridge .org/us/dictionary/english/traceable (defining traceable as "possible to trace"); *Traceable*, *Dictionary.com*, https://www.dictionary.com/browse/traceable?s=t (defining "traceable" as "capable of being traced"). Thus, the ordinary meaning of "We buy cocoa from Rainforest Alliance Certified™ farms, traceable from the farms into our factory" is that cocoa supplied to the factory related to select DOVE® Dark Chocolate products is capable of being traced to Rainforest Alliance Certified™ farms. To suggest otherwise would require a series of inferential leaps, including inferences that, beyond its ordinary definition, the word traceability means "fair trade," and then in turn that "fair trade" means no deforestation, guaranteed farming income levels, and a West African supply chain that is entirely free of child and forced labor.

The UCL and CLRA do not permit Plaintiff to proceed on such an idiosyncratic, expansive, and inferential theory of liability. *See, e.g.*, *Shaeffer*, 44 Cal. App. 5th at 1131, 1139 (demurrer sustained on ground that reasonable consumer would not infer from "no sugar added" on product label that competing products do have sugar added because "a reasonable consumer is unlikely to make th[at] series of inferential leaps"); *Rubenstein v. The Gap, Inc.*, 14 Cal. App. 5th 870, 877 (2017) (demurrer sustained on ground that reasonable consumer would not infer that use of Gap brand names on factory store items makes implied representations "about the quality of factory store merchandise or that it was previously for sale in traditional Gap-owned stores"); *Hadley*, 243 F. Supp. 3d at 1092–93 (granting motion to dismiss on ground that factually true statement, "MADE WITH Real Fruit,"

[7] Traceability is not synonymous with "fair trade," which Merriam-Webster defines alternatively as "trade in conformity with a fair-trade agreement" or "a movement whose goal is to help producers in developing countries to get a fair price for their products so as to reduce poverty provide for the ethical treatment of workers and farmers, and promote environmentally sustainable practices." *Fair Trade*, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/fair trade; *see also Fair Trade*, *Thesaurus.com*, https://www.thesaurus.com /browse/fair-trading (synonyms for "fair trade" are "balance of trade," "managed prices," "reciprocal trade," "fair-trading," and "multilateral trade").

would not lead reasonable consumers to infer that products are healthy and therefore contain no trans fat); *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011) (reasonable consumer would not infer from green drop on Fiji water bottles "that the product is endorsed for environmental superiority by a third party organization").

Simply put, what Plaintiff alleges reasonable consumers would understand is too far afield from what "traceable" actually means—particularly when understood in context of the label as a whole—to support a plausible claim. And she does not allege that what "traceability actually means" motivated her purchasing decision. *See* FAC ¶ 13 (claiming to have relied on "the social standards and practices in place in [Defendants'] supply chains in making her decision to purchase the products"); *see id.* (plaintiff would not have purchased the products had she known they were "produced off the backs of child and slave labor").

**b. The Rainforest Alliance Seal Does Not Guarantee No Deforestation, Poverty, or Child or Forced Labor.**

Next, Plaintiff claims Mars couples its "assurances of 'traceability'" with what she characterizes as "the bogus seal of the Rainforest Alliance Certification." FAC ¶ 55. Plaintiff interprets the seal as certifying that cocoa is produced entirely by "ethical and sustainable farming, including better working conditions and better care for the natural environment." *Id.* ¶ 49; *see id.* ¶ 4 ("Rainforest Alliance seal . . . induc[es] consumers to believe its chocolate is ethically and ecologically produced."). Specifically, Plaintiff reads the seal as "certifying cocoa as child-labor-free[.]" *Id.* ¶ 60; *see id.* ¶ 13 (Plaintiff "would not have bought . . . Dove . . . products had she known that the products were . . . produced off the backs of child and slave labor."). She then resorts to attacking the efficacy and value of Rainforest Alliance and other so called "fair trade initiatives." *Id.* ¶ 60. She claims: (1) "[C]ertification programs have failed to lift farmers out of poverty or achieve any significant industry-wide improvements, and give consumers a misleading impression that farmers experience decent conditions," *id.* ¶ 56 (internal quotation marks omitted); (2) "Rainforest Alliance runs a business-friendly certification, one that lacks social and environmental standards and is poorly enforced," *id.* ¶ 57; (3) "Rainforest Alliance is essentially an integrated extension of the cocoa industry," *id.* ¶ 61; and (4) Rainforest Alliance "auditing standards and requirements are

watered down," *id.* ¶ 64.

Plaintiff's attempt to bring claims under the UCL and CLRA based on these allegations fails for numerous independent reasons. *First*, the Rainforest Alliance seal on its face does not claim that cocoa from Rainforest Alliance Certified™ farms is free from deforestation, poverty, or "child and slave labor in West Africa." *Id.* ¶¶ 2, 13, 56, 61, 64. The seal says none of these things. Nor does it guarantee the efficacy of Rainforest Alliance's strategies for fighting climate change, tropical deforestation, species loss, and rural poverty. Rather, the seal merely depicts a small frog, contains the text "Rainforest Alliance, Certified Cocoa," and confirms Mars's purchasing of cocoa from Rainforest Alliance Certified™ farms. Without more, Plaintiff cannot not plausibly claim consumers are likely to adopt Plaintiff's contrary "specific, and fairly extreme, understanding of the [seal]." *Garcia v. Sony Comput. Entmt. Am., LLC*, 859 F. Supp. 2d 1056, 1064 (N.D Cal. 2012) (dismissing UCL and CLRA claims alleging "PS3" logo on "Call of Duty" packaging "constitutes an affirmative misrepresentation . . . that all such branded games must be compatible with all PS3 models in perpetuity," because logo "simply does not rise to the level of an express, affirmative representation to that effect").

*Second*, even with the most basic understanding of Rainforest Alliance's mission and methods, Plaintiff's interpretation of the seal is implausible. Rainforest Alliance does not promise or guarantee cocoa from Rainforest Alliance Certified™ farms is free from deforestation, poverty, or "child and slave labor in West Africa." FAC ¶¶ 2, 13, 56, 64; RJN Ex. O at 43 (FAC ¶ 51 n.17) ("[N]one of three major 'product certifiers' have claimed to offer a guarantee with respect to labor practices.'"). Rather, Rainforest Alliance details its vision, mission, and methods on its website and other publicly-available materials.[8]

Rainforest Alliance describes (1) a lofty vision: "We envision a world where people and nature thrive in harmony," RJN Ex. F at 3 (https://www.rainforest-alliance.org/about); and (2) a broad

[8] On a motion to dismiss, the Court can take judicial notice of publications on websites for the purpose of establishing "what was in the public realm at the time." *Von Saher v. Norton Simon Museum*, 592 F.3d 954, 960 (9th Cir. 2010). To that end, Mars is requesting that the Court judicially notice materials and information that are publicly available on Rainforest Alliance's website. *See* RJN at 3–5.

mission: "We are building an alliance to protect forests, improve the livelihoods of farmers and forest communities, promote their human rights, and help them mitigate and adapt to the climate crisis," *Id.* at 1; *see also id.* at 1–2 ("Issues We're Tackling: FORESTS, FOOD & FARMING, CLIMATE, and HUMAN RIGHTS").

One method Rainforest Alliance uses to advance these goals is to promulgate "certification" standards. FAC ¶ 49. These standards are expansive, goal-oriented, publicly available, and "require continual improvement on the journey to sustainable agriculture." RJN Ex. C at 3 (https://www.rainforest-alliance.org/faqs/what-does-rainforest-alliance-certified-mean); *see also* RJN Ex. I at 3 (https://www.rainforest-alliance.org/approach) (describing certification "as a journey of *continuous improvement*"). The standards are over 50 pages in length and set forth over 100 criteria for crop farms. *See* RJN Ex. H (https://www.rainforest-alliance.org/business/wp-content/uploads/2017/11/03_rainforest-alliance-sustainable-agriculture-standard_en.pdf). They address matters as diverse as "wastewater from processing operations," "requirements for aerial fumigation," "discrimination," "hunting," and "land use rights." *See, e.g.*, *id.* at 38, 46, 55.

Rainforest Alliance also makes public the process by which it certifies farms. It explains that farms must first be audited by an "authorized certification body." RJN Ex. G at 2 (https://www.rainforest-alliance.org/business/sustainable-farming/farm-certification/how-to-get-rainforest-alliance-certified-a-guide-for-farmers/). Auditors visit the farms and conduct field audits. *See id.* at 2–3. "Once [a farm] ha[s] successfully passed [a] farm audit," it "can now sell [its] crop as Rainforest Alliance Certified." *Id.* at 3. Rainforest Alliance publicly describes the audit process and its frequency, including when and why subsequent audits may be conducted. *See, e.g.*, RJN Ex. J at 12 (https://www.rainforest-alliance.org/business/wp-content/uploads/2017/11/04_rainforest-alliance-certification-rules_en.pdf) ("A certification audit is carried out when the organization applies for Rainforest Alliance certification for the first time, and then every three years.").

Rainforest Alliance does not claim that its periodic field audits of small farms in developing countries ensure that all cocoa from certified farms is free from deforestation, poverty, or "child and slave labor in West Africa." FAC ¶¶ 2, 13, 56, 64. Periodic audits, by their very nature, are limited. Just as periodic tax audits do not guarantee all taxpayers comply with their tax obligations, the fact

that Rainforest Alliance conducts periodic field audits of small farms in developing countries does not guarantee (or purport to guarantee) that all Rainforest Alliance Certified™ farms are in complete and continued compliance with Rainforest Alliance's aspirational standards. *See, e.g.*, *Barber v. Nestle USA Inc.*, 154 F. Supp. 3d at 954, 963, 964 (C.D. Cal. 2015) (statements regarding forced labor in Responsible Sourcing Guidelines were aspirational and not misrepresentations), *aff'd*, 730 F. App'x 464 (9th Cir. 2018); *Retail Wholesale & Dep't. Store Union Local 338 Ret. v. Hewlett-Packard Co.*, 52 F. Supp. 3d 961, 970 (N.D. Cal. 2014) (statement regarding compliance with code of ethics was not a misrepresentation, where ethics code was aspirational and non-compliance was anticipated), *aff'd*, 845 F.3d 1268 (9th Cir. 2017).

Far from guaranteeing perfect compliance with Rainforest Alliance's standards, Rainforest Alliance's publicly available guidelines anticipate that periodic field audits will turn up instances of non-compliance among farms that have received Rainforest Alliance certification. *See*, *e.g.*, RJN Ex. H at 11–13 (https://www.rainforest-alliance.org/business/wp-content/uploads/2017/11/03_rainforest-alliance-sustainable-agriculture-standard_en.pdf) (recognizing that progress is a journey and identifying continuous improvement criteria to support farms where auditors identify gaps in performance); RJN Ex. J at 11–20 (https://www.rainforest-alliance.org/business/wp-content/uploads/2017/11/04_rainforest-alliance-certification-rules_en.pdf) (establishing consequences of non-compliance, appeals, reinstatement of certificates, and follow up audits, and child labor remediation requirements).

No reasonable consumer would expect that Mars, by indicating that it buys Rainforest Alliance Certified™ cocoa, is guaranteeing the efficacy of Rainforest Alliance's audit and certification efforts. As Plaintiff's own complaint demonstrates, there is abundant publicly available information discussing the efficacy and limitations of the Rainforest Alliance certification program. *See*, *e.g.*, FAC ¶ 56 n.18 (citing Corporate Accountability Lab report); RJN Ex. P (Corporate Accountability Lab report). A reasonable consumer cannot turn a blind eye to this information and make unsupported, attenuated assumptions about child labor simply because he or she sees the Rainforest Alliance seal on a candy wrapper.

*Third*, Plaintiff's interpretation of the Rainforest Alliance seal as warranting against West

African deforestation and poverty, and certifying cocoa as child-labor-free, defies common sense by ignoring the many obvious hurdles to resolving completely these complex problems. *See Iqbal*, 556 U.S. at 679 (court must "draw on its judicial experience and common sense"). For example, child and forced labor in West Africa has been attributed to "systemic poverty," "a lack of local infrastructure," "price instability in cocoa on the world market," lack of "bargaining power of small-scale farmers," "low levels/quality of education," "the nature of small-scale farming," and "low prosecution rates resulting from lack of access to police and justice." RJN Ex. N at 18 (FAC ¶ 40 n.15); RJN Ex. M at 4–5 (FAC ¶ 19 n.8). Rainforest Alliance certification does not purport to be a panacea for these socioeconomic or structural issues. To the contrary, eliminating child labor in West Africa "is a long term challenge and will require sustained engagements and cooperation by global and local stakeholders," including governments, international labor organizations, companies, NGOs, community groups, farmers, and workers. RJN Ex. M at 5 (FAC ¶ 19 n.8); *see* RJN Ex. P at 24 (FAC ¶ 56 n.18). Rainforest Alliance complements these efforts. It never claims to be a cure all. To that end, although Rainforest Alliance is engaged in efforts to improve conditions on farms, Plaintiff cannot plausibly allege that certification guarantees Rainforest Alliance Certified™ farms are "child-labor free." FAC ¶ 60.

*Fourth*, Plaintiff's attacks on Rainforest Alliance as "a sham program[]" with a "bogus seal," *id.* ¶¶ 55, 61, are not supported by her own allegations. At most, she alleges Rainforest Alliance has not succeeded at eradicating deforestation, poverty, or child and slave labor in West Africa. Plaintiff does not (and cannot) dispute that Rainforest Alliance certification is a real certification program that has actual certification standards and conducts actual field audits. *See id.* ¶¶ 59, 62, 64. Plaintiff also omits that Rainforest Alliance's work extends beyond deforestation, poverty, and child and forced labor in West Africa, to address global challenges as diverse as the use of GMOs, requirements for the use of personal protective equipment, and development of a pest management plan. *See* RJN Ex. H at 9–10 (https://www.rainforest-alliance.org/business/wp-content/uploads/2017/11/03_rainforest-alliance-sustainable-agriculture-standard_en.pdf). Plaintiff's complaint ignores this work entirely.[9]

---

[9] Although Plaintiff criticizes Rainforest Alliance's program, even the "recent study" she cites as evidence of the program's flaws acknowledges that Rainforest Alliance has benefited cocoa farmers.

*Finally*, Plaintiff's attempt to invoke the CLRA and UCL to hold Mars liable for her cited criticisms of the Rainforest Alliance sets a dangerous precedent. Plaintiff's theory of liability does not turn on the *content* of the Rainforest Alliance seal; rather, it is that Rainforest Alliance has not combatted deforestation, income inequality, and child and slave labor in West Africa to her satisfaction. *See, e.g.*, FAC ¶¶ 57, 61. Such a theory would expose manufacturers to putative class claims by indicating their support for any cause or program that, in Plaintiff's estimation, is not well-designed or sufficiently effective at achieving its objectives.

The following examples are illustrative. It would be misleading for products to bear the pink ribbon of the Susan G. Komen Foundation because its efforts to fight breast cancer have not been successful, or because it pays its CEO too much and donates too little to the fight against breast cancer. It would be misleading to include the Underwriters Laboratory ("UL") mark because UL is too close to the companies whose products it tests, and because its testing has failed to identify safety hazards in some UL-approved products. And it would be misleading to include the Global Aquaculture Alliance's Best Aquaculture Practices (BAP) seal because its certification standards are insufficient to ensure a socially-responsible global seafood supply. The result of imposing liability on manufacturers for such criticisms is to discourage them from supporting the work of these and myriad other non-profit organizations in combating domestic and global challenges.

## II. Plaintiff Lacks Standing To Seek Injunctive Relief.

"[S]tanding is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996). Instead, Plaintiff "bears the burden of showing that [s]he has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). "[T]o establish standing to pursue injunctive relief . . . [plaintiff] must demonstrate a real and immediate threat of repeated injury in the future."

*See* RJN Ex. P at 18 (FAC ¶ 56 n.18) ("[S]tudies have shown that certification by UTZ, Rainforest Alliance and Fairtrade slightly improves a farmer's income."). And Plaintiff's focus on West African cocoa ignores studies reporting Rainforest Alliance certification's positive impact in other regions. *See, e.g.*, RJN Ex. K (https://theweek.com/articles/861742/what-sustainability-labels-really-mean) (describing finding that Colombian coffee farmers who were Rainforest Alliance-certified "planted more trees on their farms" and had children who "had studied more years at school" than non-certified farmers).

*Chapman v. Pier 1 Imps.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc) (internal quotation marks omitted). Neither allegations of possible future injury, nor past exposure to illegal conduct, are sufficient to confer standing for injunctive relief. *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013).

Here, there is no real and immediate threat of future harm to Plaintiff. *First*, Plaintiff does not allege that she intends to purchase select DOVE® Dark Chocolate products in the future, noting endemic problems in West Africa and seeking to avoid products with supply chains that may be affected by child or forced labor. *See* FAC ¶¶ 2, 13; *see also Joslin v. Clif Bar & Co.*, No. 4:18-CV-04941-JSW, 2019 WL 5690632, at *3 (N.D. Cal. Aug. 26, 2019) (no standing to seek injunctive relief where Plaintiffs did not "allege they want to or intend to purchase the Products in the future"); *Cordes v. Boulder Brands USA, Inc.*, No. CV 18-6534 PSG (JCX), 2018 WL 6714323, at *4 (C.D. Cal. Oct. 17, 2018) (holding same).

*Second*, even if Plaintiff wished to buy select DOVE® Dark Chocolate products in the future, she can readily verify that neither Mars nor Rainforest Alliance guarantees that cocoa related to select DOVE® Dark Chocolate products is free from deforestation, poverty, or child and forced labor. Plaintiff also admits that "[c]hild slavery is endemic in cocoa harvesting in West Africa," and that "[t]here has been extensive public reporting" on the subject. FAC ¶¶ 2, 26; *see also id.* ¶¶ 17–18. By gaining even a cursory understanding of the problems in West Africa or reviewing publicly available materials, Plaintiff would know that, for the foreseeable future and despite the ongoing efforts of manufacturers and non-profits, cocoa sourced from that region may be affected by deforestation, poverty, and child or forced labor. She does not need to purchase a DOVE® Dark Chocolate product in order to make that assessment. *See, e.g.*, *Shanks v. Jarrow Formulas, Inc.*, No. LA CV 18-09437 PA (AFMx), 2019 WL 7905745, at *5 (C.D. Cal. Dec. 27, 2019) (no standing to seek injunctive relief unless "the plaintiff could not easily discover whether a previous misrepresentation had been cured without first buying the product at issue" (quoting *Cordes*, 2018 WL 6514323, at *4)); *Jackson v. Gen. Mills, Inc.*, No. 18-CV-2634-LAB (BGS), 2019 WL 4599845, at *5 (S.D. Cal. Sept. 23, 2019) (same holding).

**III. Plaintiff Cannot Pursue California State Law Claims On Behalf of a Nationwide Class.**

Plaintiff relies on the CLRA and UCL to bring a putative class action on behalf of "[a]ll United States residents who purchased [Mars's] Products marked with the . . . 'traceability' . . . claims within the United States." FAC ¶ 76; *see id.* at 27 (Prayer for Relief). But, the CLRA and UCL do not extend to nonresident class members for claims against nonresident corporations. To do so ignores the presumption against extraterritoriality, constitutional due process, and California choice-of-law rules. Because no amount of factual discovery or amendment to plaintiff's first amended complaint will cure this fundamental legal defect, this Court should dismiss Plaintiff's nationwide class allegations.[10]

**A. Extra-Territorial Application Violates California Law.**

California's Supreme Court has made clear that there is a strong presumption against the extra-territorial application of California law. *See Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011); *Diamond Multimedia Systems, Inc. v. Superior Court*, 19 Cal. 4th 1036, 1060 n.20 (1999) (noting that "[t]he presumption against extraterritoriality is one against an intent to encompass *conduct* occurring in a foreign jurisdiction in the prohibitions and remedies of a domestic statute"). This presumption has existed for over a century. *See N. Ala. Salmon Co. v. Pillsbury*, 174 Cal. 1, 162 P. 93, 94 (1916). It applies to the UCL and CLRA. See *Sullivan*, 51 Cal. 4th at 1207 (presumption against extraterritoriality "applies to the UCL in full force"); *McKinnon v. Dollar Thrifty Auto. Grp., Inc.*, No. C12–4457–SC, 2013 WL 791457 (N.D. Cal. Mar. 4, 2013) (presumption applies to CLRA); *Ice Cream Distribs.v. Dreyer's Grand Ice Cream*, C-09-5815 CW, 2010 WL 3619884 (N.D. Cal. Sept. 10, 2010) (same), *aff'd*, 487 F. App'x 362 (9th Cir. 2012). To overcome the presumption against extraterritoriality, Plaintiff must establish that the alleged unlawful conduct giving rise to claims by out-of-state putative class members occurred in California. See *Sullivan*, 51 Cal. 4th at 1207. Here, that is impossible, as Mars "is a Delaware corporation with its principal place of business in McLean, Virginia," FAC ¶ 15, and Plaintiff does not allege any activity within California except her own purchase of "the offending cocoa products within this District," *id.* ¶ 11; *see also Wilson v. Frito-Lay*

[10] In the alternative, Mars moves the Court to strike nationwide class allegations pursuant to Federal Rule of Civil Procedure 12(f).

*N. Am.*, 961 F. Supp. 2d 1134, 1148 (N.D. Cal. 2013) (dismissing claims brought on behalf of non-California residents where defendant was located in Texas and California-based named plaintiffs did not allege "any activity within California except their own purchase" of the products).

**B. Extra-Territorial Application Is Unconstitutional.**

Plaintiff's nationwide class claims are inconsistent with constitutional due process. To apply California law to a nationwide class, the forum state must have a "'"significant contact or aggregation of contacts" to the claims asserted by *each member* of the plaintiff class.'" *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 612–13 (1987) (quoting *Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 821–22 (1985)) (emphasis added). Application of California law to claims "involv[ing] injuries suffered by non-California residents, caused by conduct occurring outside of California's borders by actors headquartered and operating outside of California," "raises significant due process problems." *Norwest Mortg., Inc. v. Superior Court*, 72 Cal. App. 4th 214, 225 (1999).

Guided by the due process considerations, numerous courts have dismissed or struck CLRA and UCL nationwide class allegations where putative class members have tenuous connections to California. *See, e.g.*, *Reed v. Dynamic Pet Prods.*, No. 15cv0987-WQH-DHB, 2015 WL 4742202, at *9–10 (S.D. Cal. July 30, 2015) (dismissing CLRA and UCL nationwide claims where defendants were Missouri corporations headquartered in Missouri, and "[t]he Complaint alleges no facts plausibly demonstrating that non-California plaintiffs were injured in California or injured by unlawful conduct occurring in California"); *Oxina v. Lands' End, Inc.*, No. 14-cv-2577-MMA (NLS), 2015 WL 4272058, at *10 (S.D. Cal. June 19, 2015) (dismissing CLRA and UCL nationwide class claims where "Plaintiff does not allege that the misconduct suffered by the nationwide class occurred inside California, or that Defendant's headquarters or principal place of operations are inside California"); *Rikos v. P&G Co.*, No. 1:11-cv-226, 2012 WL 641946 (S.D. Ohio Feb. 28, 2012) (striking class allegations because CLRA and UCL cannot be constitutionally applied to the claims of class members who neither reside in California nor purchased the product there); *United Consumers' Action Network v. Powernet Glob. Commcn's*, No. 06CV1773-H (RBB), 2006 WL 8455370, at *5 (S.D. Cal. Oct, 20, 2006) (striking UCL and CLRA nationwide class allegations where defendants are based in Ohio and provided telecommunications services across the country).

**C. Extra-Territorial Application Contravenes California's Choice-of-Law Rules and Precludes Class Certification.**

In a nationwide class action, the Court must consider the choice-of-law issue because "variations in state law may swamp any common issues and defeat predominance." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996). California choice-of-law analysis requires a three-step test to determine which state's laws should apply. *Wershba v. Apple Comput., Inc.*, 91 Cal. App. 4th 224, 241–42 (2001). First, the Court determines if California law differs meaningfully from the foreign states. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012). Second, if there is such a difference, the Court examines each jurisdiction's application of its own law to "the circumstances of the particular case." *Id.* Finally, the Court determines if the foreign states' interest would be "more impaired" than California's interest if California law were applied. *See id.*; *see also McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 87–88 (2010)). This three-step test confirms that the laws of 50 different jurisdictions would apply to Plaintiff's putative nationwide class.

*Conflict of Laws*: "California's consumer protection statutes are materially different from those in other states." *Davison v. Kia Motors Am., Inc.*, No. SACV 15-00239-CJC(RNBx), 2015 WL 3970502, at *2 (C.D. Cal. June 29, 2015) (collecting cases); *Vinci v. Hyundai Motor Am.*, No. SA CV 17-0997-DOC (KESx), 2018 WL 6136828, at *7 (C.D. Cal. Apr. 10, 2018) (same); *Larsen v. Vizio, Inc.*, No.: SACV 14-01865-CJC(JCGx), 2015 WL 13655757, at *2 n.l (C.D. Cal. April 21, 2015) (same). These differences are not trivial because they "involve essential requirements to establish a claim, types of relief and remedies available to a plaintiff, and other dispositive issues." *Davison*, 2015 WL 3970502, at *2. To assist the Court, Mars has attached a chart identifying such material differences. *See* Ex. 1.

*Interest of Foreign Jurisdictions:* California law recognizes that "a jurisdiction ordinarily has the predominant interest in regulating conduct that occurs within its borders." *Mazza*, 666 F.3d at 592 (internal quotation marks omitted). Each state "obviously ha[s] an interest in having their own laws applied to the consumer transactions that took place within their borders." *Davison*, 2015 WL 3970502, at *3.

*Which State Interest Is Most Impaired:* California's interest in applying its law to nonresident

members injured outside California "is much more attenuated" than that of the states where the alleged wrong took place. *Id.* Under California law, the state with the predominant interest is the "place of the wrong," *i.e.*, "the state where the last event necessary to make the actor liable occurred." *Mazza*, 666 F.3d at 593; *see also McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 97–98 (2010).

When, as here, the Court "would have to apply the laws of all 50 states to decide the class claims," common issues of law do not predominate. *Kramer v. Wilson Sporting Goods Co.*, No. CV 13-6330-JFW (SHx), 2013 WL 12133670, at *4 (C.D. Cal. Dec. 13, 2013). To that end, courts in this Circuit routinely dismiss or strike nationwide CLRA and UCL putative class claims on the basis of the choice-of-law analysis. *See, e.g.*, *Davison*, 2015 WL 3970502, at *3; *Smith v. Allmax Nutrition, Inc.*, No. 1:15-cv-007744-SAB, 2015 WL 9434768, at *10 (E.D. Cal. Dec. 24, 2015); *Frenzel v. Aliphcom*, 76 F. Supp. 3d 999, 1010 (N.D. Cal. 2014); *Kramer*, 2013 WL 12133670, at *6; *Route v. Mead Johnson Nutrition Co.*, 2013 WL 658251, at *7–9 (C.D. Cal. Feb. 21, 2013); *Banks v. Nissan N. Am., Inc.*, No. C 11-2022 PJH, 2012 WL 8969415, at *1 (N.D. Cal. Mar. 20, 2012); *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009).

**CONCLUSION**

For the foregoing reasons, Mars respectfully requests that the Court dismiss with prejudice Plaintiff's first amended complaint for failure to state a claim. In the event the Court declines to dismiss Plaintiff's first amended complaint, Mars respectfully requests that the Court dismiss Plaintiff's claims for injunctive relief and dismiss or strike Plaintiff's claims on behalf of a putative nationwide class.

Dated: May 22, 2020

Respectfully submitted,

By: *<u>/s/ David M. Horniak</u>*

David A. Forkner (*pro hac vice to be filed*)
David M. Horniak (State Bar No. 268441)
Youlin Yuan (*pro hac vice to be filed*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
E-mail: dforkner@wc.com
E-mail: dhorniak@wc.com
E-mail: yyuan@wc.com

John K. Rubiner (State Bar No. 155208)

FREEMAN MATHIS & GARY, LLP
550 South Hope Street, Suite 2200
Los Angeles, CA 90071
Telephone: (213) 615-7060
E-mail: jrubiner@fmglaw.com

*Attorneys for Defendant Mars Wrigley Confectionery US, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

| | |
|---|---|
| Helen I. Zeldes | hzeldes@sshhzlaw.com |
| Ben Travis | btravis@sshhzlaw.com |
| Paul L. Hoffman | hoffpaul@aol.com |
| John C. Washington | jwashington@sshhlaw.com |
| Catherine E. Sweetser | csweetser@sshhlaw.com |

Dated: May 22, 2020

Respectfully submitted,

By: */s/ David M. Horniak*

David A. Forkner (*pro hac vice to be filed*)
David M. Horniak (State Bar No. 268441)
Youlin Yuan (*pro hac vice to be filed*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
E-mail: dforkner@wc.com
E-mail: dhorniak@wc.com
E-mail: yyuan@wc.com

John K. Rubiner (State Bar No. 155208)
FREEMAN MATHIS & GARY, LLP
550 South Hope Street, Suite 2200
Los Angeles, CA 90071
Telephone: (213) 615-7060
E-mail: jrubiner@fmglaw.com

*Attorneys for Defendant Mars Wrigley Confectionery US, LLC*