**SCHONBRUN SEPLOW**
**HARRIS HOFFMAN & ZELDES, LLP**
HELEN I. ZELDES (220051)
hzeldes@sshhzlaw.com
BEN TRAVIS (305641)
btravis@sshhzlaw.com
501 W. Broadway, Suite 800
San Diego, CA 92101
Telephone: (619) 400-4990

PAUL L. HOFFMAN (71244)
hoffpaul@aol.com
JOHN C. WASHINGTON (315991)
jwashington@sshhlaw.com
200 Pier Avenue, #226
Hermosa Beach, CA 90245
Telephone: (310) 396-0731

CATHERINE E. SWEETSER (271142)
csweetser@sshhzlaw.com
11543 West Olympic Blvd.
Los Angeles, CA 90064
Telephone: (310) 396-0731

*Attorneys for Plaintiff,*
LORI MYERS

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORI MYERS, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>STARBUCKS CORPORATION, a Washington Corporation; MARS WRIGLEY CONFECTIONERY US, LLC, a Delaware Corporation; THE QUAKER OATS COMPANY, a New Jersey Corporation and; DOES 1-10, inclusive,<br><br>Defendants. | Case No: 5:20-cv-00335-CJC-SHK<br>*Assigned to: Hon. Cormac Carney*<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT, MARS WRIGLEY CONFECTIONERY US, LLC'S MOTION TO DISMISS**<br><br>**DATE: AUGUST 3, 2020**<br>**TIME: 1:30 P.M.**<br>**COURTROOM: 7C** |

# **TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................... 1

II.  STATEMENT OF FACTS ............................................................................. 2

    A.  Child and Forced (Slave) Labor is Endemic in the Cocoa Supply Chain in West Africa ................................................................. 3

    B.  Deforestation and Chemical Use are Also Endemic to the Supply Chain ........................................................................................ 4

    C.  Certification Programs Like "Rainforest Alliance" Are Deceiving .. 4

III.  LEGAL STANDARD ................................................................................... 5

IV.  PLAINTIFF MORE THAN ADEQUATELY STATES A CLAIM ........... 6

    1.  Plaintiff Adequately States a Claim Under the UCL ..................... 6

    2.  Plaintiff Adequately States a Claim Under the CLRA .................. 8

    3.  Whether A Reasonable Consumer Would be Deceived by Mars' Statement Is a Factual Issue Not Appropriately Decided on a MTD ............................................................................................... 8

    4.  Plaintiff Plausibly States a Claim That Mars Has Both Affirmatively and Implicitly Misled the Consumer ....................... 9

        a.  Mars Has Made a Statement that the Dove Dark Chocolate Products Are Traceable from Farms to Factories, When in Fact the Products Are Not Traceable ....................................... 10

           1.  Mars Affirmatively States that Dove Dark Chocolate Products Are "Traceable", Which Is an Affirmative Misrepresentation. ................................................................ 10

           2.  A Reasonable Consumer Would Conclude that Mars' Chocolate is Fully Traceable to the Certified Farms ............. 13

        b.  The Statements and Seal on the Dove Dark Chocolate Packaging Affirmatively Mislead the Reasonable Consumer that The Cocoa Used in Dove Dark Chocolate Products Meets Ethical Standards Regarding Its Workforce ................. 15

        c.  The Statements on the Packaging Affirmatively Misleads the Reasonable Consumer Into Thinking that The Rainforest Alliance Certification Means The Product Meets Environmental Standards ........................................................ 18

    5.  Plaintiff Can Pursue Injunctive Relief ......................................... 19

PLAINTIFF'S OPPOSITION TO DEFENDANT, MARS WRIGLEY
CONFECTIONERY US, LLC's MOTION TO DISMISS

## <u>TABLE OF CONTENTS - CONT'D</u>

6.   Defendant's Motion to Dismiss Putative Class Members' Claims Is Premature and without Merit. ....................................... 21

V.   CONCLUSION .......................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

Page(s)

<u>*Federal Cases*</u>

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................ 23

*Arroyo v. TP-Link USA Corp.*,
  2015 WL 5698752 (N.D. Cal. Sept. 29, 2015) ................................. 22

*Associated Gen. Contr. v. Metro. Water Dist.*,
  159 F.3d 1178 (9th Cir. 1998) ................................................... 6

*Bailey v. Rite Aid Corporation*,
  2019 WL 4260394 (N.D. Cal Sept. 9, 2019) ............................... 8, 16

*Barth v. Firestone Tire & Rubber Co.*,
  661 F. Supp. 193 (N.D. Cal. 1987) ............................................ 23

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................... 6

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*,
  137 S. Ct. 1773 (2017) ........................................................... 22

*Broam v. Bogan*,
  320 F.3d 1023 (9th Cir. 2003) .............................................. 6, 13

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) .............................................. 19, 20

*Donohue v. Apple, Inc.*,
  871 F. Supp. 2d 913 (N.D. Cal. 2012) ........................................ 21

*Forcellati v. Hyland's, Inc.*,
  876 F. Supp. 2d 1155 (C.D. Cal. 2012) .................................. 21, 22

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) ..................................................... 8

*Grimm v. APN, Inc.*,
  2017 WL 6060624 (C.D. Cal. Nov. 20, 2017) ............................... 12

<u>**TABLE OF AUTHORITIES – CONT'D**</u>

Page(s)

*Federal Cases*

*Hadley v. Kellogg Sales Co.*,
243 F. Supp. 3d 1074 (N.D. Cal. 2017) ............................................................ 17

*Hairston v. S. Beach Beverage Co.*,
2012 WL 1893818 (C.D. Cal. May 18, 2012) ................................................... 12

*Ham v. Hain Celestial Grp., Inc.*,
70 F. Supp. 3d 1188 (N.D. Cal. 2014) ......................................................... 9, 14

*Hinojos v. Kohl's Corp.*,
718 F.3d 1098 (9th Cir. 2013).......................................................................... 14

*In re Hyundai and Kia Fuel Economy Litigation*,
926 F.3d 539 (9th Cir. 2019)............................................................................ 23

Jackson v. Gen. Mills, Inc,
No. 18CV2634-LAB (BGS), 2019 WL 4599845 (S.D. Cal. Sept. 23, 2019).... 20

*Jou v. Kimberly-Clark Corp.*,
2013 WL 6491158 ............................................................................................ 14

*Koehler v. Litehouse, Inc.*,
2012 WL 6217635 (N.D. Cal. Dec. 13, 2012) .................................................. 19

*Larsen v. Trader Joe's Co.*,
2012 WL 5458396 (N.D. Cal. June 14, 2012) .................................................. 19

*Lilly v. Jamba Juice Co.*,
2015 WL 1248027 (N.D. Cal. Mar. 18, 2015)........................................ 19, 20, 21

*Lozano v. AT & T Wireless Servs., Inc.*,
504 F.3d 718 (9th Cir. 2007).............................................................................. 7

*Nguyen v. Lotus by Johnny Dung Inc.*,
2019 WL 1957962 (C.D. Cal. Jan. 7, 2019) ................................................19-20

*Pokorny v. Quixtar, Inc.*,
601 F.3d 987 (9th Cir. 2010)............................................................................ 21

# TABLE OF AUTHORITIES – CONT'D

Page(s)

*Federal Cases*

*Polich v. Burlington N., Inc.,*
  942 F.2d 1467 (9th Cir. 1991) ........................................................................... 20

*Price v. Kawasaki Motors Corp., USA,*
  2010 WL 11558133 (C.D. Cal. Oct. 25, 2010) ................................................... 22

*Ries v. Arizona Beverages USA LLC,*
  287 F.R.D. 523 (N.D. Cal. 2012) ........................................................... 19, 20, 21

*Ruiz v. Darigold, Inc./Nw. Dairy Ass'n,*
  2014 WL 5599989 (W.D. Wash. Nov. 3, 2014) ................................................. 12

*Sandoval v. PharmaCare US, Inc.,*
  730 Fed. Appx. 417 (9th Cir. 2018) ..................................................................... 8

*Scheuer v. Rhodes,*
  416 U.S. 232 (1974) .............................................................................................. 6

*Shanks v. Jarrow Formulas, Inc.,*
  2019 WL 7905745 (C.D. Cal. Dec. 27, 2019) ................................................... 20

*Sotomayor v. Bank of Am., N.A.,*
  377 F. Supp. 3d 1034 (C.D. Cal. 2019) .............................................................. 22

*Speyer v. Avis Rent a Car Sys., Inc.,*
  415 F. Supp. 2d 1090 (S.D. Cal. 2005) ............................................................... 23

*Stanwood v. Mary Kay, Inc.,*
  941 F. Supp. 2d 1212 (C.D. Cal. 2012) ..................................................... 1, 3, 14

*Swartz v. KPMG LLP,*
  476 F.3d 756 (9th Cir. 2007) ................................................................................ 6

*Water & Sanitation Health, Inc. v. Rainforest All., Inc.,*
  No. C15-75RAJ, 2015 U.S. Dist. LEXIS 182334, at *15
  (W.D. Wash. Dec. 29, 2015) ............................................................................... 16

*Williams v. Gerber Prod. Co.,*
  552 F.3d 934 (9th Cir. 2008) ........................................................................ Passim

# <u>TABLE OF AUTHORITIES – CONT'D</u>

Page(s)

<u>State Cases</u>

*Bardin v. DaimlerChrysler Corp.*,
 136 Cal. App. 4th 1255 (2006).................................................................. 7

*Brady v. Bayer Corp.*,
 26 Cal. App. 5th 1156 (Cal Ct. App. 2018) ........................................... 11

*Hill v. Roll Int'l Corp.*,
 195 Cal. App. 4th 1295 (2011)................................................................ 16

*Korea Supply Co. v. Lockheed Martin Corp.*,
 29 Cal. 4th 1134 (2003)............................................................................ 7

*Kwikset Corp. v. Superior Court*,
 51 Cal. 4th 310 (2011)............................................................................ 13

*Lavie v. Procter & Gamble Co.*,
 105 Cal. App. 4th 496 (2003).................................................................... 8

*Rose v. Bank of Am., N.A.*,
 57 Cal. 4th 390 (2013).............................................................................. 6

*Rubenstein v. The Gap, Inc.*,
 14 Cal. App. 5th 870 (Ct. App. 2017) .................................................... 17

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*,
 72 Cal.App.4th 861(1999)......................................................................... 7

*Shaeffer v. Califia Farms, LLC*,
 44 Cal. App. 5th 1125 (Ct. App. 2020) .................................................. 17

<u>State Statutes</u>

Civil Code § 1760................................................................................................ 8

<u>Federal Rules</u>

Federal Rule of Civil Procedure 23 .................................................................. 22

Rule 12(b)(6) of the Federal Rules of Civil Procedure ................................... 5, 6

PLAINTIFF'S OPPOSITION TO DEFENDANT, MARS WRIGLEY
CONFECTIONERY US, LLC's MOTION TO DISMISS

# I.      INTRODUCTION

Mars Wrigley Confectionary Ltd, LLC ("Mars") prominently displays the Rainforest Alliance Seal on Dove dark chocolate packaging and next to it states, "We buy cocoa from Rainforest Alliance certified farms, traceable from the farms into our factory." Mars' statement and use of the Rainforest Alliance seal are meant to assure consumers that their chocolate is monitored and not produced in the same fashion as the rest of the chocolate in the region with child and slave labor.  The prominent placement of the Rainforest Alliance seal also deceives consumers into believing Dove's chocolate is an environmentally friendly product, not one that drives destruction of the rainforest.  First Amended Compl. ("FAC") ¶¶ 23, 27, 49, 50, 53.

Mars' labeling is misleading in multiple ways, and these affirmative misrepresentations form the basis for Plaintiff's claims for relief under both the UCL and the CLRA. Far from being "traceable from the farms into our factory", Plaintiff alleges that Mars' cocoa is only 24% traceable, at best, and Plaintiffs contend that *none* of the products are fully traceable to certified farms.  FAC ¶¶ 51, 52, 54, 63. No reasonable consumer would expect, reading Mars' label, that the vast majority of its cocoa -75% of cocoa used in that product - is actually untraceable. *Stanwood v. Mary Kay, Inc*., 941 F. Supp. 2d 1212, 1216 (C.D. Cal. 2012).

Moreover, Mars is well aware that the Rainforest Alliance certification is ineffective.  The statement creates the misleading impression that the certification has some ethical and environmental meaning.  Plaintiffs allege the certification is misleading because it does not guarantee any level of compliance with ethical or environmental standards.  FAC ¶ 18, 33, 37.  Mars sources its cocoa from the Ivory Coast, where child slavery is rampant. FAC ¶¶ 18, 19, 20, 23, 24. The conditions are abhorrent, as described by the Department of Labor: "These children are held against their will on isolated farms, are locked in their living quarters at night, and are threatened and beaten if they attempt to escape. They are punished by their

PLAINTIFF'S OPPOSITION TO DEFENDANT, MARS WRIGLEY
CONFECTIONERY US, LLC's MOTION TO DISMISS

employers with physical abuse. They are forced to work long hours, including overtime, and are required to work even when they are sick. Some children are denied sufficient food." FAC ¶ 20.  Rainforest Alliance does not assess the extent of child labor in their member companies' production. FAC ¶60.  And as Mars knows, the production of its cocoa is anything but environmentally sustainable. Cocoa production in the Ivory Coast "drives rainforest disaster" there, "so much so, that at the current pace of deforestation, there will be no rainforest left in the Ivory Coast by 2030." FAC ¶2.

Plaintiff does not lack standing to seek injunctive relief.  She regularly consumed Dove's dark chocolate and would buy them again if they were produced as advertised.

Finally, it is premature to determine whether Plaintiff may bring a nationwide or multi-state class on a motion to dismiss.  Discovery has not commenced, and Plaintiff is still in the process of identifying additional class members.

Defendant's Motion to Dismiss should be rejected in its entirety.[1]

## II.   STATEMENT OF FACTS

Mars is one of the largest chocolate manufacturers in the world.  It is a long-standing member of the World Cocoa Foundation and is well-aware of the use of the "Worst Forms of Child Labor" (child and slave labor) in its supply chain in West Africa.   FAC ¶15, 17, 24. Rather than decreasing after various industry commitments made over more than two decades, child labor has increased in West Africa.   FAC ¶18. And after two decades of alleged work on this issue, Mars' chocolate is still not traceable from bean to bar, nor does Mars meaningfully monitor its suppliers.  FAC ¶¶ 51, 52, 54, 63. Instead, Mars makes assertions about

---

[1] Plaintiff notes that Defendant filed a brief using a too-small font under the local rules, essentially gaining several extra pages for its briefing.  While Plaintiff has not moved to strike and has efficiently responded to the brief in 25 pages, Plaintiff will move to strike any such over-length reply.

PLAINTIFF'S OPPOSITION TO DEFENDANT, MARS WRIGLEY
CONFECTIONERY US, LLC's MOTION TO DISMISS

traceability meant to mislead the consumer into thinking that Mars is a responsible company that takes slavery seriously.  FAC ¶¶ 23, 27, 49, 50, 52, 53.

### A. Child and Forced (Slave) Labor is Endemic in the Cocoa Supply Chain in West Africa

A recent study conducted by Tulane University concluded that more than 2 million children are involved in the Worst Forms of Child Labor – including trafficking, slavery, and exposure to toxic chemicals and hazards -- on cocoa plantations in Cote d'Ivoire and Ghana, where Defendants' chocolate is sourced. FAC ¶¶2, 17, 20.  Child slavery is endemic in cocoa harvesting in West Africa and the "Chocolate industry drives rainforest disaster in [the] Ivory Coast" – so much so, that at the current pace of deforestation there will be no forest left in the Ivory Coast by 2030. *Id.*

The number of cocoa farmers in Côte d'Ivoire and Ghana is estimated to be around 2 million. FAC ¶21. The majority of these farmers are also dispersed around the country in a region called the "cocoa belt," located across the southern region of Côte d'Ivoire. FAC ¶21. Their small operation and fragmented presence across the country favor a system in which farmers sell to intermediaries who collect the beans and gather them in warehouses. These intermediaries are either cooperatives, where the farmers are part of a cooperative system, or individuals called "middlemen", who are not part of any formal organization.  FAC ¶22. Middlemen collect beans across diverse farms in the cocoa belt, where no monitoring takes place, to sell to grinders or traders, and then to manufacturers such as Defendants. FAC ¶22.  In Cote d'Ivoire, a small percentage of farmers, estimated at 20%, are in a formal cooperative system. In other words, the vast majority of the cocoa sourced in the country comes from untraceable farms, in which child and slave labor is a common and widespread practice.  FAC ¶23.

///

///

The U.S. Department of Labor describes the conditions of forced labor in chilling detail:

> "[s]ome children are sold by their parents to traffickers, some are kidnapped, and others migrate willingly but fall victim to traffickers who sell them to recruiters or farmers, where they end up in conditions of bonded labor. Some farmers buy the children and refuse to let them leave the farm until the debt of their purchase has been worked off. The children are frequently not paid for their work; some of their wages are paid to the recruiter or trafficker. These children are held against their will on isolated farms, are locked in their living quarters at night, and are threatened and beaten if they attempt to escape. They are punished by their employers with physical abuse. They are forced to work long hours, including overtime, and are required to work even when they are sick. Some children are denied sufficient food by their traffickers and employers."

FAC ¶20.

## B.  Deforestation and Chemical Use are Also Endemic to the Supply Chain

In addition to mass deforestation, the current known and common practices around cocoa farming are not sustainable. There is excessive use of fertilizers and pesticides and a loss of biodiversity. Chemicals pollute waterways, killing wildlife and harming communities. Deforestation exposes shade-dependent plants to full sun, which increased the biosphere's susceptibility to disease. FAC ¶37.

## C.  Certification Programs Like "Rainforest Alliance" Are Deceiving

A recent report sheds light on the fact that "certification programs have failed to lift farmers out of poverty or achieve any significant industry-wide improvements and give consumers a misleading impression that farmers experience decent conditions." FAC ¶56.  Rather than a serious program aimed at helping farmers, Rainforest Alliance runs a business-friendly certification, one that lacks social and environmental standards and is poorly enforced. FAC ¶ 57.

A recent study reports that almost all cocoa workers "do not know whether the farms where they were employed were certified or not, and many farmers were

unaware of whether their farms were certified or, if they were, what certification required of them."20 This is important because the certification programs rely heavily on *self-reporting* and *self-verification* as the primary mechanism for auditing and reporting – both an incredibly unrealistic mechanism (demanding that a child victim stand up to their oppressor or a farmer risk losing their certificates), and a highly inaccurate measure. Indeed, only a small percentage of certified farmers are even aware of the minimum age for children to work on their farm. FAC ¶58.

Additionally, auditing takes place in less than 40% of these "certified" farms and most schemes rely heavily on "self-verification" by farmers. FAC ¶59.

Further, Rainforest Alliance, like the other so-called "fair trade" initiatives mislead the public by creating the false impression that they are certifying cocoa as child-labor-free when they do not in fact assess the extent of child labor in their member companies' production. In addition, Rainforest Alliance admits that in West Africa they mix "certified" beans with uncertified beans to maintain supply. FAC ¶ 60.

Rather than decreasing after various industry commitments made over more than two decades, child labor has increased in West Africa. According to the 2015 Tulane Report, a major study of the West African cocoa industry commissioned by the United States Department of Labor, the increase in cocoa production has also led to a growth in child laborers to 2.1 million children in Côte d'Ivoire and Ghana. Of this number, 1,153,672 children working in the cocoa sector are involved in hazardous work, including using machetes to cut trees or cocoa pods, burning fields, carrying heavy loads, handling agro-pharmaceutical products, as well as being deprived of schooling.  FAC ¶18.

## III.   LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept as true all of the factual allegations set out in

1   plaintiffs complaint, draw inferences from those allegations in the light most

2   favorable to plaintiff, and construe the complaint liberally. *Associated Gen. Contr.*

3   *v. Metro. Water Dist.*, 159 F.3d 1178, 1181 (9th Cir. 1998); *Williams v. Gerber*

4   *Prod. Co.*, 552 F.3d 934, 937 (9th Cir. 2008).

5        The sole issue raised by a Rule 12(b)(6) motion is whether the facts pleaded

6   would, if established, support a plausible claim for relief. Thus, no matter how

7   improbable the facts alleged are, they must be accepted as true for purposes of the

8   motion. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

9        The question of plaintiff's ability to prove her allegations, or possible

10  difficulties in making such proof, is not appropriate at this stage. In considering a

11  Rule 12(b)(6) motion, the court does not inquire whether a plaintiff will ultimately

12  prevail, only whether he is entitled to offer evidence to support his claims. *Scheuer*

13  *v. Rhodes*, 416 U.S. 232, 236 (1974).  If any deficiency is found on a motion to

14  dismiss, leave to amend should be granted except in "extraordinary" cases.  *Broam*

15  *v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

16       While Plaintiff does not believe the heightened fraud standard applies to her

17  UCL unfair and unlawful prong claims – even if the 9(b) standard did apply,

18  Plaintiff has complied with the Ninth Circuit's requirement that her allegations

19  include "an account of the time, place, and specific content of the false

20  representations as well as the identities of the parties to the misrepresentations."

21  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

22  **IV.   PLAINTIFF MORE THAN ADEQUATELY STATES A CLAIM**

23       **1. Plaintiff Adequately States a Claim Under the UCL**

24       Plaintiff adequately states a claim under the unlawful prong of the UCL. By

25  proscribing "any unlawful" business act or practice, the UCL "borrows" violations

26  of other laws and treats them as unlawful practices that the UCL makes

27  independently actionable.  *Rose v. Bank of Am., N.A.*, 57 Cal. 4th 390, 396 (2013).

28  Plaintiff's claim under the unlawful prong rests on Defendant's violation of the

1    CLRA. Plaintiff adequately state a claim under the CLRA (as show below) and

2    therefore she has adequately stated a claim under the unlawful prong of the UCL.

3         Plaintiff has also stated a claim under the unfair prong of the UCL. The

4    "unfair" prong of the UCL creates a cause of action for a business practice that is

5    unfair even if not proscribed by some other law. *Korea Supply Co. v. Lockheed*

6    *Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003). The UCL does not define the term

7    'unfair'. Some California courts apply a balancing test, which requires courts to

8    "weigh the utility of the defendant's conduct against the gravity of the harm to the

9    alleged victim." *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal.App.4th

10   861, 886-87 (1999). Other California courts apply a "tethering" test, under which

11   the "unfairness must be tethered to some legislatively declared policy or proof of

12   some actual or threatened impact on competition." *Lozano v. AT & T Wireless*

13   *Servs., Inc.*, 504 F.3d 718, 735-36 (9th Cir. 2007).

14        Plaintiff's allegations are sufficient to state a claim under the "unfair" prong

15   of the UCL under either test. Under the balancing test, the California Courts of

16   Appeal have stated that "an unfair business practice occurs when it offends an

17   established public policy or when the practice is immoral, unethical, oppressive,

18   unscrupulous or substantially injurious to consumers." *Bardin v. DaimlerChrysler*

19   *Corp.*, 136 Cal. App. 4th 1255 (2006) (internal quotation marks omitted).

20   Defendant's deceptive labeling on its packaging offends an established public

21   policy to not use false and misleading advertising, is unethical, unscrupulous and

22   substantially injurious to consumers. Plaintiff would not have purchased the product

23   had she been aware the statements were deceptive. FAC ¶ 13.

24        Applying the "tethering" test yields the same result. Plaintiff's unfair-prong

25   claim is tethered to California's public policy against false and misleading

26   advertising under the CLRA. Therefore, for the reasons stated below as to the

27   CLRA claim, Plaintiff has adequately stated her claim under the unfair prong.

28   ///

### 2.  Plaintiff Adequately States a Claim Under the CLRA

The CLRA finds to be unlawful, unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer. Plaintiff has adequately pled that Quaker engaged in unfair and deceptive acts by its false and misleading labels, that Plaintiff purchased the products, and that Plaintiff was harmed by the misleading labeling, relying on it to purchase the product when she would not have done so if she had known it was deceptive or misleading. Therefore, Plaintiff has adequately stated a claim under the CLRA.

### 3.  Whether A Reasonable Consumer Would be Deceived by Mars' Statement Is a Factual Issue Not Appropriately Decided on a MTD

Claims under the UCL and CLRA are governed by the "reasonable consumer test." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)). The standard is whether the allegations indicate "that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). The CLRA at Civil Code § 1760 also emphasizes that "[The law] shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Under this standard, a cognizable claim exists "if a reasonable consumer could find [a] statement would be 'either actually misleading' or having the 'capacity, likelihood, or tendency to deceive or confuse the public.'" *Bailey v. Rite Aid Corporation*, 2019 WL 4260394 at *6 (N.D. Cal Sept. 9, 2019).

It is equally well-settled that in evaluating deceptiveness, context is crucial. *Sandoval v. PharmaCare US, Inc.*, 730 Fed. Appx. 417, 419 (9th Cir. 2018) ("While the word 'intensify' may have multiple meanings, when read in context, the label's

statements could convey to a reasonable consumer that IntenseX will increase the consumer's endurance and stamina"); see also *Williams*, 552 F. 3d at 939 n. 3 ("Given the context of this statement [that it is nutritious], we decline to give Gerber the benefit of the doubt by dismissing the statement as puffery."). Notably, whether consumers could be misled is ordinarily a question of fact and a decision to dismiss based solely on a court's own review of a package is generally improper. *Williams*, at 938–39 (9th Cir. 2008). It is a "rare situation" in which dismissal of these claims would be appropriate because the allegations could not meet the "reasonable consumer" test. *Id*. at 939.

Mars' arguments are not properly decided on a motion to dismiss. "Whether a reasonable consumer would be deceived by a product label is generally a question of fact not amenable to determination on a motion to dismiss." *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014).   Central to Mars' Motion to Dismiss is its argument that a reasonable consumer would not be misled by the statement on the label next to the Rainforest Alliance Seal.  That is a clearly a disputed issue of fact and a question for summary judgment.  Plaintiffs have adequately alleged that the statement, "We buy cocoa from Rainforest Alliance certified farms, traceable from the farms into our factory," placed next to a Rainforest Alliance seal, is misleading.  Mars addresses at length whether or not the Rainforest Alliance seal is meaningful; Plaintiffs have alleged that it is not.  This is clearly a hotly disputed issue of fact not appropriate for determination at this stage.  None of Mars' assertions regarding the value of the certification are relevant in the motion to dismiss context, which is decided solely on the facts Plaintiffs have alleged.  *Williams.*, 552 F.3d at 937.

### 4. Plaintiff Plausibly States a Claim That Mars Has Both Affirmatively and Implicitly Misled the Consumer

Plaintiff alleges that Mars has affirmatively and implicitly placed deceptive marketing claims on their product labels (FAC ¶ 27, 49) in order to capture the

9

conscientious consumer market.  Mars' reliance on the omissions caselaw is not relevant here.  Plaintiffs are not relying on a duty to disclose, but on the affirmative statement and seal placed on Mars' packaging.

Mars advertises its Dove Dark Chocolate products as "traceable from the farms to [its] factories" and prominently displays the Rainforest Alliance Certification seal on their packaging. FAC ¶ 49.  The facts, which Mars does not dispute, are as follows: only a small percentage of the chocolate Mars buys, less than a fourth of their total purchases, originates on certified farms. FAC ¶ 51.  Mars cannot trace that chocolate to the actual Dove Dark Chocolate products themselves or guarantee that any of the chocolate in the purchased products actually came from certified farms. FAC ¶ 52.  Because Mars cannot make traceability claims, it cannot ensure that its products are produced without the assistance of forced or child labor. FAC ¶ 54.

Rainforest Alliance is a third-party certifier which holds itself out as the benchmark for sustainable cocoa production.  FAC ¶ 49.  Rainforest Alliance certified products supposedly stand for ethical and sustainable farming, including better working conditions and better care for the natural environment.  *Id.* However, as discussed above in the statement of facts, the Rainforest Alliance certification does not mean that Mars' cocoa products have met any improved standards whatsoever.  Even if the cocoa was fully traceable to certified farms, which it is not, the statement would still be misleading because the certification would not guarantee production according to ethical or environmental standards.

### a. Mars Has Made a Statement that the Dove Dark Chocolate Products Are Traceable from Farms to Factories, When in Fact the Products Are Not Traceable

#### 1. Mars Affirmatively States that Dove Dark Chocolate Products Are "Traceable", Which Is an Affirmative Misrepresentation.

In its brief, Mars attempts to argue that there is no affirmative misrepresentation at issue here.  Mars cannot identify the farms where all their

cocoa comes from.  FAC ¶ 51.  Mars can, at best, trace only 24 percent of its cocoa back to farms,[2] let alone track whether forced child labor was used in producing it. *Id.* This is true even for their Dove Dark Chocolate product line, which they claim is "traceable from the farms into our factory."  FAC ¶ 49.  A reasonable consumer would be misled by this statement into believing that the product they are consuming contains certified cocoa.

Mars argues that since 24% is more than the volume of the products on which they advertise traceability, Plaintiff's assertion that the statement is misleading is speculative.   But Mars itself now admits on its website that "Given the large volumes of chocolate we produce, we are unable to ensure traceability and segregation through to the individual DOVE® Dark Chocolate products in stores."[3]

In fact, Plaintiffs allege that Mars cannot guarantee that the specific Dove Dark Chocolate products consumers buy contain any cocoa that is traceable to certified farms. FAC ¶¶ 51-54.  Defendant's argument that a sentence fragment cannot mislead a reasonable consumer is simply absurd. Def. Mot. at 8, 10.  Mars wrote on its packaging that "We buy cocoa from Rainforest Alliance certified farms, traceable from the farms into our factory."  Essentially, it is arguing that in order to be held liable, it would have to have written, "We buy cocoa from Rainforest Alliance certified farms.  It is traceable from the farms into our factory."  No

---

[2] https://www.washingtonpost.com/graphics/2019/business/hershey-nestle- mars-chocolate-child-labor-west-africa/

[3]  Mars has placed this information as a "pop-up" if the consumer clicks on a small print tag called "Rainforest Alliance Notice" at the very bottom of the dovechocolate.com website.
https://dovechocolate.com/tagged/dove?msclkid=aa98d4e8e2151e4d34948a05f3394fae&gclid=CI3F9dvNjuoCFZAtfgodnikElw&gclsrc=ds#. This hidden pop-up cannot cure the misleading nature of the label. *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1172 (Cal Ct. App. 2018).

PLAINTIFF'S OPPOSITION TO DEFENDANT, MARS WRIGLEY
CONFECTIONERY US, LLC's MOTION TO DISMISS

1   reasonable person reading the back of a package would see any meaningful

2   distinction between the two.

3          The addition of the Rainforest Alliance seal next to the assertion also

4   heightens the misleading nature of the statements. Courts have previously found

5   that accompanying statements like "natural" with depictions of crossed out test

6   tubes increased the misleading nature of the statements.  *Grimm v. APN, Inc*., No.

7   SACV1700356JVSJCGX, 2017 WL 6060624 at *4 (C.D. Cal. Nov. 20, 2017).

8   Here, the misleading sentence was placed next to the Rainforest Alliance logo.

9   Consumers' attention clearly was being directed to the fact that the beans were

10  "certified", and the statement by Mars was that the beans were "traceable from the

11  farms into the factory".   Plaintiff has adequately alleged that this affirmative

12  misrepresentation by Mars was misleading to the consumer.

13         The cases Defendant cites do not support its position that the clause

14  "traceable from the farms into our factory" is somehow too short to convey relevant

15  factual information to the consumer.  In *Ruiz v. Darigold*, the core question was

16  whether the language on the label was aspirational or factual.  *Ruiz v. Darigold,

17  Inc./Nw. Dairy Ass'n*, No. C14-1283RSL, 2014 WL 5599989 at *4 (W.D. Wash.

18  Nov. 3, 2014).  The court found it to be aspirational.  The court's decision was not

19  based on the presence or absence of a verb or a subjunctive clause.

20         In *Hairston v. S. Beach Bev. Co., Inc.*, the phrase, "all natural," could not on

21  its own sustain a claim about the inclusion of synthetic ingredients because the

22  phrase was modified by "with vitamins" on the packaging, a phrase which under

23  federal law could not be challenged, and because the ingredients list clarified what

24  was meant.  *Hairston v. S. Beach Beverage Co*., No. CV 12-1429-JFW DTBX, 2012

25  WL 1893818 at *4 (C.D. Cal. May 18, 2012).   Mars does not point to any

26  comparable packaging that clarifies the label.  Looking more closely at the package

27  would not alert a consumer that what is meant by "traceable from farms into our

28

PLAINTIFF'S OPPOSITION TO DEFENDANT, MARS WRIGLEY
CONFECTIONERY US, LLC's MOTION TO DISMISS

factory" actually means "a small percentage may be traceable to our factory but not traceable to this specific product."

The inability to trace any of the products marked with "traceable from farms into our factory" back to the farms on which they are produced means that Mars is affirmatively misleading the consumer.[4]

### 2. A Reasonable Consumer Would Conclude that Mars' Chocolate is Fully Traceable to the Certified Farms

Mars' affirmative statement on the label that it buys chocolate that is traceable to certified farms is not qualified with any context clarifying that only less than a fourth of the chocolate is traceable (with none being traceable to the specific product). A reasonable consumer would conclude that Mars buys certified chocolate only, or at least that the majority of the chocolate is certified. In reality, less than a fourth of the chocolate used in Mars products is certified.

Mars' claims of traceability are similar to claims upheld in past cases where an assertion was made without qualifying percentages on a label; courts have found that that claim is misleading as a reasonable consumer would conclude that that specific product complied, not just components of the product or portions of the product line. In *Kwikset*, a consumer purchased a lock which was labeled "Made in U.S.A."; however, only certain parts of the lock were traceable to the United States. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 328 (2011). The court ruled that the consumer had standing to sue under the UCL. *Id.* Like the product in *Kwikset*, Mars' chocolate fails to fully meet its claim of being traceable. Just as only parts of the lock were traceable to the United States, only parts of Mars' chocolate are traceable to Rainforest Alliance Certified™ farms. Similarly, in

---

[4] If the court finds this in any way unclear on the face of the complaint, Plaintiff should be given leave to amend. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

PLAINTIFF'S OPPOSITION TO DEFENDANT, MARS WRIGLEY
CONFECTIONERY US, LLC's MOTION TO DISMISS

1   *Stanwood v. Mary Kay, Inc.* the court also concluded that a claim that products were

2   not tested on animals would be understood by the reasonable consumer to mean that

3   none of the products were tested on animals.  *Stanwood v. Mary Kay, Inc*., 941 F.

4   Supp. 2d 1212, 1216 (C.D. Cal. 2012).     Mary Kay's defense was that some,

5   although not all, of its products were not tested on animals; some of the products

6   consumers bought may have been tested on animals.  *Id.*  Just as no reasonable

7   consumer would think that a product might have been tested on animals when the

8   packaging clearly stated that no animal testing was performed, so to would no

9   reasonable consumer believe that a product purporting to be made from "traceable"

10  cocoa traceable came from a product line that was mostly untraceable, with only

11  less than a quarter being traceable.

12       In *Jou v. Kimberly-Clark Corp.*, the court held that a reasonable consumer

13  could be misled into believing that "pure and natural" diapers contained no

14  unnatural ingredients. *Jou v. Kimberly-Clark Corp.*, No. C-13-03075 JSC, 2013 WL

15  6491158 at *9 (N.D. Cal. Dec. 10, 2013.  The pure and natural representation would

16  not mean to a reasonable consumer that the product was 24% pure and natural.

17       When a consumer purchases a product, he or she expects any claims to be

18  truthful.  *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1109 (9th Cir. 2013), as

19  amended on denial of reh'g and reh'g en banc (July 8, 2013) (reversing the dismissal

20  of UCL and CLRA claims where products were marketed as having been marked

21  down from a fictitious "original" price, when products were in fact ordinarily sold

22  at the advertised "sale" price).  *See also Ham v. Hain Celestial Grp.*, Inc., 70 F.

23  Supp. 3d 1188 (N.D. Cal. 2014) (finding sufficient grounds to state a claim under

24  the CLRA where plaintiff alleged that a reasonable consumer would not expect to

25  find synthetic ingredients in waffles labeled as "all natural").

26       Plaintiffs have adequately alleged that a reasonable consumer would think

27  that Dove Dark Chocolate products bearing the "traceable" label are fully traceable

28  to Rainforest Alliance certified farms.  As Plaintiff will demonstrate throughout this

PLAINTIFF'S OPPOSITION TO DEFENDANT, MARS WRIGLEY
CONFECTIONERY US, LLC's MOTION TO DISMISS

case, they are not traceable at all; a consumer buying a Dove Dark Chocolate product has no guarantee that *any* of the cocoa used therein can be traced back to a certified farm.

### b. The Statements and Seal on the Dove Dark Chocolate Packaging Affirmatively Mislead the Reasonable Consumer that The Cocoa Used in Dove Dark Chocolate Products Meets Ethical Standards Regarding Its Workforce.

The full statement, "We buy cocoa from Rainforest Alliance Certified™ farms, traceable from the farms into our factory," creates a reasonable inference by the consumer that ethical standards are met. Defendants argue that the words "traceable" and "Rainforest Alliance certified" should be considered separately by this court, rather as a full sentence. The word "traceable," as used on Mars' packaging, means more than the rudimentary definition proffered by the defendant: "capable of being traced." "Traceable," as defined by the dictionary, means "suitable or of a kind to be attributed to something specified." *Traceable, Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/traceable. In the present case, the "something specified" is the Rainforest Alliance standards. Thus, the meaning of the statement on the label is that all cocoa supplied to the factory is traceable to farms that meet Rainforest Alliance's alleged standards. There is no question that this statement is specifically placed on the label to mislead the consumer into thinking that the supply chain is traceable to farms which meet certain ethical standards—in particular, environmental and labor standards—which Mars does not attempt to argue are actually met.

Plaintiff has alleged that the Rainforest Alliance seal and certification stands for "better working conditions." FAC ¶49. However, as discussed above in the statement of facts, this certification does not include any reliable audit or compliance mechanism; farmers can certify themselves through self-reporting. FAC ¶ 58. Rainforest Alliance mixes certified with uncertified beans, and does not

1  assess the extent of child labor in company supply chains.  FAC ¶ 60.  Thus, these

2  terrible forced labor practices take place even on certified farms.

3      The use of the word traceable in combination with the Rainforest Alliance

4  seal misleads consumers into thinking they are buying an ethically sound product.

5  FAC ¶ 61.  Using the definition of the common word "traceable," a reasonable

6  consumer is likely to assume that DOVE® Dark Chocolate is produced without

7  child or forced labor.  Because a reasonable consumer would likely come to such a

8  conclusion upon reading the DOVE® label, the implied representation is actionable

9  under *Williams*. *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 937 (9th Cir. 2008).

10      In *Water & Sanitation Health, Inc. v. Rainforest All., Inc.*, plaintiff alleged

11  that Rainforest Alliance certification induced plaintiff to spend money that they

12  would not have had they been aware that the Rainforest Alliance seal did not in fact

13  stand for what it purports to. The court found this allegation sufficient to state a

14  claim.  *Water & Sanitation Health, Inc. v. Rainforest All., Inc*., No. C15-75RAJ,

15  2015 U.S. Dist. LEXIS 182334, at *15 (W.D. Wash. Dec. 29, 2015).  So too here:

16  Plaintiffs have alleged that the statements on the label, saying that the cocoa is

17  traceable to Rainforest Alliance certified farms, taken together with the seal on the

18  packaging, represented a certain ethical standard.

19      A seal and accompanying statement can in fact mislead a consumer.  In *Hill*

20  *v. Roll Int'l Corp.*, the image on the product was a simple green drop alongside a

21  URL that pointed to a company website.  *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th

22  1295, 1299 (2011).  The court relied upon the fact that the symbol did not resemble

23  any third-party certification in finding that no reasonable consumer would think that

24  the symbol made any specific representation.  *Id.* at 1304 (2011) ("The example in

25  the FTC guides does include, as likely to mislead, a "globe icon" with or without

26  the words Earth Smart around it (id., example 5); but a symbol of the Earth is more

27  suggestive of a seal of an environmental organization . . . Fiji water has just a green

28  drop.").  *Hill* does stand for the principle that a statement can be true but still be

actionable because they have the 'capacity, likelihood, or tendency to deceive or confuse the public.'" *Bailey v. Rite Aid Corporation,* 2019 WL 4260394 at *6 (N.D. Cal Sept. 9, 2019).  Just as a globe icon would be misleading in that case, here the Rainforest Alliance certification seal and the statement that Mars buys certified beans is misleading. Any consumer would think that certain environmental and ethical standards were being guaranteed by the certification.  As alleged in the complaint, even certified beans are made with forced labor and lead to environmental degradation.

The other cases Defendant relies on are inapposite; they concern assumptions made in distinctly different situations where no certification was made or implied. Two of the cases deal with the lack of additional ingredients in food:   *Shaeffer v. Califia Farms, LLC,* 44 Cal. App. 5th 1125, 1139 (Ct. App. 2020) and *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1093 (N.D. Cal. 2017).  In *Shaeffer*, the court stated that a reasonable consumer would not make assumptions about the quality of competing products based on the words "no sugar added".  *Id*.  Plaintiffs are not asserting that the labeling implies that other products are made with slave labor; an analogous case would be if that product in *Shaeffer* had itself had added sugar. Similarly, in *Hadley* the court granted a motion to dismiss on the ground that the statement "MADE WITH Real Fruit" would not lead a reasonable consumer to infer that the product did not contain trans-fat.  *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1093 (N.D. Cal. 2017).  There is a much greater leap between real fruit and an additional, unrelated ingredient than there is between "traceable" and "certified" and fair work practices.

Defendant also relies on a case concerning an unadvertised assumption that a factory or outlet store would have the same quality clothing as a regular store. *Rubenstein v. The Gap, Inc.,* 14 Cal. App. 5th 870, 877 (Ct. App. 2017).  In that case, no statement was alleged to have been made about the quality of the clothes. Here, there is a specific statement and seal on the label which misleads the consumer

into thinking that the "certified" and "traceable" chocolate meets ethical and environmental standards.   The affirmative statement that the cocoa is traceable to certifiable farms is demonstrably false, and Plaintiffs will prove its falsity as the case proceeds.

### c. The Statements on the Packaging Affirmatively Misleads the Reasonable Consumer Into Thinking that The Rainforest Alliance Certification Means The Product Meets Environmental Standards.

A reasonable consumer would interpret the Rainforest Alliance seal to indicate that the product is environmentally friendly.  Given the name of the certifying organization and use of a frog image that implies benefit to rainforest fauna, reasonable consumers are likely to infer that when buying a Dove Dark Chocolate product with the Rainforest Alliance seal, they have purchased a product which does not contribute to mass deforestation and destruction of biodiversity.

However, as discussed above, Plaintiffs have alleged that Rainforest Alliance does not audit its farms and relies primarily on self-reporting. FAC ¶58, 59.  cocoa production has caused a loss of many acres of rainforest.  FAC ¶33.  This has devastating consequences for both biodiversity and the local microclimate.  FAC ¶33.  Cocoa production is also responsible for excessive use of fertilizers and pesticides. FAC ¶37.  Chemicals pollute waterways, killing wildlife and harming communities. FAC ¶37.  Through its use of the Rainforest Alliance seal, Mars is misleadingly representing that its product is somehow held to a higher environmental standard, when the Rainforest Alliance seal does not have a meaningful impact and is a "business-friendly" certification.[5]

---

[5] FAC ¶57 (citing Corporate Accountability Lab, *Empty Promises: The Failure of Voluntary Corporate Social Responsibility Initiatives to Improve Farmer Incomes in the Ivorian Cocoa Sector, July 2019*, at 15; *available at* https://static1.squarespace.com/static/5810dda3e3df28ce37b58357/t/5d321076f1125e0001ac51ab/1563562117949/Empty_Promises_2019.pdf).

### 5.  Plaintiff Can Pursue Injunctive Relief

This Circuit has recognized that standing for those consumers misled by false advertising to seek injunctive relief but made aware of the misrepresentations, is appropriate, indeed essential.  Otherwise, it would allow "a defendant to undermine California's consumer protection statutes and defeat injunctive relief simply by removing a case from state court." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018).  "To prevent plaintiffs from bringing suit on behalf of a class in federal court would surely thwart the objective of California's consumer protection laws." *Id.*; *see also, e.g.*, *Koehler v. Litehouse, Inc.*, No. CV 12-04055 SI, 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2012) (finding that a narrow construction of an Article III standing would "eviscerate the intent of the California legislature in creating consumer protection statutes because it would effectively bar any consumer who avoids the offending product from seeking injunctive relief"); *Larsen v. Trader Joe's Co.*, No. C 11-05188 SI, 2012 WL 5458396, at *4 (N.D. Cal. June 14, 2012) (same).

Even if the Plaintiff will never purchase again given misrepresentations, she has standing where she would like to.  One harm sufficient for injunctive relief is "that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to.  *Id.* at 969–70 (citing *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012), *Lilly v. Jamba Juice Co.*, No. 13-CV-02998-JST, 2015 WL 1248027, at *4 (N.D. Cal. Mar. 18, 2015)).  The fact that a consumer may not rely on advertising with confidence is the kind of redressable injury at which the CLRA and UCLA intend to remedy.  *Ries*, 287 F.R.D. at 533; *Lilly*, 2015 WL 1248027 at *4.

That warrants injunctive relief here.  Plaintiff would like to buy Defendant's chocolate if it was produced as advertised, which is sufficient injury for injunctive relief.  *E.g.  Nguyen v. Lotus by Johnny Dung Inc.*, No.

PLAINTIFF'S OPPOSITION TO DEFENDANT, MARS WRIGLEY
CONFECTIONERY US, LLC's MOTION TO DISMISS

1  SACV171317JVSJDEX, 2019 WL 1957962, at *4 (C.D. Cal. Jan. 7, 2019)

2  (allegation that plaintiff would consider buying a product "if Defendant

3  manufactures and sells the product that delivers" on its claims creates standing)

4  (citation marks omitted).   That Plaintiff would like to buy the product can be

5  inferred given she has bought the product repeatedly before discovering it was

6  misleading.  FAC ¶ 15.  If the court finds that Plaintiffs' desire to buy the product

7  cannot be inferred from the complaint as it stands, leave to amend would be

8  appropriate *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991).

9        Plaintiff also has an injury permitting injunctive relief as she is unable to

10  rely on Defendant's labelling in the future.  *Davidson*, 889 F.3d at 969–70; *Ries*,

11  287 F.R.D. at 533; *Lilly* 2015 WL 1248027 at *4.  Defendant's product clearly

12  could become traceable – or they could opt not to use slave labor – and Plaintiff

13  cannot rely on suggestions otherwise with confidence. This distinguishes the

14  unpublished cases Defendant cites and permits injunctive relief, particularly at the

15  motion to dismiss stage.  In *Shanks v. Jarrow Formulas, Inc*., the plaintiff alleged

16  that coconut oil was unhealthy by nature, when the defendant represented

17  otherwise. LACV1809437PAAFMX, 2019 WL 7905745, at *1 (C.D. Cal. Dec.

18  27, 2019).  At summary judgment the court found injunctive relief unwarranted

19  because coconut oil has one ingredient and the court could not see how the

20  Plaintiff "can possibly" think it could somehow become healthy. *Id.* at *5.  In

21  *Jackson v. Gen. Mills, Inc,* a cereal box was explicit about how much cereal it

22  contained, but Plaintiff contended she mistakenly believed cereal was determined

23  by a box size.  No. 18CV2634-LAB (BGS), 2019 WL 4599845, at *5 (S.D. Cal.

24  Sept. 23, 2019).  The Court found that given she learned one can determine cereal

25  by weight, she lacked standing for injunctive relief or future injury. *Id.* Such cases

26  are clearly distinguishable from the allegations here, where Defendant could make

27  its product traceable, or elect not to use slave labor, and a plaintiff cannot rely on

28

1   allegations otherwise.  Plaintiff's allegations are also similar to the cases *Davidson*

2   approved of.  *E.g. Ries*, 287 F.R.D. at 533; *Lilly*, 2015 WL 1248027 at \*4.

3          **6.  Defendant's Motion to Dismiss Putative Class Members' Claims**
4              **Is Premature and without Merit.**

5          Defendant maintains that the Court should dismiss claims of putative class

6   members outside the United States, alleging that these putative class members'

7   claims are "extraterritorial"," and violate the constitution, and California's choice

8   of law rules.  Mot. at 21–24. Defendants do not dispute the arguments have no

9   bearing for the named, California Plaintiff.  The arguments fail for several reasons.

10         First, they are premature.   The issues Defendant raises are fact-specific

11  ones pertaining to individual class members and the complexity of their states

12  particular interests for their claims, which is improper to address before class

13  members and these individual states exist.  Choice of law, for example, is fact-

14  specific and involves the particular foreign laws and facts at issue. Resolution of

15  the matter is not appropriate "until the Parties have explored the facts in this case,

16  it would be premature to speculate about whether the differences in various states'

17  consumer protection laws are material in *this* case."  *Forcellati v. Hyland's, Inc.*,

18  876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012).  It is Defendant's burden to show a

19  compelling reason to displace California law.  *Id.* at 1160.  Defendant does not

20  address any individual states' laws at all other than claiming they are "different,"

21  without any suggestion if or how any purported difference is material or relates to

22  the case.  Ex. 1 to Mot.  That alone is fatal to the argument that such claims must

23  be dismissed at this stage.   *Forcellati, Inc.*, 876 F. Supp. 2d at 1160; *Pokorny v.*

24  *Quixtar, Inc.*, 601 F.3d 987, 995 (9th Cir. 2010) (addressing material differences);

25  *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 923 (N.D. Cal. 2012) ("[W]hile

26  plaintiff does point to several differences between Washington and California law

27  in his opposition motion, more is needed for Apple to sustain its burden to show

28

1   that those differences are " 'material,' that is, ... they 'make a difference in this

2   litigation.'").[6]

3        Defendant's due process argument is a red herring. True, due process may in

4   certain circumstances limit the reach of a lawsuit. *Sotomayor v. Bank of Am., N.A.,*

5   377 F. Supp. 3d 1034, 1036–37 (C.D. Cal. 2019) (Carney, J.); *Bristol-Myers Squibb*

6   *Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1779

7   (2017). But where, as here, due process allows claims by the named Californian

8   Plaintiff, additional claims by out-of-state unnamed, putative Plaintiffs do not

9   violate a Defendant's due process and certainly cannot before the class is certified.

10   Sotomayor, 377 F. Supp. 3d at 1038–39; id. at 1037 n. 2. Federal Rule of Civil

11   Procedure 23 ensures additional safeguards for due process in such class actions.

12   Id. at 1038.

13        The dismissal for purported lack of extraterritorial application to putative

14   class members' claims are also premature. "A plaintiff's non-residency in

15   California is not enough to preclude application of California Consumer protection

16   laws." *Arroyo v. TP-Link USA Corp.*, No. 5:14-CV-04999-EJD, 2015 WL 5698752,

17   at *2 (N.D. Cal. Sept. 29, 2015). Defendant claims the "CLRA and UCL do not

18   extend to nonresident class members for claims against non-resident corporations,"

19   and that all claims by any non-resident should be stricken. Mot. at 21. But

20   extraterritorial application depends on the specifics of the case. For example,

21   "remedies under the UCL and CLRA may be available to non-California residents

22   if those persons are harmed by wrongful conduct occurring in California." *Price v.*

23   *Kawasaki Motors Corp., USA*, No. SACV1001074JVSRNBX, 2010 WL

24

25

---

26   [6] To the extent Defendant broadly cites other cases to suggest there are material

27   differences here, the argument fails. "Defendants cannot meet their burden merely by citing cases in which other defendants have met this burden in factually

28   different circumstances" or by avoiding actually addressing purported differences based on the facts in this case. *Forcelatti*, 876 F.Supp.2d at 1161.

PLAINTIFF'S OPPOSITION TO DEFENDANT, MARS WRIGLEY
CONFECTIONERY US, LLC's MOTION TO DISMISS

11558133, at *3 (C.D. Cal. Oct. 25, 2010).  Plaintiff's class includes non-residents who purchased Defendant's wrongful and misleading products advertised and sold throughout California, including in California.   Given the application of the presumption against extraterritoriality hinges on the assessment of the classes or subclasses, none of which Defendants address in their motion, the issue is more appropriately addressed at the class certification stage.  *E.g. Speyer v. Avis Rent a Car Sys., Inc.*, 415 F. Supp. 2d 1090, 1094 (S.D. Cal. 2005), aff'd, 242 F. App'x 474 (9th Cir. 2007);  *Barth v. Firestone Tire & Rubber Co.*, 661 F. Supp. 193, 203 (N.D. Cal. 1987) (Courts "generally consider only the claims of a named plaintiff in ruling on a motion to dismiss a class action complaint prior to class certification.").

While the matters Defendants raise are, if at all relevant, addressable at class certification, Plaintiff also notes that predominance is not defeated here.  Unlike in consumer protection class actions where plaintiffs have experienced wide-ranging injuries, predominance is "readily met" in consumer fraud cases as "the crux of each consumer's claim is that a company's mass marketing efforts, common to all consumers, misrepresented the company's product."  *In re Hyundai and Kia Fuel Economy Litigation*, 926 F.3d 539, 559 (9th Cir. 2019) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).  Here, Defendant's products have been advertised nationwide, and both damages and injunctive relief are common to all class members.   Plaintiff should be allowed to proceed to discovery before nationwide class certification is denied.

///
///
///
///
///
///
///

PLAINTIFF'S OPPOSITION TO DEFENDANT, MARS WRIGLEY
CONFECTIONERY US, LLC's MOTION TO DISMISS

# V.     CONCLUSION

For all of the foregoing reasons, Mars' motion to dismiss should be denied in its entirety.

Date: June 19, 2020                              SCHONBRUN SEPLOW HARRIS
                                                 HOFFMAN & ZELDES, LLP


                                                 By: */s/ Helen I. Zeldes*
                                                 Helen I. Zeldes (220051)
                                                 hzeldes@sshhzlaw.com
                                                 501 W. Broadway, Suite 800
                                                 San Diego, CA 92101
                                                 Telephone: (619) 400-4990

                                                 *Attorneys for Plaintiff,*
                                                 *LORI MYERS*

PLAINTIFF'S OPPOSITION TO DEFENDANT, MARS WRIGLEY
CONFECTIONERY US, LLC's MOTION TO DISMISS