1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

)
)  **Case No.: EDCV 20-00335-CJC(SHKx)**
)
**LORI MYERS, individually and behalf** )
**of all others similarly situated,** )
)
)
**Plaintiff,** )  **ORDER GRANTING DEFENDANTS'**
)  **MOTIONS TO DISMISS FIRST**
**v.** )  **AMENDED COMPLAINT [Dkt. 39, 40,**
)  **42]**
)
**STARBUCKS CORPORATION; MARS** )
**WRIGLEY CONFECTIONERY US,** )
**LLC; THE QUAKER OATS** )
**COMPANY; and DOES 1–10;** )
)
)
**Defendants.** )

## I.  INTRODUCTION

Defendants Starbucks Corporation ("Starbucks"), Mars Wrigley Confectionery US, LLC ("Mars"), and The Quaker Oats Company ("Quaker") sell chocolate products with labels promoting their commitment to ethical practices and sustainability.  (*See* Dkt. 31

-1-

1  [First Amended Complaint, hereinafter "FAC"].)  In this putative class action, Plaintiff

2  Lori Myers asserts that Defendants' labels are false and misleading in violation of

3  California's Consumers Legal Remedies Act ("CLRA") and Unfair Competition Law

4  ("UCL").  (*Id.*)  Before the Court are Starbucks, Mars, and Quaker's motions to dismiss.

5  (Dkt. 42-1 [hereinafter "Starbucks MTD"], Dkt. 39 [hereinafter "Mars MTD"], Dkt. 40

6  [hereinafter "Quaker MTD"].)  For the following reasons, Defendants' motions are

7  **GRANTED**.[1]

8

9  **II.  BACKGROUND**

10

11     Defendants manufacture, distribute, and sell chocolate products.  (FAC ¶¶ 14–16.)

12  Like most major producers, they source cocoa beans from countries in West Africa,

13  including Côte d'Ivoire.  (*Id.* ¶¶ 24–25.)  It is well-known that many Ivorian cocoa farms

14  use child workers and forced labor.  (*Id.* ¶¶ 17–20); *see Hodsdon v. Mars, Inc.*, 162 F.

15  Supp. 3d 1016, 1020 (N.D. Cal. 2016), *aff'd*, 891 F.3d 857 (9th Cir. 2018) (taking

16  judicial notice of reports of endemic problems in the region).  Child laborers at these

17  farms often "wield dangerous tools, transport heavy loads, and face exposure to toxic

18  substances."  *Hodsdon*, 162 F. Supp. 3d at 1020.  The United States Department of Labor

19  reports that "[s]ome children are sold by their parents to traffickers, some are kidnapped,

20  and others migrate willingly but fall victim to traffickers who sell them to recruiters or

21  farmers, where they end up in conditions of bonded labor."  DEP'T OF LABOR, *List of

22  Products Produced by Forced or Indentured Child Labor* (Dec. 1, 2014), 8.[2]

23  Deforestation is also on the rise in Côte d'Ivoire, and, according to Plaintiff, "[a]n

24  estimated 40 percent of the Ivorian cocoa harvest currently comes from inside classified

25  or protected [forest] areas."  (*See* FAC ¶¶ 2, 5, 33.)

26

27  [1]  Having read and considered the papers presented by the parties, the Court finds these matters
appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the

28  hearings set for August 3, 2020 at 1:30 p.m. are hereby vacated and off calendar.
[2] *Available at* https://www.dol.gov/sites/dolgov/files/ILAB/reports/EO_Report_2014.pdf.

American consumers have a growing awareness of these issues, and many prefer or pay a premium for "ethically sourced" and "sustainable" chocolate. (*See id.* ¶ 69.) But producers that want to source ethical cocoa beans face an uphill battle. Cocoa farmers in Côte d'Ivoire are dispersed across small operations that sell beans to intermediaries. (*Id.* ¶¶ 21–22.) According to Plaintiff, eighty percent of Ivorian farmers sell to middlemen who do not track the source of their beans. (*Id.*) Plaintiff therefore alleges that "the vast majority of the cocoa sourced in the country comes from untraceable farms, in which child and slave labor is a common and widespread practice." (*Id.* ¶ 23.) The issue in this case is whether Defendants' efforts to eradicate child labor from their supply chains match their proclaimed commitment to "ethical" and "sustainable" cocoa.

Plaintiff alleges that she purchased Defendants' products based on false and misleading labels. (*Id.* ¶ 102.) She identifies three specific products—one from each Defendant: (1) a hot cocoa mix sold by Starbucks that claims to be "Made with Ethically Sourced Cocoa," (*id.* ¶ 28), (2) Mars's Dove-brand dark chocolate bars ("We buy cocoa from Rainforest Alliance Certified$^{TM}$ farms, traceable from the farms into our factory"), (*id.* ¶ 49), and (3) Quaker's Chocolate Chip Chewy Bars ("Supports sustainably sourced cocoa through Cocoa Horizons"), (*id.* ¶ 65). Plaintiff alleges that, contrary to these labels, Defendants cannot guarantee that their cocoa suppliers did not engage in deplorable environmental and labor practices. (*See id.*) She asserts two causes of action on behalf of herself and a putative class of similarly situated consumers for (1) unfair and deceptive practices in violation of the CLRA, Cal. Civ. Code § 1770(a), and (2) unlawful and unfair conduct in violation of the UCL, Cal. Bus. & Prof. Code § 17200.

## III.  LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. The issue on a motion to dismiss for failure to state a claim is

1    not whether the claimant will ultimately prevail, but whether the claimant is entitled to

2    offer evidence to support the claims asserted.  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d

3    246, 249 (9th Cir. 1997).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which

4    requires only a short and plain statement of the claim showing that the pleader is entitled

5    to relief.  Fed. R. Civ. P. 8(a)(2).  When evaluating a Rule 12(b)(6) motion, the district

6    court must accept all material allegations in the complaint as true and construe them in

7    the light most favorable to the nonmoving party.  *Moyo v. Gomez*, 32 F.3d 1382, 1384

8    (9th Cir. 1994).

9

10   However, "the tenet that a court must accept as true all of the allegations contained

11   in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

12   (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that while

13   a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

14   allegations, courts "are not bound to accept as true a legal conclusion couched as a factual

15   allegation" (citations and quotes omitted)).  Dismissal of a complaint for failure to state a

16   claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief

17   that is plausible on its face."  *Twombly*, 550 U.S. at 570.  In keeping with this liberal

18   pleading standard, the district court should grant the plaintiff leave to amend if the

19   complaint can possibly be cured by additional factual allegations.  *Doe v. United States*,

20   58 F.3d 494, 497 (9th Cir. 1995).

21

22   **IV.  DISCUSSION**

23

24       **A.    Standing**

25

26   Defendants first argue that Plaintiff has failed to adequately allege standing.  The

27   party invoking federal jurisdiction bears the burden of establishing standing under

28   Article III of the Constitution.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

1    To satisfy Article III's standing requirement, a plaintiff must allege an "injury in fact"

2    that is "fairly traceable to the challenged action of the defendant" and likely to be

3    redressed by a favorable decision.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*

4    *(TOC), Inc.*, 528 U.S. 167, 180–81 (2000).  Standing must be shown to support each form

5    of relief requested.  *See id.* at 185.  In addition to the requirements of Article III, private

6    UCL plaintiffs must establish that they "lost money or property as a result of the unfair

7    competition."  Cal. Bus. & Prof. Code § 17204.

8

9        Under California law, litigants have standing to pursue UCL and CLRA claims if

10   they can establish that the challenged practices caused pecuniary loss, *i.e.*, that "the

11   consumer paid more than he or she actually valued the product."  *Hinojos v. Kohl's*

12   *Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013) (quoting *Kwikset Corp. v. Superior Court*, 51

13   Cal. 4th 310, 330 (2011)).  "That increment, the extra money paid, is economic injury and

14   affords the consumer standing to sue."  *Id.*  "A consumer who relies on a product label

15   and challenges a misrepresentation contained therein can satisfy the standing requirement

16   of [the UCL] by alleging . . . that he or she would not have bought the product but for the

17   misrepresentation."  *Kwikset*, 51 Cal. 4th at 330.

18

19       Plaintiff properly alleges this kind of pecuniary injury.  Specifically, she alleges

20   that she would not have purchased the challenged products "absent Defendants' unlawful,

21   fraudulent, and unfair marketing, advertising, packaging, and labeling."  (FAC ¶ 102.)

22   She further alleges that she paid "an excessive premium price" for the products based on

23   the misleading labelling.  (*Id.*)  Accordingly, Plaintiff has standing to pursue a claim for

24   damages based on the alleged practices.

25

26       However, Plaintiff also seeks an injunction requiring Defendants to remove the

27   challenged statements from their labels.  (*Id.* ¶ 106(b).)  Defendants argue that she lacks

28   standing to pursue such relief because it does not redress any concrete injury alleged in

the FAC.  "[A] plaintiff does not have standing to seek prospective injunctive relief against a manufacturer or seller engaging in false or misleading advertising unless there is a likelihood that the plaintiff would suffer future harm from the defendant's conduct— *i.e.*, the plaintiff is still interested in purchasing the product in question."  *Mason v. Nature's Innovation, Inc.*, 2013 WL 1969957, at *4 (S.D. Cal. May 13, 2013); *accord In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 573 (C.D. Cal. 2014) (collecting cases). Plaintiff concedes that she has not alleged any such interest in purchasing Defendants' products in the future, but contends that this can be "inferred" from her previous purchases.  (*See* Dkt. 47 [Opposition to Starbucks MTD, hereinafter "Starbucks Opp."] at 19.)  This is insufficient.  To state a claim for injunctive relief, Plaintiff must allege a likelihood of future harm from Defendants' deceptive labelling practices.  *See Min Sook Shin v. Umeken, U.S.A., Inc.*, 2017 WL 6885378, at *8 (C.D. Cal. June 1, 2017), *aff'd* 773 F. App'x 373 (9th Cir. 2019).  Plaintiff has made no such allegations.  Accordingly, Plaintiff's claims for injunctive relief are **DISMISSED WITH FOURTEEN DAYS' LEAVE TO AMEND**.

### B.      Failure to Plead Affirmative Misrepresentations

Defendants next challenge the substance of Plaintiff's UCL and CLRA claims. The CLRA prohibits "unfair or deceptive acts" in connection with the sale of goods to a consumer.  Cal. Civ. Code § 1770(a).  It enumerates several proscribed practices, including misrepresenting the "sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities" or the "standard, quality, or grade" of consumer goods.  *See id.* §§ 1770(a)(2), (5), (7).  The UCL broadly prohibits "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  Plaintiff alleges that Defendants' practices are "unlawful" because they violate the CLRA and "unfair" because they deceive consumers.  (*See* FAC ¶¶ 100–101.)

1    The UCL and CLRA generally do not obligate companies to disclose negative

2  information about products, unless a plaintiff can establish that the omission is "contrary

3  to a representation actually made by the defendant" or otherwise unlawful.  *See Wilson v.*

4  *Hewlett–Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) (quoting *Daugherty v. Am.*

5  *Honda Co.*, 144 Cal. App. 4th 824, 835 (2006)).  For example, in *Hodsdon v. Mars, Inc.*,

6  the plaintiff brought a similar action challenging Mars's failure to disclose "the

7  probability that child and forced labor practices arise in its supply chain."  162 F. Supp.

8  3d 1016.  The district court concluded that Mars had no obligation to disclose this

9  information under either the UCL or CLRA, and the Ninth Circuit affirmed.  *Id.*

10  Similarly, California law generally does not allow private litigants to pursue an action to

11  force manufacturers to "substantiate" representations about their products.  *See Nat'l*

12  *Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107 Cal. App. 4th 1336,

13  1345 (2003); *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).  Instead,

14  plaintiffs have the burden of alleging—and then establishing—facts showing deceptive

15  conduct.  *See id.*

16

17    Perhaps anticipating these hurdles, Plaintiff does not pursue an omission-based

18  theory of liability.  (*See* FAC ¶ 91; Starbucks Opp. at 19.)  Instead, she asserts that

19  Defendants made affirmative misrepresentations about their products in violation of the

20  UCL and CLRA.  (*See* FAC ¶ 91.)  Because these claims are grounded in fraud, Plaintiff

21  must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure

22  9(b).  *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir.), *cert. denied*,

23  139 S. Ct. 640 (2018).  Accordingly, she must "state with particularity the circumstances

24  constituting fraud or mistake."  Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567

25  F.3d 1120, 1145 (9th Cir. 2009).  This means that the FAC "must set forth what is false

26  or misleading about a statement, and why it is false."  *In re GlenFed, Inc. Sec. Litig.*, 42

27  F.3d 1541, 1548 (9th Cir. 1994).  In other words, Plaintiff must allege specific facts

28

1    indicating why the challenged statements are false or misleading.  *Kwan*, 854 F.3d at

2    1097; *see Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1090 (N.D. Cal. 2017).

3

4        Finally, under the CLRA, Plaintiff must also allege misrepresentations that are

5    "likely to mislead a reasonable consumer."  *See Colgan v. Leatherman Tool Grp., Inc.*,

6    135 Cal. App. 4th 663, 680 (2006).  "Because the 'reasonable consumer' inquiry is an

7    objective standard, claims may be dismissed as a matter of law where an alleged

8    statement . . . in context, is such that no reasonable consumer could be misled in the

9    manner claimed by the plaintiff."  *Rugg v. Johnson & Johnson*, 2018 U.S. Dist. LEXIS

10   101727, at *9 (N.D. Cal. June 18, 2018).  The Court considers the sufficiency of

11   Plaintiff's allegations against each Defendant in turn.[3]

12

13           **1.      Quaker's Chocolate Chip Chewy Bars**

14

15       Plaintiff challenges the labelling of Quaker's Chocolate Chip Chewy Bars.  (*Id.*

16   ¶¶ 65–75.)  Quaker's packaging includes the claim, "[s]upports sustainably sourced cocoa

17   through Cocoa Horizons."  (*Id.* ¶ 65.)  On the back it explains, "Cocoa Horizons aims to

18   improve the livelihood of cocoa farmers and their communities through the promotion of

19   sustainable farming practices."  (*Id.*)  Quaker argues that Plaintiff has not properly

20   alleged that these assertions are false or misleading.  The Court agrees.

21

22       Plaintiff asserts that Quaker's label is misleading because Cocoa Horizons, an

23   independent nonprofit that works in partnership with Quaker, fails to adequately address

24   environmental and labor conditions in cocoa-growing regions.  (*Id.*  ¶¶ 66–75.)

25   According to Plaintiff, Cocoa Horizons recently conceded that "only 26% of the farmer

26   groups from which it sourced products in 2018-2019 had programs to prevent child

27

28   [3] Because the Court concludes that Plaintiff fails to state a claim for relief, it does not address
     Defendants' challenge to the scope of Plaintiff's proposed class.

labor." (*Id.* ¶ 73.)  Plaintiff asserts that Quaker "deceive[s] the customer into believing that the cocoa is actually being sourced from sustainable and child-labor free farms when the vast majority of it is not." (*Id.* ¶ 74.)

Plaintiff fails to properly allege actionable misrepresentations.  Crucially, she concedes that Quaker does, in fact, partner with Cocoa Horizons and that Cocoa Horizons works to promote sustainable and ethical practices.  (*See* FAC ¶¶ 65–75.)  In other words, she concedes that both of the identified statements are factually accurate.  (*See id.*)  Her theory is that they are nevertheless "misleading" because Cocoa Horizons has been unable to achieve meaningful results.  (*See id.*)  But Quaker does not promise a perfect solution.  Instead, it uses aspirational language— "promotes," "aims," and "supports"— which acknowledges its limited control over the supply chain.  *See Barber v. Nestle USA, Inc.*, 154 F. Supp. 3d 954, 964 (C.D. Cal. 2015) (dismissing a similar claim because Nestle did not mislead customers "into thinking that its suppliers abide by those rules and meet those expectations in every instance"), *aff'd*, 730 F. App'x 464 (9th Cir. 2018); *Ruiz v. Darigold, Inc.*, 2014 WL 5599989, at *4 (W.D.Wash. Nov. 3, 2014) (dismissing misrepresentation claim because "[e]ven if the Court considers the [language] on which plaintiffs' claims of misrepresentation and omission rely, when read in context they reflect nuanced assessments of the current situation, are aspirational statements, or have not been shown to be false in any material respect").

"Although misdescriptions of specific or absolute characteristics of a product are actionable, generalized, vague, and unspecified assertions constitute mere puffery upon which a reasonable consumer could not rely." *See McKinney v. Google, Inc.*, 2011 WL 3862120, at *6 (N.D. Cal. Aug. 30, 2011) (cleaned up).  No reasonable consumer could interpret Quaker's label as a promise to eliminate unethical practices from its supply chain. *See id.*  Because Plaintiff fails to allege an actionable affirmative misrepresentation, Quaker's motion to dismiss is **GRANTED**.  Because Plaintiff may be

1   able to cure the deficiencies identified above, her claims against Quaker are

2   **DISMISSED WITH FOURTEEN DAYS' LEAVE TO AMEND**.

3

4                    **2.      Mars's Dove Dark Chocolate Bars**

5

6       Plaintiff's claims against Mars concern the label on its Dove dark chocolate bars.

7   (*Id.* ¶¶ 49–64.)  The packaging for this product includes the Rainforest Alliance

8   Certification seal and the text: "We buy cocoa from Rainforest Alliance Certified$^{TM}$

9   farms, traceable from the farms into our factory." (*Id.* ¶ 49.)  Like Quaker, Mars argues

10  that Plaintiff has failed to properly allege that its representations are false or misleading.

11  The Court agrees.

12

13      Plaintiff asserts that Mars's use of the Rainforest Alliance seal creates a misleading

14  impression of ethical labor practices and sustainability.  (*See id.* ¶¶ 55–64.)  The

15  Rainforest Alliance is a nonprofit organization that certifies products based on ethical and

16  environmental standards.  (*See id.* ¶ 49.)  However, according to Plaintiff, it "runs a

17  business-friendly certification . . . that lacks social and environmental standards and is

18  poorly enforced" and therefore its certification is "bogus." (*Id.* ¶¶ 55, 57.)[4]  These

19  allegations are insufficient to state a claim under the UCL or CLRA.

20

21      Again, Plaintiff does not dispute that Mars "buy[s] cocoa from Rainforest Alliance

22  Certified farms." (*See id.* ¶ 49.)  Instead, her theory is that the Rainforest Alliance seal

23  creates "the false impression that [Rainforest Alliance is] certifying cocoa as child-labor-

24  free when they do not in fact assess the extent of child labor in their member companies'

25  production." (*Id.* ¶ 60.)  This is not supported by any affirmative representations

26  identified in the FAC.  Mars's packaging simply does not make any claims about the

27

28  [4] Specifically, Plaintiff alleges that the Rainforest Alliance relies on self-reporting and self-verification
    for audits.  (*See* FAC ¶¶ 58–59.)

1     labor practices of its suppliers or the scope of the Rainforest Alliance program.  (*See id.*

2     ¶ 49.)  Plaintiff's "false impression" theory cannot cure her failure to identify a specific,

3     affirmative misrepresentation.  *See McKinney*, 2011 WL 3862120, at \*6.  In *Hodsdon v.*

4     *Mars, Inc.*, the Ninth Circuit rejected the theory that Mars's use of the Rainforest

5     Alliance seal created a duty to disclose that its supply chain might include child and

6     forced labor.  *See* 891 F.3d 857.  Although repackaged here as a misrepresentation claim,

7     Plaintiff has failed to identify any affirmative statements that might create an obligation

8     to disclose this information.  *See id.*

9

10         Plaintiff also alleges that Mars's "traceability" claim is false.  (*See id.* ¶¶ 51–54.)

11     This theory finds a stronger footing, as it at least identifies a specific statement: "We buy

12     cocoa from Rainforest Alliance Certified™ farms, *traceable from the farms into our*

13     *factory*."  (*See id.* ¶ 49 [emphasis added].)  However, Plaintiff still fails to allege specific

14     facts showing that this statement is false or misleading.  *See Kwan*, 854 F.3d at 1097.

15     The FAC alleges that "[c]hocolate companies, including Mars, [] cannot identify the

16     farms where all their cocoa comes from" and that "Mars can, at best, trace only 24

17     percent of its cocoa back to farms."  (FAC ¶ 51 [citing a Washington Post article on child

18     labor in cocoa production].)  This is insufficient to allege falsity.  Mars produces

19     hundreds of different products, including M&M's and Milky Way, and the figure cited by

20     Plaintiff concerns Mars's *company-wide* cocoa supply.  (*See id.*)  This statistic is

21     therefore entirely consistent with Mars's representation that it buys "traceable" cocoa for

22     its Dove dark chocolate bars.  Plaintiff's remaining allegations are conclusory and

23     impermissibly shift the burden to Mars to substantiate its labels.  (*See id.* ¶ 54 ["Mars

24     cannot substantiate its traceability claims . . ."]; *id.* ¶ 52 [alleging that Mars's traceability

25     claims are "patently misleading, because no chocolate company in the industry has so far

26     achieved traceability"].)  But Plaintiff has the burden of alleging specific facts to support

27     her claim that Mars's label is false or misleading.  *See Hadley*, 243 F. Supp. 3d at 1090.

28     She cannot shift the burden to Mars to "substantiate" its marketing.  *See Kwan*, 854 F.3d

1   at 1096.  Accordingly, Mars's motion to dismiss is **GRANTED**.  Because Plaintiff may

2   be able to cure the deficiencies identified above, her claims against Mars are

3   **DISMISSED WITH FOURTEEN DAYS' LEAVE TO AMEND**.

4

5            **3.        Starbucks's Marshmallow Hot Cocoa Mix**

6

7        Finally, Plaintiff's claims against Starbucks are based on a hot cocoa mix that

8   purports to be "Made with Ethically Sourced Cocoa."  (*Id.* ¶ 28.)  This text appears on the

9   front of the package, in italics, and just below the description of the product.  (*Id.*)  The

10  back explains that "Starbucks is committed to purchasing cocoa that's grown in an ethical

11  and transparent way" and invites consumers to visit its website for more information.

12  (*Id.*)  Like the other Defendants, Starbucks argues that Plaintiff fails to properly allege

13  that this representation is false or likely to mislead a reasonable consumer.  The Court

14  agrees that, as currently pled, Plaintiff's claims against Starbucks are deficient.




(*Id.* ¶ 28.)

1   As an initial matter, the Court notes that Starbucks makes a bolder claim than the

2   other Defendants.  It does not simply promise to "promote" or "support" ethical practices.

3   Instead, it reassures its consumers, in no uncertain terms, that its hot cocoa mix is "Made

4   with Ethically Sourced Cocoa."  (*Id.* ¶ 28.)  As discussed above, California law

5   distinguishes between "generalized, vague, and unspecified" puffery and descriptions of

6   "specific or absolute characteristics of a product."  *See McKinney*, 2011 WL 3862120, at

7   *6.  Starbucks's label veers toward the latter.

8

9   Nevertheless, the Court finds that Plaintiff fails to allege specific facts explaining

10   why this claim is false or misleading.  To make good on its ethical promises, Starbucks

11   implements its own COCOA certification program.  (*See* FAC ¶¶ 41–48.)  According to

12   Plaintiff, this program is "a clear attempt by [Starbucks] to profiteer off a growing market

13   trend of ethical consumers, without taking tangible actions to eradicate [child and forced

14   labor] in its supply chain."  (*Id.* ¶ 41.)  But Plaintiff fails to allege any facts to support

15   this conclusion.

16

17   Plaintiff identifies only one specific problem with the COCOA program: it

18   "consists solely of mandating verification organizations to audit farms" and these

19   verification organizations are "trained and audited by another global organization, SCS

20   Global Services, and not by Starbucks itself."  (*Id.* ¶ 43.)[5]  The Court fails to understand

21   why Starbucks's use of third parties makes the COCOA program a sham.  Plaintiff then

22   falls back on generalized allegations about industry-wide problems and attempts to shift

23   the burden to Starbucks to substantiate the success of the COCOA program.  (*See id.*

24   ¶ 44.)[6]  As discussed above, such allegations are insufficient to state a claim for

25   _____

26   [5] Plaintiff also alleges generally that "the COCOA program does not provide any prevention, mitigation
    or remediation actions to ensure that human rights violations, including child and slave labor, are being

27   addressed and remediated," but does not explain why the certification process fails to address these
    practices.  (*Id.* ¶ 45.)

28   [6] For example, Plaintiff alleges that "'untraced cocoa' constitutes approximately 80% of cocoa
    production in West Africa" and "the flawed monitoring and auditing programs the industry purports to

-13-

1    affirmative misrepresentations under the UCL and CLRA.  *See Hadley*, 243 F. Supp. 3d

2    at 1090; *Kwan*, 854 F.3d at 1096.

3

4        Finally, Plaintiff asserts that Starbucks cannot claim to use "ethically sourced"

5    cocoa because it has not implemented "any sustainable environmental protocols."  (*See*

6    *id.* ¶¶ 32–37.)  Specifically, she alleges that Starbucks has failed to implement a program

7    to addresses cocoa farms' role in the deforestation of West Africa.  (*See id.*)  But

8    Starbucks's hot cocoa label is not false or misleading in this respect.  The phrase

9    "ethically sourced" is generally understood to refer to labor practices—indeed Plaintiff's

10   own proffered definition focuses on the "human rights of the workers."  (*See id.* ¶ 31.)

11   Moreover, the back of the hot cocoa package specifies that "Starbucks is committed to

12   purchasing cocoa that's grown in an ethical and transparent way," with no reference to

13   the environment, sustainability, or conservation.  (*Id.* ¶ 28.)  In other words, Starbucks

14   made no affirmative representations about the environmental impact of its cocoa.  In

15   context, no reasonable consumer would assume that the phrase "ethically sourced"

16   guaranteed some effort to mitigate deforestation in West Africa.  *See Delman v. J. Crew*

17   *Grp., Inc.*, 2017 WL 3048657, at *7 (C.D. Cal. May 15, 2017) ("The question is how a

18   reasonable consumer would interpret the phrase . . . in the context of the specific

19   commercial interaction that Plaintiff has challenged."); *see also Ehlers v. Ben & Jerry's*

20   *Homemade Inc.*, 2020 WL 2218858, at *6–7 (D. Vt. 2020) (dismissing claim based on

21   defendant's "Caring Dairy" program "grounded on a single phrase in a single heading on

22   a multipage website which is neither false nor misleading when considered as a whole").

23

24       Ultimately, Plaintiff fails to allege specific facts to support her claim that a

25   reasonable consumer would be misled by Starbucks's packaging.  Accordingly,

26   Starbucks's motion to dismiss is **GRANTED**.  Because Plaintiff may be able to cure the

27

28   have in place only – at best – take place in a fraction of the farms providing cocoa to any company
     sourcing cocoa in West Africa, including Starbucks."  (FAC ¶ 44.)

-14-

deficiencies identified above, her claims against Starbucks are **DISMISSED WITH FOURTEEN DAYS LEAVE TO AMEND**.

## V. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are **GRANTED**, and Plaintiff's First Amended Complaint is **DISMISSED WITH FOURTEEN DAYS LEAVE TO AMEND**.

DATED:      July 29, 2020

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE