**SCHONBRUN SEPLOW**
**HARRIS HOFFMAN & ZELDES, LLP**
HELEN I. ZELDES (220051)
hzeldes@sshhzlaw.com
BEN TRAVIS (305641)
btravis@sshhzlaw.com
501 W. Broadway, Suite 800
San Diego, CA 92101
Telephone: (619) 400-4990

PAUL L. HOFFMAN (71244)
hoffpaul@aol.com
JOHN C. WASHINGTON (315991)
jwashington@sshhzlaw.com
200 Pier Avenue, #226
Hermosa Beach, CA 90245
Telephone: (310) 396-0731

CATHERINE E. SWEETSER (271142)
csweetser@sshhzlaw.com
11543 West Olympic Blvd.
Los Angeles, CA 90064
Telephone: (310) 396-0731

*Attorneys for Plaintiff,*
LORI MYERS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORI MYERS, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>STARBUCKS CORPORATION, a Washington Corporation; MARS WRIGLEY CONFECTIONERY US, LLC, a Delaware Corporation; THE QUAKER OATS COMPANY, a New Jersey Corporation and; DOES 1-10, inclusive,<br><br>Defendants. | Case No: 5:20-cv-00335-CJC-SHK<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Lori Myers ("Plaintiff") brings this action, on behalf of herself and all others similarly situated against Starbucks Corporation ("Starbucks"), Mars Wrigley Confectionery US, LLC ("Mars"), The Quaker Oats Company ("Quaker") and Does 1-10 (collectively "Defendants"). Plaintiff alleges the following based upon information and belief, the investigation of counsel, and personal knowledge as to the allegations pertaining to herself.

## NATURE OF THE CASE

1.     Defendants, some of the largest retailers of chocolate products in the United States, profit off the booming market for social and environmentally conscious goods by labeling their products as sustainably and/or ethically sourced. In reality, Defendants know the chocolate used in those products is anything but.

2.     Defendants' chocolate is not the product of sustainable or ethical farming practices but child and slave labor in West Africa.  A recent study conducted by Tulane University concluded that more than 2 million children are involved in the Worst Forms of Child Labor on cocoa plantations in Cote d'Ivoire and Ghana, where Defendants' chocolate is sourced.[1]  Multiple studies show that the problem of child labor in West Africa has gotten worse, not better, since Defendants have committed to eradicating child labor.   Child slavery is undisputedly endemic in cocoa harvesting in West Africa[2] and it is also well-settled that the "Chocolate industry drives rainforest disaster in [the] Ivory Coast" – so much so, that at the current pace of deforestation there will be no forest left in the Ivory Coast by 2030.[3]

---

[1] https://makechocolatefair.org/sites/makechocolatefair.org/files/newsimages/tulane_university_-_survey_research_on_child_labor_in_the_cocoa_sector_-_30_july_2015.pdf

[2] See, e.g., Peter Whoriskey and Rachel Siegel, *Cocoa's child laborers*, Wash. Post, June 5, 2019, https://www.washingtonpost.com/graphics/2019/business/hershey-nestle-mars-chocolate-child-labor-west-africa/.

[3] https://www.theguardian.com/environment/2017/sep/13/chocolate-industry-drives-rainforest-disaster-in-ivory-coast

SECOND AMENDED CLASS ACTION COMPLAINT

3.    Notwithstanding knowing that its cocoa is primarily procured from farms using the Worst Forms of Child Labor, **Starbucks** fraudulently claims the cocoa in its Hot Cocoa Mix products is **"ethically sourced"**.

4.    **Mars** similarly claims on certain packages that its Dove Dark Chocolate products are made from beans that are **"traceable from the farms into our factory"** and deceptively displays the Rainforest Alliance seal – inducing consumers to believe those specific products are made with beans that are traceable to certified  ethically and/or environmentally produced cocoa when it knows that they are not.

5.    **Quaker** expressly claims that its Chocolate Chip Chewy Bars support **"sustainably sourced cocoa"** all the while knowing its supply chain is rife with child slave labor and causing massive deforestation and that it is not actually supporting sustainably sourced cocoa.

6.    Defendants' labeling misleads consumers into believing their products are procured in accordance with socially and/or environmentally responsible standards, when they know they are not.   Not only is it abhorrent to equate slavery, child labor and massive deforestation to a "sustainable" or "ethical" practice but it is an exceedingly profitable fib:  the "sustainability" market is booming:  "42% of global consumers want more new products in the market that are socially responsible and environmentally friendly."[4]  Nielsen studies show that sustainable chocolate vastly outperforms competition and sustainability claims

---

4 *See* Nielsen (the leading global analytics company that provides statistics on "what consumers watch and buy") presentation "The Sustainability Imperative: Consumer Expectations & How to Grow with Sustainability" at: https://www.utz.org/wp-content/uploads/2016/06/Nielsen_Customer-Expectations-How-to-drive-growth-with-sustainability-UTZ-June-2016-sent.pdf at 22.

sell.[5] Indeed, claims of sustainability for chocolate products are particularly lucrative. In an analysis of different industries, chocolate products' growth was the most pronounced based on claims of sustainability, with such products growing at more than 3 times the rate of chocolate products without sustainability claims.[6]

7.    Similarly, 64% of global consumers say they choose brands because of their stand on social issues; 91% of millennials would switch brands for one which champions a cause; and Brands recognized for their strong commitment to purpose have grown twice the rate of others over the last 12 years.[7]

8.    Consumers care about where and how their products are made.

9.    Plaintiff was misled by the affirmative misrepresentations on Defendants' product packaging concerning the ethical sourcing, traceability and environmentally responsible procurement of their cocoa. Had she been aware of the misrepresentations described herein, she would not have purchased Defendants' products.

10.    Plaintiff thus brings this action pursuant to: (i) California's Business & Professions Code §§ 17200, et seq. (the Unfair Competition Law or "UCL"); and (ii) California Civil Code §§ 1750, et seq. (the Consumers Legal Remedies Act or "CLRA"). Plaintiff brings this action on behalf of a nationwide class seeking damages, restitution and injunctive relief, and any other relief deemed appropriate by the court to which this case is assigned.

---

[5] See "Sustainability Sells: Linking Sustainability Claims to Sales" at: https://www.nielsen.com/us/en/insights/article/2018/sustainability-sells-linking-sustainability-claims-to-sales/; and "What's Sustainability Go to do With it?" at: https://www.nielsen.com/us/en/insights/report/2018/whats-sustainability-got-to-do-with-it/

[6] https://www.nielsen.com/us/en/insights/article/2018/sustainability-sells-linking-sustainability-claims-to-sales/

[7] https://www.unilever.com/news/press-releases/2019/unilever-ceo-warns-advertisers-that-woke-washing-threatens-industry-credibility.html

# I.    JURISDICTION AND VENUE

11.    This Court has personal jurisdiction over Defendants, because Defendants have conducted and continue to conduct business in the State of California, and because Defendants have committed the acts and omissions complained of herein in the State of California.

12.    This court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. 1332(d), as Plaintiff (California), Starbucks (Washington), Mars (Virginia) and Quaker (New Jersey) are diverse, there are over 100 class members, and the amount in controversy exceeds $5 million.

13.    Venue is proper in the Central District of California, because a substantial portion of the acts giving rise to this action occurred in this district. Specifically, Plaintiff purchased the offending cocoa products within this District.

# II.    PARTIES

14.    **Plaintiff Myers** is, and at all times mentioned herein was, an individual citizen of the State of California and resident of Moreno Valley, California. On several occasions during the Class period, including in or about December 2019, Plaintiff purchased Defendant Starbucks' hot cocoa products labeled with the "made with ethically sourced cocoa" labeling on them. On several occasions during the Class Period, Plaintiff purchased Defendant Mars' Dove dark chocolate bar products labeled as "traceable from the farms into [their] factory." On several occasions during the Class period, including in or about December 2019, Plaintiff purchased Defendant Quaker's Chocolate Chip Chewy bar products labeled with "supports sustainably sourced cocoa through Cocoa Horizons."

15.    Plaintiff relied upon Defendants' misrepresentations about the social standards and practices in place in their supply chains in making her decision to purchase the products. Plaintiff suffered injury in that she would not have bought Defendants' products had she known that the products were not "ethically sourced," not "traceable," and not "sustainable" but rather produced off the backs

of child and slave labor. Plaintiff would like to buy Defendants' products in the future if and when they were produced as advertised by Quaker and Starbucks, and if and when the products are actually traceable to ethical farms as advertised by Mars.  She does not currently intend to do so because she cannot rely on the accuracy of the representations addressed below in deciding whether or not she should purchase Defendants' products, and furthermore, cannot independently or easily determine whether the particular products at issue are or are not made by enslaved children, actually traceable, or ecologically devastating.

16.    **Defendant Starbucks** is a Washington corporation with its principal place of business in Seattle, Washington. It is one of the largest coffee houses and coffee manufacturers in the world and also manufactures a line of hot chocolate

17.    **Defendant Mars** is a Delaware corporation with its principal place of business in McLean, Virginia. It owns Dove chocolate and is one of the largest chocolate manufacturers in the world.

18.    **Defendant Quaker** is a New Jersey corporation with its principal place of business in Chicago, Illinois. It is a large American food conglomerate.

## III. FACTUAL ALLEGATIONS

### A. The Cocoa Supply Chain in West Africa: Child Labor and Environmental Degradation Are Well-Known and Undisputed

19.     Starbucks, Mars and Quaker are well aware that cocoa farming in West Africa relies heavily on child labor and slavery. Children on Ivorian cocoa plantations are subjected to what the International Labor Organization (ILO) terms the "Worst Forms of Child Labor" – including trafficking, slavery, and exposure to toxic chemicals and hazardous tools. Defendants have the capacity to improve this situation if they desired to do so: to opt to use cocoa from slavery-free sources, to trace the origins of their cocoa to such farms and ensure their products are made with ethically sourced beans using barcodes, blockchain or other technologies, to obtain their cocoa in a manner that is not ecologically destructive.  These are not

1  unreasonable measures or untested waters -- other companies successfully produce

2  slave-free cocoa and other industries have transformed their supply chains to be

3  slave labor free.  Defendants have declined to take reasonable steps in this regard,

4  and instead deliberately profit from a misperception that they have done so due to

5  consumers' interpretation of their labelling.

6      20.    Indeed, the numbers tell the real story:  rather than decreasing after

7  Defendants' commitments made over the past two decades, child labor has instead

8  increased in West Africa. According to the 2015 Tulane Report, a major study of

9  the West African cocoa industry commissioned by the United States Department

10  of Labor, the increase in cocoa production has also led to a growth in child laborers

11  to 2.1 million children in Côte d'Ivoire and Ghana.[8] Of this number, 1,153,672

12  children working in the cocoa sector are involved in hazardous work, including

13  using machetes to cut trees or cocoa pods, burning fields, carrying heavy loads,

14  handling agro-pharmaceutical products, as well as being deprived of schooling.[9]

15      21.    Recent studies have also confirmed the longstanding claim that many

16  of the children who perform hazardous work on cocoa plantations in West Africa

17  do so under conditions of forced labor. In Côte d'Ivoire alone, between 2013 and

18  2017, an estimated 2,000 children were forced to work without remuneration by

19  someone other than a parent. During the same period, 14,000 children were

20  estimated to be victims of forced child labor in the cocoa agriculture sector in

21  Ghana.[10]

22      22.    The U.S. Department of Labor describes the conditions of forced

23  labor in chilling detail: "[s]ome children are sold by their parents to traffickers,

24

25  [8]https://makechocolatefair.org/sites/makechocolatefair.org/files/newsimages/tulane_university_-_survey_research_on_child_labor_in_the_cocoa_sector_-_30_july_2015.pdf

26

27  [9] *Id.*

28  [10] https://www.globalslaveryindex.org/2018/findings/importing-risk/cocoa/

SECOND AMENDED CLASS ACTION COMPLAINT

some are kidnapped, and others migrate willingly but fall victim to traffickers who sell them to recruiters or farmers, where they end up in conditions of bonded labor. Some farmers buy the children and refuse to let them leave the farm until the debt of their purchase has been worked off. The children are frequently not paid for their work; some of their wages are paid to the recruiter or trafficker. These children are held against their will on isolated farms, are locked in their living quarters at night, and are threatened and beaten if they attempt to escape. They are punished by their employers with physical abuse. They are forced to work long hours, including overtime, and are required to work even when they are sick. Some children are denied sufficient food by their traffickers and employers."[11]

23.     The number of cocoa farmers in Côte d'Ivoire and Ghana is estimated to be around 2 million. The majority of these farmers are also dispersed around the country in a region called the "cocoa belt," located across the southern region of Côte d'Ivoire.

24.     Their small operation and fragmented presence across the country favor a system in which farmers sell to intermediaries who collect the beans and gather them in warehouses. These intermediaries are either cooperatives, where the farmers are part of a cooperative system, or individuals called "middlemen", who are not part of any formal organization. Middlemen collect beans across diverse farms in the cocoa belt, where no monitoring takes place, to sell to grinders or traders, and then to manufacturers such as Defendants.

25.     In Cote d'Ivoire, a small percentage of farmers, estimated at 20%, are in a formal cooperative system. ***In other words: the vast majority of the cocoa sourced in the country comes from untraceable farms***, in which child and slave labor is a common and widespread practice.

---

[11] https://www.dol.gov/sites/dolgov/files/ILAB/reports/EO_Report_2014.pdf

SECOND AMENDED CLASS ACTION COMPLAINT

26.    Defendants Starbucks and Mars, with their businesses dependent on cocoa from Côte d'Ivoire, both through their own business operations and their membership and participation in industry groups like the World Cocoa Foundation (WCF)[12], have knowledge of the widespread use of child labor harvesting cocoa on the farms they were working with and purchasing from.  At the 8th Annual World Cocoa Foundation Meeting in August 2018 the industry admitted it could not make its 2020, or even 2025 goal of eradicating child labor in the cocoa supply chain. Effectively abandoning any set date, the Foundation admitted it was not likely it would meet its "aspiration for 2020" nor other targets "for the eradication of child labor by 2025.[13]

27.    Defendant Quaker, both through its own business operations and its participation in Cocoa Horizons, has knowledge of the widespread use of child labor harvesting cocoa on the farms it works with and purchases from.

28.    There has been extensive public reporting from official and credible sources that documents the endemic problem of child labor in the cocoa sector of West Africa. Defendants, along with the rest of the cocoa industry, are aware of this reporting and have specific knowledge of the extensive child labor in the cocoa sector.

**B.    Defendants Nevertheless Deceptively Label their Chocolate as "Ethically Sourced" "Traceable" or "Sustainable"**

29.    Notwithstanding Defendants' knowledge that their cocoa supply chain in Cote d'Ivoire and Ghana is inundated with child labor and child slave labor, Defendants have the audacity to place patently false and misleading statements on their products, purporting that they are made of "ethically sourced" cocoa or that they support "sustainably sourced cocoa," or misleading consumers

---

[12] https://www.worldcocoafoundation.org/about-wcf/members/

[13] https://www.worldcocoafoundation.org/blog/2018-child-labor-cocoa-coordinating-group-8th-annual-meeting-remarks/

1 into thinking the products in their hands are actually made with certified beans.

2 These statements stand in stark contrast with reality. Defendants could create

3 products consistent with such statements if they wanted to do so, but instead opt

4 not to, and profit from misleading consumers with false and misleading statements.

5 **Starbucks' Labeling Misrepresentation:  Its Cocoa Is Not Ethically Sourced**

6     30.    Starbucks' Double Chocolate Hot Cocoa, Salted Caramel Hot Cocoa

7 and Marshmallow Hot Cocoa products prominently claim on their front packaging

8 that they are made with **"ethically sourced"** cocoa.

 

23     31.    Starbucks' cocoa is sourced from farms in West Africa.  As Starbucks

24 - a member of the World Cocoa Foundation[14] - is well-aware, child labor and slave

25 labor is endemic in its West African cocoa supply chain and there is no way it can

26 assure its cocoa is "ethically sourced".

---

[14] https://www.worldcocoafoundation.org/about-wcf/members/

SECOND AMENDED CLASS ACTION COMPLAINT

32.    Ethical sourcing is commonly understood as ensuring that decent labor standards are met during the manufacturing of products, including at the sourcing material stage. In involves paying fair wages, ensuring safe and hygienic conditions, reasonable hours and ensuring that no children are working in the supply chain.

### 1.    Slavery and Forced Child Labor Are Not "Ethical" Sourcing Practices

33.    Starbucks is fully aware that the farms its sources its cocoa from use child and slave labor.  Starbucks' labeling thus makes false ethical claims on its packaging in an attempt to mislead ethical consumers and to boost its sales.

34.    Starbucks cannot publicly claim that it adopts "ethical sourcing practices" and that it is committed to buying cocoa produced in an ethical manner when in fact, its cocoa is produced by child labor and child slave labor.

35.    Child and Forced Labor are a well-known scourge in the cocoa industry, and Starbucks has knowledge that the use of child labor and trafficking remains widespread and endemic. As stated in the latest Cocoa Barometer Report: "Not a single company or government is anywhere near reaching the sector-wide objective of the elimination of child labour, and not even near their commitments of a 70% reduction of child labour by 2020."[15]

### 2.    Starbucks' COCOA Program is Deceptive

36.     Starbucks' internal certification program is a clear attempt by Defendant to profiteer off a growing market trend of ethical consumers, without taking tangible actions to eradicate these practices in its supply chain.

---

[15] https://www.voicenetwork.eu/wp-content/uploads/2019/07/2018-Cocoa-Barometer.pdf

37.    Starbucks makes misleading ethical claims on its packaging and attempts to justify them with its COCOA program and its participation in the World Cocoa Foundation.

38.    Starbucks' COCOA program, however, consists of unreliable verification organizations auditing farms. Starbucks is well aware that these farm audits and verifications are unreliable. Starbucks' use of the COCOA program to justify the language on its labels is thus deceptive.

39.    Starbucks' labels are also deceptive and misleading because, in spite of its alleged investment in its COCOA program, the number of children working in dangerous conditions on cocoa farms in West Africa has increased considerably in recent years and Starbucks' sourcing practices have not contributed to improving the living conditions of cocoa producers or of children.

40.    Starbucks makes false assurances that its Hot Cocoa Mix products are "ethically sourced" but Starbucks knows that it is not true and has not set in place any measures to actually ensure that its supply chain is free of child and slave labor and that farmers are paid a fair and decent wage for their labor, making the claims baseless and deceptive for consumers who rely on the packaging before making purchasing decisions.

41.    Starbucks knowingly misleads consumers by putting advertisements on its labels inconsistent with what its sourcing practices really are.

**Mars' Labeling Misrepresentations:  its Cocoa is Not Traceable**

42.    Mars advertises its Dove dark chocolate bar products as **"traceable from the farms into our factory"** and prominently displays the Rainforest Alliance Certification seal on the front and back of their packaging, a third-party certifier which holds itself out as the benchmark for the sustainable production of cocoa.  Rainforest Alliance certified products supposedly stand for ethical and sustainable farming, including better working conditions and better care for the natural environment.



43.    **Mars' Chocolate is Sourced from Child and Slave Labor in West Africa.** Mars' chocolate is sourced from farms in West Africa. Mars is well-aware that no company or organization in West Africa has the ability to trace chocolate in such a way at this time. Mars is a member of the World Cocoa Foundation and

knows that its "pledge to use 100% certified cocoa by 2020"[16] is not attainable. See footnotes 10, 11; and *supra*. Nevertheless, Mars continues to promote and profiteer off its sustainability myth.

> ### 1.    Mars Does Not Trace the Vast Majority of its Beans and then Mixes them with Non-Traceable Beans, Making its "Traceability" Claims Misleading

44.    Chocolate companies, including Mars, still cannot identify the farms where all their cocoa comes from. Mars can, at best, trace only 24% of its cocoa back to farms,[17] let alone track whether child labor was used in producing it.

45.    Mars publicly represents that DOVE Dark Chocolate products are a limited part of the Mars line.  Mars' claim on its DOVE Dark Chocolate bars that those products' beans are "traceable from the farms into our factories" is misleading because a reasonable consumer like Ms. Myers would assume that this statement meant the product was made with traceable, certified beans.  In fact, the DOVE Dark Chocolate products are *not* made from traceable beans because once the beans make it to the factory, Mars states the beans are intermingled so that no product can be guaranteed to contain any fair trade beans at all, not even the DOVE line of products.

46.    Mars admits that it labels DOVE Dark Chocolate products differently than the rest of its products, so that only select packages have "We buy cocoa from Rainforest Alliance Certified™ farms, traceable from the farms into our factory." Thus, a reasonable consumer would assume that the difference in packaging and representations for this line meant there was some meaningful difference in the content of the bars: namely, that DOVE Dark Chocolate products contained beans traceable to Rainforest Alliance Certified farms.

---

[16] https://dovechocolate.com/tagged/superiorchocolate

[17] https://www.washingtonpost.com/graphics/2019/business/hershey-nestle-mars-chocolate-child-labor-west-africa/

47.    Traceability is a profitable misrepresentation because it resonates with consumers, leading them to believe that the chocolate is procured from specific farms that are being monitored in a specific way. Consumers make purchasing decisions based on such claims.

48.    A reasonable consumer would be misled, as Ms. Myers was, into thinking the *product labeled* "traceable from the farm into our factory" is traceable and contains certified, ethically sourced beans.  A reasonable consumer would not expect that once the beans are in "our factory" that Mars abandons tracing or segregating the beans while making the products, and that there is no meaningful difference between the products labeled as traceable and those that are not.

### Quaker Oat's Labeling Misrepresentations: Not Sustainably Sourced

49.    Quaker's Chocolate Chip Chewy Bars prominently display on the front of their packaging that Quaker **"supports sustainably sourced cocoa through Cocoa Horizons."**





SECOND AMENDED CLASS ACTION COMPLAINT

50.    On the back of the box, Quaker makes the false and misleading statement that, "This Quaker product supports sustainably sourced cocoa through Cocoa Horizons" leading the consumer to believe that the cocoa it sources for "this Quaker product" is actually sustainably sourced. Quaker makes these sustainability statements fully knowing that they are not true.

**Quaker's statements are false and misleading because Cocoa Horizons Cannot Trace Any of Quaker's Cocoa Beans.**

51.    Cocoa Horizons is a nonprofit formed by Barry Callebaut, one of the world's largest cocoa processors and chocolate manufacturers. Cocoa Horizon's programs are implemented by Barry Callebaut.[18]

52.    Cocoa Horizons admits that the cocoa it sources is only traced until it reaches the first Barry Callebaut buying site and from there it follows mass balance principles[19], which means that it cannot guarantee that the cocoa it sources is not mixed with other cocoa beans.

53.    Barry Callebaut also admits that only 26% of the farmer groups from which it sourced products in 2018-2019 had programs to prevent child labor.[20]

54.    Quaker cannot identify the farms where its cocoa comes from, let alone whether child labor was used in producing it.

55.    Quaker cannot make sustainability claims since it does not know the working conditions and child labor instances in the farms from where its cocoa is procured, or even which farms supply it.

---

[18] https://www.cocoahorizons.org/program

[19] https://www.cocoahorizons.org/sites/www.cocoahorizons.org/files/Cocoa%20Horizons%20Snapshot%20-%20Mid-Year%20Review%20-%202019-20.pdf

[20] https://www.reuters.com/article/us-barry-callebaut-cocoa/barry-callebaut-cites-progress-in-helping-cocoa-farmers-tackle-child-labor-idUSKBN1Y72BJ

56.     Quaker's reference to Cocoa Horizons on the labels is misleading and intended to deceive the customer into believing that the cocoa in their products is actually being sourced from sustainable and child-labor free farms when the vast majority of it is not.

57.     Quaker does this because sustainability is a highly profitable claim. Sustainability resonates with consumers, and Quakers' label leads them to believe that the chocolate in "this product" is procured transparently through "sustainable" practices, where farmers and workers are paid a living wage and where child and forced labor does not occur.

58.     All of these claims are exhibited on Defendants' product packaging. Reasonable consumers, such as Plaintiff, considered Defendants' assertions and relied upon them as true when choosing whether to purchase these products, and would not have done so had they known the truth behind these labels.

## CLASS ACTION ALLEGATIONS

59.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other similarly situated individuals (the "Class"), defined as follows:

> All United States residents who purchased Defendants' Products marked with the "ethically sourced", "traceability" or "sustainable" claims within California or elsewhere in the United States from the period of four years prior to the filing of this Complaint to the present. Excluded from the Class are any of Defendants' officers, directors, or employees; officers, directors, or employees of any entity in which Defendants currently have or have had a controlling interest; and Defendants' legal representatives, heirs, successors, and assigns.

60.     At this time, Plaintiff does not know the exact number of Class members; however, given the nature of the claims and the number of stores in the United States selling Defendants' Products, Plaintiff believes that the Class members are so numerous that joinder of all members is impracticable.

61.     There is a well-defined community of interest in the questions of law and fact involved in this case. The following questions of law and fact are common to the Class members and predominate over questions that may affect individual Class members:

1.     whether Defendants misrepresented the social benefits of products labeled with socially beneficial claims;

2.     whether Defendants' labeling, marketing, advertising, and/or selling of its products with socially beneficial misrepresentations constituted an unfair and/or deceptive trade practice;

3.     whether Defendants participated in and pursued the common course of conduct complained of herein;

4.      whether Defendants were enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendants to retain the benefits conferred upon them by Plaintiff and the other Class members; and

5.     whether Defendants' labeling, marketing, advertising, and/or selling of its products with socially beneficial misrepresentations violated the CLRA.

62.     Plaintiff's claims are typical of those of the Class because Plaintiff, like all Class members, purchased Defendants' products bearing the socially beneficial labeling in a typical consumer setting and sustained damages from Defendants' wrongful conduct.

63.    Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in litigating complex class actions. Plaintiff has no interests that conflict with those of the Class.

64.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

65.    The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met, as Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the Class as a whole.

66.    Defendants' conduct is generally applicable to the Class as a whole and Plaintiff seeks, inter alia, equitable remedies with respect to the Class as a whole. As such, Defendants' systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

67.    The requirements of Fed. R. Civ. P. 23(b)(3) are met as common issues predominate over any individual issues, and treatment of this matter as a class action is superior to numerous individual actions.

68.    The litigation of separate actions by Class members would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from performing the challenged acts, whereas another might not. Additionally, individual actions may be dispositive of the interests of the Class, although certain Class members are not parties to such actions.

# COUNT I

## Unfair and Deceptive Acts and Practices In Violation of

## the California Consumers Legal Remedies Act

69.    Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint and further alleges as follows:

70.     This cause of action is brought pursuant to the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

71.     Plaintiff and the other Class members are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the products at issue for personal, family, or household purposes.

72.     Plaintiff and Defendants, and the other Class members and Defendants, have engaged in "transactions," as that term is defined by California Civil Code §1761(e).

73.     The conduct alleged in this complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA and the conduct was undertaken by Defendants in transactions intended to result in, and which did result in, the sale of goods to consumers.

74.     As alleged more fully above, Defendants have violated the CLRA by falsely representing to Plaintiff and the other Class members that the cocoa contained in their products is "ethically sourced", "traceable" or "sustainable".

75.     As a result of engaging in such conduct, Defendants have violated California Civil Code § 1770(a)(2), (a)(3), (a)(5), (a)(7), and (a)(9).

76.     Pursuant to California Civil Code § 1780(a)(2) and (a)(5), Plaintiff seeks an order of this Court that includes, but is not limited to, an order requiring Defendants to:

        a.     Remove and/or refrain from making statements representing that products are derived from alleged ethical farming or provide other social benefits; and/or

        b.     Remove and/or refrain from making representations that socially beneficial claims indicate that a product has been independently verified as having been produced using socially responsible practices.

SECOND AMENDED CLASS ACTION COMPLAINT

77. Plaintiff and the other Class members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

78. The unfair and deceptive acts and practices of Defendants, as described above, present a serious threat to Plaintiff and the other Class members.

79. Pursuant to California Civil Code §1780, Plaintiff and the other Class Members also seek recovery of attorneys' fees and costs of litigation, restitution of property, actual damages, punitive damages, and any other relief the Court deems proper.

80. On February 19th, 2020, Plaintiff sent letters to Defendants via certified mail, return receipt requested, that provided notice of Defendants' violations of the CLRA and demanded that within thirty (30) days from that date, Defendants correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. The letters also stated that if Defendants refuse to do so, a complaint seeking damages in accordance with the CLRA will be filed. Thirty days have elapsed and Defendants have not responded to the letters nor have they rectified the unlawful, unfair, false, and/or deceptive practices alleged herein.

## COUNT II

### Violation of California's Unfair Competition Law

81. Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint and further alleges as follows:

82. By committing the acts and practices alleged herein, Defendants have violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the Class as a whole, by engaging in unlawful, fraudulent, and unfair conduct.

83. **Unlawful Conduct.** Defendants have violated the UCL's proscription against engaging in unlawful conduct as a result of violations of the CLRA, Cal. Civ. Code § 1770(a)(2), (a)(3), (a)(5), (a)(7), and (a)(9), as alleged above.

84.   **Unfair Conduct.** Defendants' acts and practices described above also violate the UCL's proscription against engaging in unfair conduct.

85.   Plaintiff and the other Class members suffered a substantial injury by virtue of buying products that they would not have purchased absent Defendants' unlawful, fraudulent, and unfair marketing, advertising, packaging, and labeling or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly marketed, advertised, packaged, and labeled products.

86.   There is no benefit to consumers or competition from deceptively marketing and labeling products that purport to provide consumers with a socially responsible alternative to other products, as determined according to independent standards.

87.   Plaintiff and the other Class members had no way of reasonably knowing that the products they purchased were not as marketed, advertised, packaged, or labeled. Thus, they could not have reasonably avoided the injury each of them suffered.

88.   The gravity of the consequences of Defendants' conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other Class members.

89.   Defendants' violations of the UCL continue to this day. Pursuant to California Business and Professional Code § 17203, Plaintiff and the Class seek an order of this Court that includes, but is not limited to, an order requiring Defendants to:

> a.   Remove and/or refrain from making statements representing that its chocolate products are "ethically sourced", "traceable" or "sustainable";
>
> b.   provide restitution to Plaintiff and the other Class members;

SECOND AMENDED CLASS ACTION COMPLAINT

1        c.     disgorge all revenues obtained as a result of violations of the

2                UCL; and

3        d.     pay Plaintiff's and the Class's attorneys' fees and costs.

4

5                            **PRAYER FOR RELIEF**

6        WHEREFORE, Plaintiff demands judgment on behalf of herself and the

7  Class as follows:

8       A.    an order certifying the proposed Class; appointing Plaintiff as

9              representative of the Class; and appointing Plaintiff's undersigned

10           counsel as Class counsel;

11      B.    a declaration that Defendants are financially responsible for notifying

12           Class members of the pendency of this suit;

13      C.    an award of restitution pursuant to California Business and

14           Professions Code §§ 17203 and 17535 for Class members;

15      D.    an award of disgorgement pursuant to California Business and

16           Professions Code §§ 17203 and 17535 for Class members;

17      E.    an order enjoining Defendants' unlawful and deceptive acts and

18           practices, pursuant to California Business and Professions Code §§

19           17203 and 17535, to remove and/or refrain from making statements

20           representing that its products are "ethically sourced", "traceable" or

21           "sustainable";

22      F.    actual damages, punitive damages, restitution, and injunctive relief

23           for Class members pursuant to California Civil Code §1780;

24      G.    an order awarding Plaintiff and the other Class members the

25           reasonable costs and expenses of suit, including their attorneys' fees;

26           and

27      H.    any further relief that the Court may deem appropriate.

28

1

**JURY TRIAL DEMANDED**

2

Plaintiff demands a trial by jury for all claims so triable.

3

4

5    Date: August 12, 2020                SCHONBRUN SEPLOW HARRIS
                                          HOFFMAN & ZELDES, LLP
6

7                                         By: /s/ *Helen I. Zeldes*_____
8                                         Helen I. Zeldes (220051)
9                                         hzeldes@sshhzlaw.com
                                          501 W. Broadway, Suite 800
10                                        San Diego, CA 92101
                                          Telephone: (619) 400-4990
11

12                                        Attorneys for Plaintiff,
                                          LORI MYERS
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED CLASS ACTION COMPLAINT