SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
SASCHA HENRY, Cal. Bar No. 191914
ROBERT J. GUITE, Cal. Bar No. 244590
shenry@sheppardmullin.com
rguite@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071-1422
Telephone: 213.620.1780
Facsimile: 213.620.1398

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
ABBY H. MEYER, Cal. Bar No. 294947
ameyer@sheppardmullin.com
650 Town Center Drive, Tenth Floor
Costa Mesa, CA 92626-1993
Telephone: 714.513.5100
Facsimile: 714.513.5130

Attorneys for Defendant Starbucks Corporation

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LORI MYERS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>STARBUCKS CORPORATION; MARS WRIGLEY CONFECTIONARY US, LLC; THE QUAKER OATS COMPANY; and DOES 1-10, inclusive,<br><br>　　　　Defendants. | Case No. 5:20-cv-00335-CJC-SHK<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF STARBUCKS CORPORATION'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br>(Fed. R. Civ. P. 12(b))<br><br>Date: October 26, 2020<br>Time: 1:30<br>Courtroom: 9B<br><br>The Hon. Cormac J. Carney<br><br>Complaint filed: February 24, 2020<br>Second Amended Complaint filed: August 12, 2020 |

# TABLE OF CONTENTS

| | Page |
|---|---|
| I. INTRODUCTION | 6 |
| II. STATEMENT OF FACTS AND PROCEDURAL HISTORY | 7 |
| III. ARGUMENT | 9 |
|     A. Plaintiff Has Failed to Allege Plausible Claims Against Starbucks | 9 |
|     B. No Reasonable Consumer Would Be Misled By the Hot Cocoa Mix Label | 13 |
|     C. Plaintiff Is Not Entitled To Injunctive Relief | 16 |
|     D. Claims Based on Purchases Made Outside of California Must Be Dismissed | 18 |
| IV. CONCLUSION | 19 |

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ....................................................................................... 9, 10

*Barber v. Nestle USA*
    154 F.Supp.3d 954 (C.D. Cal. 2015) .................................................................. 15

*Becerra v. Dr Pepper/Seven Up, Inc.*
    945 F.3d 1225 (9th Cir. 2019) ...................................................................... 13, 14

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007) .............................................................................................. 9

*Churchill Village, LLC v. Gen. Elec. Co.*
    169 F.Supp.2d 1119 (N.D. Cal. 2000) ................................................................ 18

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*
    752 F.3d 173 (2d Cir. 2014) ............................................................................... 15

*Collins v. Gamestop Corp.*
    2010 U.S. Dist. LEXIS 88878 (N.D. Cal. Aug. 6, 2010) .................................... 19

*Cordes v. Boulder Brands USA, Inc.*
    2018 U.S. Dist. LEXIS 217534 (C.D. Cal. Oct. 17, 2018) ................................. 17

*Davidson v. Kimberly-Clark Corp.*
    889 F.3d 956 (9th Cir. 2018) ........................................................................ 10, 16

*Davison v. Kia Motors Am., Inc.*
    2015 WL 3970502 (C.D. Cal. June 29, 2015) .................................................... 18

*Delman v. J. Crew Grp., Inc.*
    2017 U.S. Dist. LEXIS 221646 ........................................................................... 14

*Ebner v. Fresh, Inc.*
    838 F.3d 958 (9th Cir. 2016) .............................................................................. 14

*Ehlers v. Ben & Jerry's Homemade, Inc.*
    2020 U.S. Dist. LEXIS 80773 (D. Vt. May 7, 2020) .......................................... 15

*Fasugbe v. Willms*
   2011 U.S. Dist. LEXIS 56569 (E.D. Cal. May 25, 2011) ................................... 10

*Fernandez v. Atkins Nutritionals, Inc.*
   2018 U.S. Dist. LEXIS 1189 (S.D. Cal. Jan. 3, 2018) ......................................... 17

*Forsher v. J.M. Smucker Co.*
   2020 U.S. Dist. LEXIS 55835 (N.D. Ohio Mar. 31, 2020) ................................. 12

*Gomez v. Jelly Belly Candy Co.*
   2017 U.S. Dist. LEXIS 95471 (C.D. Cal. June 8, 2017) ..................................... 17

*Kearns v. Ford Motor Co.*
   567 F.3d 1120 (9th Cir. 2009) ............................................................................ 10

*Kwan v. SanMedica Int'l*
   854 F.3d 1088 (9th Cir. 2017) ............................................................................ 13

*Lanovaz v. Twinings N. Am., Inc.*
   726 Fed.Appx. 590 (9th Cir. 2018) .............................................................. 16, 17

*Lujan v. Defenders of Wildlife*
   504 U.S. 555 (1992) ........................................................................................... 16

*McKenna v. WhisperText*
   2015 U.S. Dist. LEXIS 120090 (N.D. Cal. Sep. 9, 2015) ............................. 10, 12

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms., Inc.*,
   107 Cal.App.4th 1336, 1344 (2003) ................................................................... 13

*Rahman v. Mott's LLP*
   2018 U.S. Dist. LEXIS 164620 (N.D. Cal. Sept. 25, 2018) ............................... 17

*Razo v. Ashley Furniture Indus.*
   782 Fed. App'x 632 (9th Cir. 2019) ................................................................... 14

*Rodriguez v. Sony Computer Entm't Am., LLC*
   801 F.3d 1045 (9th Cir. 2015) ............................................................................ 10

*Rugg v. Johnson & Johnson*
   2018 U.S. Dist. LEXIS 101727 (N.D. Cal. June 18, 2018) ................................ 14

*Ruiz v. Darigold, Inc.*
   2014 WL 5599989 (W.D. Wash. Nov. 3, 2014) ................................................ 15

*Sanders v. Apple Inc.*
    672 F.Supp.2d 978 (N.D. Cal. 2009) ................................................................... 19

*In re Seagate Tech. LLC Litig.*
    233 F.Supp.3d 776 (N.D. Cal. 2017) ................................................................... 14

*Shaeffer v. Califia Farms, LLC*
    44 Cal.App.5th 1125 (2020) ............................................................................... 13

*Shane v. Fla. Bottling, Inc.*
    2017 U.S. Dist. LEXIS 141069 (C.D. Cal. Aug. 9, 2017) .................................. 14

*Smith v. Sabre Corp.*
    2018 U.S. Dist. LEXIS 238419 (C.D. Cal. Jan. 23, 2018) .................................. 10

*Stearns v. Select Comfort Retail Corp.*
    763 F.Supp.2d 1128 (N.D. Cal. 2010) ................................................................ 10

*Sullivan v. Oracle Corp.*
    51 Cal.4th 1191 (2011) ....................................................................................... 18

*Terpin v. AT&T Mobility, LLC*
    399 F.Supp.3d 1035,1047 (C.D. Cal. 2019) ....................................................... 18

*In re Toyota Motor Corp.*
    785 F.Supp.2d 883 (C.D. Cal. 2011) .................................................................. 19

*Vess v. Ciba-Geigy Corp. USA*
    317 F.3d 1097 (9th Cir. 2003) ............................................................................ 10

*Wilson v. Frito-Lay N. Am., Inc.*
    961 F.Supp.2d 1134 (N.D. Cal. 2013) ......................................................... 18, 19

*Yothers v. JFC Int'l, Inc.*
    3:20-cv-01657-RS, Dkt. 15 (N.D. Cal. May 14, 2020) ...................................... 18

**Other Authorities**

Federal Rule of Civil Procedure
    Rule 8 ..................................................................................................................... 9
    Rule 8(a) .............................................................................................................. 10
    Rule 9(b) .............................................................................................................. 10
    Rule 12(b) .............................................................................................................. 6
    Rule 12(b)(6) ....................................................................................................... 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Because of the conditions in Côte d'Ivoire, Starbucks has committed to ethically sourcing its cocoa, established its COCOA Practices program to support that commitment, and joined the World Cocoa Foundation. (SAC, ¶¶ 30, 37-38.) Its commitment to ethical sourcing, however, has never extended to a promise by Starbucks to eradicate child labor from the cocoa industry. That Plaintiff contends the use of child labor in the region has been increasing does not mean that by simply sourcing cocoa from West Africa, Starbucks is to blame, at fault, or misleading its consumers.

Plaintiff's Second Amended Complaint ("SAC"), like the Amended Complaint before it, fails to allege any specific facts or information that would plausibly support Plaintiff's conclusion that "made with ethically sourced cocoa" renders the Starbucks Hot Cocoa deceptively labeled. Plaintiff continues to improperly refer to the labor issues that generally plague the cocoa industry and West Africa region, but offers no facts specific as to Starbucks. Unable to explain why the cocoa farm audits conducted through a third-party are a "sham," Plaintiff deleted the allegations and replaced them with a new conclusory statement, "these farm audits and verifications are unreliable." (SAC, ¶ 38.) Lacking specific information as to Starbucks and asserting that only 20% of cocoa grown in the region is traceable, Plaintiff's case is based on the *possibility* that Starbucks might have sourced its cocoa for the Hot Cocoa Mix from forced or child labor. More is required to survive a Rule 12(b) motion.

With regard to Plaintiff's request for injunctive relief, she cannot state a claim because she confirms she has no interest in purchasing the Hot Cocoa Mix now or anytime soon. Accordingly, she cannot fulfill the "imminent injury" standing requirement.

Finally, Plaintiff's request to represent a nationwide class of consumers

-6-

should be dismissed because the CLRA and UCL do not apply to purchases made outside the state of California.  For these and the reasons that follow, the SAC should be dismissed without leave to amend.

## II. STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff Lori Myers, a California resident, filed her original purported class action complaint on February 19, 2020 against defendants Starbucks, Mars, Inc., and The Quaker Oats Company claiming that certain product labels misled consumers about the defendants' ethical or sustainable sourcing of their cocoa.  Plaintiff filed her first amended complaint ("Amended Complaint") on May 8, 2020.  The Amended Complaint asserted claims for violation of California's Consumers Legal Remedies Act ("CLRA") and California's Unfair Competition Law ("UCL").  Plaintiff also sought injunctive relief and to represent a nationwide class of consumers.  Defendants each moved to dismiss the Amended Complaint.  Following full briefing, the Court granted the motions, with leave to amend ("Order", Dkt. 63).

Addressing Starbucks Hot Cocoa, the Court found that, "as currently pled, Plaintiff's claims against Starbucks are deficient."  (Order at 12.)  Specifically, the Court found:

> Plaintiff fails to allege specific facts explaining why this claim is false or misleading.  To make good on its ethical promises, Starbucks implements its own COCOA certification program.  According to Plaintiff, this program is "a clear attempt by [Starbucks] to profiteer off a growing market trend of ethical consumers, without taking tangible actions to eradicate [child and forced labor] in its supply claim."  But Plaintiff fails to allege any facts to support this conclusion.

(*Id.*, at 13 [internal citations omitted].)  The Court continued:

> Plaintiff identifies only one specific problem with the COCOA program: it "consists solely of mandating verification organizations to audit farms" and these verification organizations are "trained and audited by

> another global organization, SCS Global Services, and not by Starbucks itself." The Court fails to understand why Starbucks's use of third parties makes the COCOA program a sham. Plaintiff then falls back on generalized allegations about industry-wide problems and attempts to shift the burden to Starbucks to substantiate the success of the COCOA program. As discussed above, such allegations are insufficient to state a claim for affirmative misrepresentations under the UCL and CLRA.

(*Id.*, at 13-14 [internal citations omitted].) The Court noted that the CLRA and UCL "do not obligate companies to disclose negative information about products," unless the omission is "contrary to a representation actually made" or is unlawful. (*Id.*, at 7.) The Court also noted that private litigants may not pursue actions to force manufacturers to "substantiate" representations about products. (*Id.*)

Regarding injunctive relief, the Court found,

> [A] plaintiff does not have standing to seek prospective injunctive relief against a manufacturer or seller engaging in false or misleading advertising unless there is a likelihood that the plaintiff would suffer future harm from the defendant's conduct – *i.e*., the plaintiff is still interested in purchasing the product in question.

(*Id.,* at 6 (citing *Mason v. Nature's Innovation, Inc.*, 2013 WL 1969957, *4 (S.D. Cal. May 13, 2013)).) As Plaintiff conceded that "she has not alleged any such interest in purchasing Defendants' products in the future," the Court dismissed the claim for injunctive relief. (*Id.*)

Plaintiff filed a Second Amended Complaint ("SAC"; Dkt. 64) that, vis-à-vis Starbucks, is materially shorter (11 paragraphs compared to 20 in the Amended Complaint). Plaintiff deleted the allegations describing how the COCOA Practices program audits farms, deleted allegations describing Starbucks participation in the World Cocoa Foundation, and deleted allegations related to traceable cocoa. In place of these, Plaintiff added conclusory language that Starbucks purportedly

1 knows its labels are false or misleading (*e.g.*, ¶ 33) and conclusory allegations that
2 the COCOA Practices program is unreliable (*e.g.*, ¶ 38.)  (Compare Amended
3 Complaint, ¶¶ 28-48 with SAC, ¶¶ 30-41.)  The SAC does not contain any new
4 factual allegations that might support Plaintiff's conclusions about Starbucks cocoa
5 sourcing.  Because the allegations of the SAC fail to remedy the defects identified
6 by the Court when it dismissed the Amended Complaint, the SAC should be
7 dismissed without leave to amend.

## III.  ARGUMENT

### A.  Plaintiff Has Failed to Allege Plausible Claims Against Starbucks

A complaint will not suffice if it "tenders naked assertions devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted); *accord Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (confirming that a complaint should have been dismissed where, at best, plaintiff alleged parallel conduct among antitrust defendants).  The Supreme Court was clear that Federal Rule of Civil Procedure 8, "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79 confirming that bare allegations of knowledge are not entitled to a presumption of truth).

The factual allegations together "must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (recognizing that "[t]he pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action" (citation omitted)).  This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 678 (internal citations omitted).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 679.

1    Determining whether a complaint states a plausible claim for relief is "a
2 context-specific task that requires the reviewing court to draw on its judicial
3 experience and common sense." *Id.* at 679.  As part of this inquiry, a court may
4 "consider the prior allegations … to assess whether an amended complaint plausibly
5 suggests an entitlement to relief." *McKenna v. WhisperText*, 2015 U.S. Dist. LEXIS
6 120090, at *7, n.32 (N.D. Cal. Sep. 9, 2015); *Rodriguez v. Sony Computer Entm't
7 Am., LLC*, 801 F.3d 1045, 1054 (9th Cir. 2015) (finding Plaintiff's amended
8 pleading to be implausible in comparison to prior pleading); *Stearns v. Select
9 Comfort Retail Corp.*, 763 F.Supp.2d 1128, 1145 (N.D. Cal. 2010) (same); *see also
10 Smith v. Sabre Corp.*, 2018 U.S. Dist. LEXIS 238419, at *8, n.2 (C.D. Cal. Jan. 23,
11 2018) ("[plaintiff] cannot selectively delete allegations from a prior complaint to
12 avoid dismissal of an amended complaint"); *Fasugbe v. Willms*, 2011 U.S. Dist.
13 LEXIS 56569, at *13 (E.D. Cal. May 25, 2011) ("plaintiffs may alter their
14 allegations in an amended complaint, but the court may properly consider the
15 plausibility of the FAC in light of the prior allegations").
16    When claims under the CLRA and UCL are grounded in fraud, the complaint
17 must "must satisfy the traditional plausibility standard of Rules 8(a) and 12(b)(6), as
18 well as the heightened pleading requirements of Rule 9(b)."  *Davidson v. Kimberly-
19 Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018); *Kearns v. Ford Motor Co.*, 567
20 F.3d 1120, 1125 (9th Cir. 2009).  "[A] plaintiff must set forth more than the neutral
21 facts necessary to identify the transaction. The plaintiff must set forth what is false
22 or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp.
23 USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).
24    As with the Amended Complaint, Plaintiff has not alleged any specific
25 information about how Starbucks sources the cocoa for its Hot Cocoa to support her
26 claims that it was deceptively labeled.  Plaintiff generally refers to the labor
27 conditions in West Africa and Côte d'Ivoire.  (*See, e.g.*, SAC ¶¶ 2, 19-22, 28.)  With
28 regard to Starbucks, Plaintiff asserts that its cocoa is sourced from West Africa but

-10-

makes no specific allegation as to which farms and concludes without explanation "there is no way it can assure its cocoa is 'ethically sourced'". (*Id.*, ¶ 31.) Plaintiff concedes that the COCOA Practices program exists and acknowledges that it involves farm audits and verifications, but makes no factual allegations as to why those audits and verifications are "unreliable". (*Id.*, ¶ 37.) At best, Plaintiff alleges that the label claim is misleading because the number of children working in West Africa has increased in recent years, but that says nothing about the Starbucks supply chain. (*Id.*, ¶ 39.)

Plaintiff's amendments to her operative complaint do not provide facts that Starbucks sources cocoa from slave or child labor.

- For example, Plaintiff added allegations about the cocoa market generally, such as "[i]n an analysis of different industries, chocolate products' growth was the most pronounced based on claims of sustainability," "64% of global consumers say they choose brands because of their stand on social issues," and "[c]onsumers care about where and how their products are made." (SAC ¶¶ 6-8.) The footnoted articles that purportedly support these allegations do not reference Starbucks or its Hot Cocoa.

- Plaintiff added conclusions that Starbucks has knowledge of use of child and slave labor, but does not tie it to any facts about the cocoa that Starbucks purchases. (*See* SAC ¶ 26 (Second Amended Complaint omits language present in Amended Complaint: "Defendants Starbucks and Mars … have knowledge of the ~~many public reports on the~~ widespread use of child labor"; *see also* SAC ¶ 33, adding conclusion that "Starbucks is fully aware that the farms it sources its cocoa from use child and slave labor.");

- Plaintiff removed qualifying language, but provided no facts to support her conclusion[1]: "Starbucks cannot publicly claim that it adopts 'ethical sourcing practices' and that it is committed to buying cocoa produced in an ethical manner

---

[1] New language is identified with underlining.

-11-

when in fact, its ~~sourcing practices are perpetuating a system that relies on and thus increases~~ <u>cocoa is produced by</u> child labor and child slave labor. ~~A value chain that furthers structural poverty and child slave labor can never be called ethical~~." (SAC ¶ 34);

- Lacking any facts that would support her contention that the cocoa farm audits performed through third-party SCS Global Services are a sham, Plaintiff deleted specific references to them.[2] She replaced the allegations with language that is more vague and conclusory than the original: "Starbucks' COCOA program, however, consists of unreliable verification organizations auditing farms. Starbucks is well aware that these farm audits and verifications are unreliable. Starbucks' use of the COCOA program to justify the language on its labels is thus deceptive." (SAC ¶ 38.);

- Plaintiff added more conclusory language, "Starbucks makes false assurances that its Hot Cocoa Mix products are "ethically sourced" but Starbucks <u>knows that it is not true and</u> has <u>not</u> set in place ~~no~~ <u>any</u> measures to actually ensure that its supply chain is free of child and slave labor" (SAC ¶ 40.)

None of these changes remedy the basic problem identified by the Court – the pleading lacks any "specific facts" supporting Plaintiff's conclusions.

As before, Plaintiff strings together studies, articles, and conclusions to allege a *possibility* that the cocoa Starbucks sources for its Hot Cocoa Mix might be the product of forced or slave labor. This is precisely the mere possibility of a claim that the Supreme Court and the Ninth Circuit have warned is insufficient to satisfy the probability standard and insufficient to warrant proceeding to discovery in this case. *See also Forsher v. J.M. Smucker Co.*, 2020 U.S. Dist. LEXIS 55835, at *14

---

[2] Plaintiff cannot simply ignore, or ask the Court to ignore, the defective allegations of the SAC in evaluating this motion to dismiss. "[T]he Court can utilize allegations in prior versions of the complaint to judge the plausibility of the allegations in the amended complaint," and the Court "may demand more factual support in light of the prior allegations." *McKenna,* 2015 U.S. Dist. LEXIS 120090, at *7-9 n.32.

1  (N.D. Ohio Mar. 31, 2020) (dismissing CLRA, FAL and UCL claims; "Plaintiff
2  requests this Court to accept, base[d] on a 50% probability, that the sugar in the
3  Products is from sugar beets and that those sugar beets were of the GMO variety.
4  This does not move the needle from conceivable to plausible").

5  The Ninth Circuit recently confirmed that a plaintiff must allege actual falsity
6  instead of attempting to shift the burden to the defendant to substantiate its
7  advertising. *Kwan v. SanMedica Int'l,* 854 F.3d 1088, 1096 (9th Cir. 2017)
8  (confirming that the holding in *Nat'l Council Against Health Fraud, Inc. v. King Bio*
9  *Pharms., Inc.*, 107 Cal.App.4th 1336, 1344 (2003) "is firmly established law in
10 California"). Thus, California law does not provide a private cause of action for
11 claims that lack substantiation, and the "failure to allege specific facts pointing to
12 actual falsehood constitutes a fatal flaw." *Kwan*, 854 F.3d at 1097 (affirming
13 district court's dismissing California consumer claims).

14 Plaintiff is impermissibly attempting to bring a lack-of-substantiation claim
15 against Starbucks. At best, Plaintiff speculates that given the problems existing in
16 the region, the supply chain for Starbucks Hot Cocoa might also have involved
17 forced or child labor. But, she concedes that 20% of cocoa is traceable to farmers
18 participating in a formal cooperative system. (*Id.*, ¶ 25.) More is required for
19 Plaintiff to proceed here because Plaintiff must specifically and plausibly plead facts
20 that the label is false or misleading.

21 Having failed to correct the defects that warranted dismissal of the Amended
22 Complaint, the Court should dismiss the SAC.

23 **B.     <u>No Reasonable Consumer Would Be Misled By the Hot Cocoa Mix Label</u>**

24 Plaintiff's claims for misleading advertising under the CLRA and UCL are
25 governed by the "reasonable consumer" standard. *Becerra v. Dr Pepper/Seven Up,*
26 *Inc.,* 945 F.3d 1225, 1228 (9th Cir. 2019). This means that only those statements
27 that are "'likely' to deceive a 'reasonable consumer' are actionable under the Unfair
28 Competition Law, the false advertising law and the CLRA." *Shaeffer v. Califia*

-13-

1 *Farms, LLC,* 44 Cal.App.5th 1125, 1140 (2020). This test "requires more than a
2 mere possibility that [a product's] label 'might conceivably be misunderstood by
3 some few consumers viewing it in an unreasonable manner.'" *Ebner v. Fresh, Inc.*,
4 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 105
5 Cal.App.4th 496, 507 (2003)). Rather, "the reasonable consumer standard requires a
6 probability 'that a significant portion of the general consuming public or of targeted
7 consumers, acting reasonably in the circumstances, could be misled.'" *Id.*

8 The context of the advertising as a whole should be considered when
9 determining whether the statements on the packaging are deceptive or misleading.
10 *Razo v. Ashley Furniture Indus.*, 782 Fed. App'x 632 (9th Cir. 2019) (recognizing
11 that a defendant's allegedly deceptive representations must be viewed "reasonably
12 and in context" to determine whether the material as a whole is misleading).
13 "Because the 'reasonable consumer' inquiry is an objective standard, claims may be
14 dismissed as a matter of law where an alleged statement…in context, is such that no
15 reasonable consumer could be misled in the manner claimed by the plaintiff." *Rugg*
16 *v. Johnson & Johnson*, 2018 U.S. Dist. LEXIS 101727, at *9 (N.D. Cal. June 18,
17 2018); *In re Seagate Tech. LLC Litig.*, 233 F.Supp.3d 776, 794 (N.D. Cal. 2017). A
18 determination of whether any statement is false or misleading requires that the
19 actual statement, not cherry-picked words or phrases, be "read reasonably and in
20 context." *Shane v. Fla. Bottling, Inc.*, 2017 U.S. Dist. LEXIS 141069, at **11-12
21 (C.D. Cal. Aug. 9, 2017); *Delman v. J. Crew Grp., Inc.*, 2017 U.S. Dist. LEXIS
22 221646, at *21 ("The question is how a reasonable consumer would interpret the
23 phrase … in the context of the specific commercial interaction that Plaintiff has
24 challenged.").

25 Where a court can conclude as a matter of law that members of the public are
26 not likely to be deceived by the product in question, dismissal is appropriate. *See,*
27 *e.g., Becerra*, 945 F.3d at 1229 (affirming dismissal of UCL, FAL, and CLRA
28 claims on motion to dismiss because no reasonable consumer would be misled);

*Ebner*, 838 F.3d at 966 (same).

Plaintiff only challenges the label statements that the Hot Cocoa Mix is "made with ethically sourced cocoa" and that Starbucks is "committed to purchasing cocoa that's grown in an ethical and transparent way." (SAC ¶ 30 [images].) Those statements say nothing about the entire region or the "industry", yet the only allegations Plaintiff pleads for falsity relate to the conditions in the entire region and the "industry." For those to be sufficient facts of falsity, then Plaintiff must be interpreting the label statements as a promise by Starbucks to remedy all the problems in the region – not just Starbucks own supply chain. That is a wholly unreasonable reading of the challenged statements.

Plaintiff's case theory is akin to those pursued by the plaintiffs in *Barber v. Nestle USA*, 154 F.Supp.3d 954, 963-65 (C.D. Cal. 2015), *aff'd*, 730 Fed App'x 464 (9th Cir. 2018) and *Ruiz v. Darigold, Inc.,* 2014 WL 5599989, at *4 (W.D. Wash. Nov. 3, 2014). In both cases, the courts dismissed claims based on advertising that, when read in context, were nuanced assessments of the current situation, aspirational statements, or not shown to be false in a material respect. *Barber*, 154 F.Supp.3d at 964-65; *Ruiz*, 2014 WL 5599989, at *4; *see also City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014) (noting that it is well-established that general and/or aspirational statements about reputation, integrity and compliance with ethical norms are too general to support false advertising claims); *see also Ehlers v. Ben & Jerry's Homemade*, *Inc.*, 2020 U.S. Dist. LEXIS 80773, at *18 (D. Vt. May 7, 2020) (dismissing false advertising claims based statements regarding sustainability program and supply chain where plaintiff's "entire claim is grounded on a single phrase in a single heading … on a multipage website which is neither false nor misleading when considered as a whole.")

Here, the context demonstrates that Starbucks is aware of the problems in the West Africa region, has taken steps to contribute positively to cocoa-farming

-15-

communities, and has undertaken an audit system, supported by third parties, to source cocoa in an ethical and transparent way. To allow Plaintiff's claim to proceed based on the circumstances present in the entire region would equate the label representations as a promise that Starbucks would eradicate all the problems in the West Africa region, a wholly unreasonable view.

### C. Plaintiff Is Not Entitled To Injunctive Relief

As the U.S. Supreme Court has articulated, "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). For injunctive relief that addresses a prospective injury "the *threat* of injury must be 'actual and imminent, not conjectural or hypothetical.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (emphasis added)). In other words, the "threatened injury must be *certainly impending*" and allegations of "*possible* future injury are not sufficient." *Id.* (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis in original)).

Just as *Davidson* applied this Supreme Court standard, so too did the Ninth Circuit in *Lanovaz*, confirming that "someday" pleading is insufficient for Article III standing:

> A 'profession of an intent . . . is simply not enough' to satisfy Article III. *Lujan*, 504 U.S. at 564. A 'some day' intention – without any description of concrete plans, or indeed even any specification of when the some day will be – does not support a finding of the 'actual or imminent' injury that Article III requires. Lanovaz's statement that she would 'consider buying' Twinings products does not satisfy this standard.

*Lanovaz v. Twinings N. Am., Inc.*, 726 Fed.Appx. 590, 591 (9th Cir. 2018) (affirming grant of summary judgment on injunctive relief claim).

In the Order dismissing the Amended Complaint, the Court found that

-16-

Plaintiff failed to allege any interest in purchasing Starbucks Hot Cocoa in the future and so dismissed the claim with leave to amend.  (Order, 6.)  Plaintiff now alleges that she:

> would like to buy Defendants' products in the future if and when they were produced as advertised by Quaker and Starbucks, and if and when the products are actually traceable to ethical farms as advertised by Mars.  **She does currently intend to do so** because she cannot rely on the accuracy of the representations addressed below in deciding whether or not she should purchase Defendants' products, and furthermore, cannot independently or easily determine whether the products at issue are or are not made by enslaved children, actually traceable, or ecologically devastating.

(SAC, ¶ 15 (emphasis added).)  By disclaiming any current intent to purchase the Hot Cocoa, Plaintiff fails to show the "imminent injury" required for injunctive relief.

Plaintiff's allegation that she "would like to buy" the Hot Cocoa again in the future does not overcome the overall defective pleading.  Taken in context, the amended allegation amounts to no more than a someday "profession of intent" that the Ninth Circuit has ruled to be "simply not enough."  *Lanovaz*, 726 Fed.Appx. at 591.

Additionally, Plaintiff now knows that the "ethically sourced" language on the Hot Cocoa refers to Starbucks COCOA Practices program.  There is no reason for her to misunderstand that language the next time she encounters it on Starbucks Hot Cocoa.  *Gomez v. Jelly Belly Candy Co.*, 2017 U.S. Dist. LEXIS 95471, *5 (C.D. Cal. June 8, 2017) (finding plaintiff's assertion that "she would consume" Jelly Products "in the future, however, without "injunctive relief, she cannot rely on Jelly Belly's labels now or in the future" to be "miss[ing] the mark" because plaintiff now knows what the challenged product packaging means); *see also Rahman v. Mott's LLP*, 2018 U.S. Dist. LEXIS 164620 (N.D. Cal. Sept. 25, 2018);

-17-

*Fernandez v. Atkins Nutritionals, Inc.*, 2018 U.S. Dist. LEXIS 1189 (S.D. Cal. Jan. 3, 2018); *Cordes v. Boulder Brands USA, Inc*., 2018 U.S. Dist. LEXIS 217534 (C.D. Cal. Oct. 17, 2018); and *Yothers v. JFC Int'l, Inc*., 3:20-cv-01657-RS, Dkt. 15 (N.D. Cal. May 14, 2020).

### D. <u>Claims Based on Purchases Made Outside of California Must Be Dismissed</u>

This Court may consider – and dismiss – claims purportedly brought on behalf of "[a]ll United States residents" for claims arising under California law at the motion to dismiss stage. (SAC ¶¶ 59, 69-89.) This is proper because the legislature "did not intend the statutes of this state to have force or operation beyond the boundaries of the state." *Terpin v. AT&T Mobility, LLC,* 399 F.Supp.3d 1035,1047 (C.D. Cal. 2019) (quoting *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal.App.4th 214, 222 (1999)). As the California Supreme Court recognized, "[n]either the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially." *Sullivan v. Oracle Corp.*, 51 Cal.4th 1191, 1207 (2011). As a result, residents of states other than California cannot bring CLRA or UCL claims "where none of the alleged misconduct or injuries occurred in California." *Churchill Village, LLC v. Gen. Elec. Co.*, 169 F.Supp.2d 1119, 1126 (N.D. Cal. 2000); *Davison v. Kia Motors Am., Inc.*, 2015 WL 3970502, at *3 (C.D. Cal. June 29, 2015) ("every state would be impaired in its ability to protect the consumers within its borders if California law were applied to all claims of the nationwide class").

In consumer false advertising cases, "courts consider facts like where the defendant is located, where the class members are located, and where decisions about the behavior in question were made" to determine whether application of the CLRA and UCL is appropriate. *Wilson v. Frito-Lay N. Am., Inc.*, 961 F.Supp.2d 1134, 1148 (N.D. Cal. 2013). Here, such claims must be dismissed because California consumer protection laws may not be applied extraterritorially. *Sullivan*, 51 Cal.4th at 1207; *Terpin,* 399 F.Supp.3d at 1047.

1  Plaintiff alleges that Starbucks is a Washington corporation with is principal
2  place of business in Seattle, Washington. (SAC, ¶ 12.) She also alleges that she is a
3  California resident. (*Id.*, ¶ 14.) She alleged no facts that decisions regarding the
4  challenged representations took place in California. In these circumstances, her
5  claims arising from purchases outside of California and any claims of putative class
6  members who reside outside of California are properly dismissed. *Wilson*, 961
7  F.Supp.2d at 1147 (dismissing claims for false or misleading advertising based on
8  out of state purchases because "there is no plausible way for a non-California citizen
9  who purchased Defendant's Products outside California to bring these claims"); *In
10 re Toyota Motor Corp.*, 785 F.Supp.2d 883, 917 (C.D. Cal. 2011) ("Plaintiffs'
11 claims under the UCL and CLRA are dismissed because these California statutes
12 cannot provide relief for non-California residents who cannot allege a sufficient
13 connection to California.").

14  Finally, it would not be premature to dismiss the request for certification of a
15 nationwide class because it is already clear at the pleadings stage that such class
16 claims cannot be maintained. *Wilson*, 961 F.Supp.2d at 1148; *accord Sanders v.
17 Apple Inc.*, 672 F.Supp.2d 978, 990 (N.D. Cal. 2009); *Collins v. Gamestop Corp.*,
18 2010 U.S. Dist. LEXIS 88878, *2 (N.D. Cal. Aug. 6, 2010).

## IV. CONCLUSION

20  For these reasons, Plaintiff's Second Amended Complaint against Starbucks
21 should be dismissed without leave to amend.

Dated: September 4, 2020

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By        */s/ Robert J. Guite*
SASCHA HENRY
ROBERT J. GUITE
ABBY H. MEYER
Attorneys for Defendant Starbucks Corporation