**SCHONBRUN SEPLOW HARRIS**
**HOFFMAN & ZELDES, LLP**
HELEN I. ZELDES (220051)
*hzeldes@sshhzlaw.com*
JOSHUA A. FIELDS (242938)
*jfields@sshhzlaw.com*
AYA DARDARI (344039)
*adardari@sshhzlaw.com*
501 W. Broadway, Suite 800
San Diego, CA 92101
Telephone: (619) 400-4990

PAUL L. HOFFMAN (71244)
*hoffpaul@aol.com*
JOHN C. WASHINGTON (315991)
*jwashington@sshhzlaw.com*
200 Pier Avenue, #226
Hermosa Beach, CA 90245
Telephone: (310) 396-0731

CATHERINE E. SWEETSER (271142)
*csweetser@sshhzlaw.com*
9415 Culver Blvd, #115
Culver City, CA 90232
Telephone: (310) 396-0731

*Attorneys for Plaintiff and the Proposed Class.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORI MYERS, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>    v.<br><br>STARBUCKS CORPORATION, MARS WRIGLEY CONFECTIONERY US, LLC; THE QUAKER OATS COMPANY; and DOES 1-10, inclusive,<br><br>          Defendants. | Case No.: 5:20-cv-00335-JWH-SHK<br><br>**NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT** |

**TO THE HONORABLE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Notice is hereby given that Lori Myers, individually and on behalf of all others similarly situated, Plaintiffs in the above named case, hereby appeal to the United States Court of Appeals for the Ninth Circuit, from an Order dismissing the action against defendants Mars Wrigley Confectionery US, LLC ("Mars") and The Quaker Oats Company ("Quaker Oats") with prejudice entered in this action on the 5th day of May, 2021, which is attached hereto as Exhibit A, and all orders dismissing the action against Mars and Quaker Oats without prejudice prior to that Order.

The dismissal of all defendants who had been served in the action did not occur until September 9, 2022, when Ms. Myers and defendant Starbucks Corporation filed a stipulated dismissal of the claims against Starbucks Corporation only pursuant to Federal Rules of Civil Procedure 41(a)(1)(A)(ii).  Thereafter, a Judgment in accordance with Rule 58 of the Federal Rules of Civil Procedure was entered in this action on September 30, 2022, which is attached hereto as Exhibit B, and thus this Notice of Appeal is timely filed.

Pursuant to Ninth Circuit Rule 3-2, a Representation Statement which identifies the parties and their counsel is attached hereto as Exhibit C.

Respectfully submitted,

Date: October 5, 2022

**SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES, LLP**

By: /s/ *Helen I. Zeldes*
Helen I. Zeldes
Joshua A. Fields
Aya Dardari
Paul Hoffman
Catherine Sweetser
John Washington

*Attorneys for Plaintiff, LORI MYERS, individually and on behalf of all others similarly situated.*

EXHIBIT A

1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11  LORI MYERS, an individual, on behalf
    of herself and all others similarly
12  situated,

13          Plaintiff,

14      v.

15  STARBUCKS CORPORATION, a
    Washington Corporation;
16  MARS WRIGLEY
    CONFECTIONERY US, LLC, a
17  Delaware Corporation;
    THE QUAKER OATS COMPANY, a
18  New Jersey Corporation; and
    DOES 1-10, inclusive,
19
20          Defendants.

Case No. 5:20-cv-00335-JWH-SHKx

**ORDER GRANTING MOTION OF
DEFENDANT MARS TO DISMISS
[ECF No. 67]; GRANTING
MOTION OF DEFENDANT
QUAKER OATS TO DISMISS [ECF
No. 69]; AND DENYING MOTION
OF DEFENDANT STARBUCKS
TO DISMISS [ECF No. 70]**

21
22
23
24
25
26
27
28

Before the Court are three motions to dismiss the operative complaint[1] under Rule 12(b)(6) of the Federal Rule of Civil Procedure filed by Defendants Mars Wrigley Confectionery US, LLC; The Quaker Oats Company; and Starbucks Corporation, respectively.[2]  The Court finds the three Motions appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering all papers filed in support of and in opposition to the Motions, for the reasons set forth below, the Court **GRANTS** the Mars Motion, **GRANTS** the Quaker Oats Motion, and **DENIES** the Starbucks Motion.

## I.  BACKGROUND

On February 19, 2020, Plaintiff Lori Myers filed a complaint against Mars, Quaker Oats, and Starbucks.[3]  On May 7, 2020, Myers filed a First Amended Complaint against all Defendants.[4]  On July 29, 2020, the Court dismissed Myers' First Amended Complaint with leave to amend.[5]  On August 12, 2020, Myers filed the Second Amended Complaint, asserting two claims, each against all Defendants:  (1) Unfair and Deceptive Acts and Practices in Violation of the California Consumers Legal Remedies Act ("CLRA"); and (2) Violation of California's Unfair Competition Law ("UCL").[6]  All three Defendants moved to dismiss on September 4, 2020.[7]  Myers opposed all three

---

[1]     Pl.'s Second Am. Compl. (the "Second Amended Complaint") [ECF No. 64].

[2]     Def. Mars Wrigley Confectionery US, LLC's Mot. to Dismiss (the "Mars Motion") [ECF No. 67]; Def. The Quaker Oats Company's Mot. to Dismiss (the "Quaker Oats Motion") [ECF No. 69]; Def. Starbucks Corporation's Mot. to Dismiss (the "Starbucks Motion") [ECF No. 70] (collectively, the "Motions").

[3]     Pl.'s Compl. [ECF No. 1].

[4]     Pl.'s First Am. Compl. (the "First Amended Complaint") [ECF No. 31].

[5]     Order Granting Defs.' Mots. to Dismiss First Am. Compl. (the "FAC MTD Order") (Judge Cormac J. Carney, presiding) [ECF No. 63].

[6]     *See generally* Second Amended Complaint.

[7]     *See generally* Mars Motion, Quaker Motion, and Starbucks Motion.

Motions on September 28, 2020.[8]  All three Defendants replied in support of their respective Motions on October 12, 2020.[9]

On November 16, 2020, this Court ordered Myers to file a redlined copy of the Second Amended Complaint, showing the revisions that she made to the First Amended Complaint.[10]  Myers complied on November 23, 2020.[11]

## II.  FACTUAL ALLEGATIONS

Myers alleges the following facts, which the Court assumes to be true for the purposes of these Motions.  *See, e.g.*, *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996) (on motion to dismiss for failure to state a claim, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party").

Child slaves produce most of the cocoa that Americans consume.[12]  Some two million enslaved children labor in back-breaking, gut-wrenching conditions in West Africa.[13]  These children are kidnapped, trafficked, beaten, imprisoned, starved, forced to perform grueling labor and to handle toxic chemicals, and denied an education.[14]  Worse, these incidents of child slavery are increasing.[15]

---

[8]    Pl.'s Opp'n to Quaker Motion (the "Quaker Oats Opposition") [ECF No. 73]; Pl.'s Opp'n to Starbucks Motion (the "Starbucks Opposition") [ECF No. 74]; Pl.'s Opp'n to Mars Motion (the "Mars Opposition") [ECF No. 75].

[9]    Def. Starbucks' Resp. in Supp. of Starbucks Motion (the "Starbucks Reply") [ECF No. 79]; Def. Mars' Reply in Supp. of Mars Motion (the "Mars Reply") [ECF No. 80]; Def. Quaker Oats' Reply in Supp. of Quaker Motion (the "Quaker Oats Reply") [ECF No. 81].

[10]    Order for Supp. Material [ECF No. 88].

[11]    Pl.'s Notice of Revisions to Compl. (the "Redlined Second Amended Complaint") [ECF No. 89].

[12]    Second Amended Complaint ¶ 25.

[13]    *Id.* ¶ 2.

[14]    *Id.* ¶¶ 19 & 22.

[15]    *Id.* ¶ 20.

Cocoa production also drives a "rainforest disaster"—deforestation—in the Ivory Coast.[16]

Consumers increasingly demand chocolate that destroys neither the rainforest nor the lives of millions of children.[17]  But the cocoa supply chain makes detecting this destruction difficult: small farms sell to intermediaries, who mix together beans from many farmers to sell to grinders or traders and then to manufacturers.[18]  Chocolate is therefore often untraceable.  Nonetheless, some companies have traced their cocoa from bean to chocolate bar and have eliminated child slavery from their supply chains.[19]  However, the World Cocoa Foundation has conceded that it cannot eradicate child labor in cocoa production by 2025.[20]

Defendants are all U.S. corporations that sell chocolate.[21]  Defendants advertise their cocoa as humanely produced.  For its part, Mars boasts on the back of its Dove Dark Chocolate products that "[w]e buy cocoa from Rainforest Alliance Certified™ farms, traceable from the farms into our factory," and Mars displays on its packaging the seal of Rainforest Alliance Certification, "a third-party certifier which holds itself out as the benchmark for the sustainable production of cocoa."[22]  However, "Mars can, at best, trace only 24% of its cocoa back to farms," because the ethically sourced beans are intermingled with slave-produced beans at its factories.[23]

---

[16]     *Id.* ¶ 2.
[17]     *Id.* ¶ 6.
[18]     *Id.* ¶ 24.
[19]     *Id.* ¶ 19.
[20]     *Id.* ¶ 26.
[21]     *Id.* ¶¶ 16-18.
[22]     *Id.* ¶¶ 4, 42, & 46.
[23]     *Id.* ¶¶ 44 & 45.

Quaker Oats claims that its Chocolate Chip Chewy Bars "support sustainably sourced cocoa through [the non-profit entity] Cocoa Horizons."[24] However, the Chocolate Chip Chewy Bars are themselves not sustainably sourced.[25]  Only 26% of the farms from which Cocoa Horizons sources its cocoa have programs to prevent child labor.[26]

Starbucks labels its Hot Cocoa Mix as "made with ethically sourced cocoa" and administers an internal certification program known as "COCOA."[27]  Nevertheless, Starbucks "is fully aware that the farms it sources its cocoa from use child and slave labor."[28]

Myers would like to consume cocoa that is ***not*** produced by child slaves.[29] In or around December 2019 and on other occasions, Myers purchased Starbucks' Hot Cocoa, Mars' Dove Dark Chocolate, and Quaker Oats' Chocolate Chip Chewy Bars, believing them to be slavery-free because of Defendants' packaging claims.[30]  She would like to purchase Defendants' products in the future, but she no longer trusts the accuracy of their advertising.[31]

### III.  LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires a "short and plain statement of the claim showing that a pleader is

---

[24]     *Id.* ¶¶ 49 & 51.

[25]     *Id.* ¶ 50.

[26]     *Id.* ¶ 53.

[27]     *Id.* ¶¶ 3, 14, 36, & 37.

[28]     *Id.* ¶¶ 33 & 38.

[29]     *Id.* ¶ 15.

[30]     *Id.* ¶ 14.

[31]     *Id.* ¶ 15.

1  entitled to relief," in order to give the defendant "fair notice of what the claim is

2  and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S.

3  544, 555 (2007).  When evaluating a Rule 12(b)(6) motion, a court must accept

4  all material allegations in the complaint—as well as any reasonable inferences to

5  be drawn from them—as true and construe them in the light most favorable to

6  the non-moving party.  *See Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir.

7  2005).

8        "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does

9  not need detailed factual allegations, a plaintiff's obligation to provide the

10  'grounds' of his 'entitlement to relief' requires more than labels and

11  conclusions, and a formulaic recitation of the elements of a cause of action will

12  not do." *Twombly*, 550 U.S. at 555 (citations omitted).  Rather, the allegations in

13  the complaint "must be enough to raise a right to relief above the speculative

14  level." *Id.*

15        To survive a motion to dismiss, a plaintiff must allege "enough facts to

16  state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570;

17  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  "The plausibility

18  standard is not akin to a 'probability requirement,' but it asks for more than a

19  sheer possibility that a defendant has acted unlawfully.  Where a complaint

20  pleads facts that are 'merely consistent with' a defendant's liability, it 'stops

21  short of the line between possibility and plausibility of entitlement to relief.'"

22  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  The Ninth Circuit

23  has clarified that (1) a complaint must "contain sufficient allegations of

24  underlying facts to give fair notice and to enable the opposing party to defend

25  itself effectively," and (2) "the factual allegations that are taken as true must

26  plausibly suggest an entitlement to relief, such that it is not unfair to require the

27  opposing party to be subjected to the expense of discovery and continued

28  litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

# IV. **DISCUSSION**

Myers alleges that Defendants violated the following CLRA provisions: Cal. Civ. Code §§ 1770(a)(2), (a)(3), (a)(5), (a)(7), & (a)(9), all of which describe proscribed "unfair or deceptive acts."[32] She alleges that Defendants' practices are "unlawful" under the UCL because they violate the CLRA and are "unfair" because they deceive consumers.[33] Cal. Bus. & Prof. Code § 17200.

Myers alleges that Defendants made affirmative misrepresentations about their products in violation of the UCL and CLRA.[34] Because these claims are grounded in fraud, Myers must satisfy the heightened pleading requirements of Rule 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). *See Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997), *as modified* (July 30, 1997) (misrepresentation can constitute fraud); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009) (CLRA and UCL claims "grounded in fraud" must meet heightened pleading standard of Rule 9(b): "articulate the who, what, when, where, and how of the misconduct alleged").

Under the CLRA, Myers must allege conduct "likely to mislead a reasonable consumer." *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 680 (2006), *as modified on denial of reh'g* (Jan. 31, 2006). "Because the reasonable consumer inquiry is an objective standard, claims may be dismissed as a matter of law where an alleged statement in context is such that no reasonable consumer could be misled in the manner claimed by the plaintiff." *Rugg v. Johnson & Johnson*, 2018 WL 3023493, at *3 (N.D. Cal. June 18, 2018) (alterations omitted). The crux of Myers' claims, then, is that each Defendant has made a misleading or deceptive statement.

---

[32] Second Amended Complaint ¶¶ 69-80.

[33] *Id.* ¶¶ 81-89.

[34] *Id.* ¶¶ 9 & 10.

## A.   **Mars' Motion to Dismiss**

Myers objects to two parts of the Mars packaging: the Rainforest Alliance seal on the front and the statement that Mars buys cocoa "traceable from farms into our factory" on the back.

The Court previously dismissed Myers' claim that the Rainforest Alliance seal amounted to an affirmative misrepresentation by Mars, finding that Myers failed to "identify a specific, affirmative misrepresentation."[35]  Myers' Second Amended Complaint does not raise any new alleged misrepresentations by Mars in connection with the Rainforest Alliance seal.  The Court therefore finds that Myers has not sufficiently pleaded any claims concerning the Rainforest Alliance seal.

The Court also previously found that Myers failed to allege specific facts showing that the description of Mars cocoa as "traceable from the farms into our factory" was false or misleading.[36]  Myers alleged that only 24% of Mars' chocolate is traceable, but the Court found that this allegation was not inconsistent with Mars' representation that it buys "traceable" cocoa for its Dove dark chocolate bars (and untraceable cocoa for its other products).[37]

Myers sought to cure these deficiencies by explaining that Mars intermingles its beans and therefore cannot trace the beans that become Dove Dark Chocolate.[38]  In other words, despite Mars' claim that the traceable cocoa becomes Dove Dark Chocolate, "Mars abandons tracing or segregating the beans while making the products, and . . . there is no meaningful difference between the products labeled as traceable and those that are not."[39]

---

[35]    FAC MTD Order at 11:2-3.

[36]    *Id.* at 11:10-28.

[37]    *Id.*

[38]    Redlined Second Amended Complaint ¶ 45.

[39]    *Id.* ¶ 48.

Unfortunately for Myers, Mars' statement is carefully worded. Mars claims that it buys beans "traceable from the farms into our factories"—not that it buys *only* traceable beans. Myers admits that Mars may be able to trace as much as 24% of its beans. As far as Myers' Second Amended Complaint goes, then, Mars' claim is technically true: Mars *does* buy traceable beans. It is just that Mars may also buy nontraceable beans—a fact that Mars, understandably, declines to advertise. But Mars has not affirmatively misrepresented its purchases. Myers' intermingling theory similarly fails. Mars claims that it buys traceable beans—*not* that the specific product that Myers purchased contained those traceable beans. Myers does not allege facts sufficient to show that her mistaken assumption that Dove Dark Chocolate specifically contained traceable beans arose from an affirmative misrepresentation on the part of Mars.

Myers alleges that whether a reasonable consumer would be deceived by this packaging is a factual question inappropriate for a Rule 12(b)(6) motion to dismiss.[40] For that to be true, however, she must allege facts sufficient to show that a reasonable consumer would read Mars' packaging to mean the opposite of what it says. This she does not do.

The Court therefore **GRANTS** Mars' Motion to Dismiss. Because Myers has already had an opportunity to cure her defective pleading, and has been unable to do so, the Court **DISMISSES** the Second Amended Complaint with respect to Defendant Mars, **without leave to amend**.

## B.    Quaker Oats' Motion to Dismiss

Myers claims that Quaker Oats makes one affirmative misrepresentation on its Chocolate Chip Chewy Bars: that Quaker Oats "supports sustainably sourced cocoa through Cocoa Horizons."[41] The Court previously held that this

---

[40]    Mars Opposition at 7:22-9:2.

[41]    Second Amended Complaint ¶ 49.

1    claim was not misleading because, as Myers conceded, Quaker Oats **does** partner

2    with Cocoa Horizons and Cocoa Horizons **does** work to promote sustainable and

3    ethical practices.[42]  Myers argued that the labelling was nevertheless misleading

4    because Cocoa Horizons was unable to achieve meaningful results.[43]  The Court

5    found, however, that because Quaker Oats advertised "support" for sustainably

6    sourced cocoa, not any specific result, the label was not misleading.[44]

7         In her Second Amended Complaint, Myers does not allege any new

8    material facts to cure this deficiency.  She merely rewords her allegations that

9    Cocoa Horizons insufficiently sources sustainable cocoa and that a reasonable

10   consumer would believe Quaker Oats' Chocolate Chip Chewy Bars to contain

11   sustainably sourced cocoa based upon the product labeling.[45]  Her Second

12   Amended Complaint still alleges that the product advertises support for

13   sustainably sourced cocoa and that Cocoa Horizons does just that.  The Second

14   Amended Complaint makes no allegations that Quaker Oats anywhere promises

15   certain results.

16        The Court therefore **GRANTS** Quaker Oats' Motion to Dismiss.  Again,

17   because Myers has already had an opportunity to cure her defective pleading,

18   and has been unable to do so, the Court **DISMISSES** the Second Amended

19   Complaint with respect to Defendant Quaker Oats, **without leave to amend**.

20   **C.    Starbucks' Motion to Dismiss**

21        **1.    Failure to Plead Misleading Statements**

22        Starbucks labels its hot chocolate as "made with ethically sourced

23   cocoa."[46]  Myers challenges this label as deceptive to a reasonable consumer.

24

25   _____

     [42]    FAC MTD Order at 9:5-12.

26   [43]    *Id.*

     [44]    *Id.*

27   [45]    *See generally* Redlined Second Amended Complaint.

28   [46]    Second Amended Complaint ¶ 14.

Myers' First Amended Complaint alleged that this label was deceptive because Starbucks relies on its COCOA verification program to certify its cocoa as ethical and that this program is inadequate.[47]  The Court previously rejected that argument, finding that Myers had not pleaded facts sufficient to allege that the COCOA program was "a sham."[48]  The Court additionally rejected Myers' contentions that Starbucks' environmental processes made its cocoa unethical, finding that "'ethically sourced' is generally understood to refer to labor practices."[49]

Rather than dig up additional facts about the COCOA program or Starbucks' environmental impact, Myers has retooled her argument: because "*no company*, including Starbucks," can claim slave-free chocolate, a reasonable consumer would be misled by chocolate advertised as "ethically sourced."[50]

This is a bold argument, and one that the Court previously regarded with significant skepticism.  The Court previously suggested that Myers' "generalized allegations about industry-wide problems . . . [were] insufficient to state a claim for affirmative misrepresentations under the UCL and CLRA."[51]  But it does not necessarily follow that Myers presents a losing argument.  Myers has alleged additional facts in her Second Amended Complaint, not previously before the Court, alleging that this claim might matter to a reasonable consumer.[52]

Starbucks opposes this claim on the grounds that this is a so-called substantiation argument—that is, that Myers has filed this action in an effort to

---

[47]    Redlined Second Amended Complaint at 15:4-16:2.

[48]    FAC MTD Order at 13:20-21.

[49]    *Id.* at 14:9.

[50]    Starbucks Opposition at 8:14-19 (emphasis in original).

[51]    FAC MTD Order at 13:21-14:1.

[52]    Second Amended Complaint ¶ 6-7.

force Starbucks to substantiate its advertised claims.[53]  Starbucks notes that there is no private cause of action for substantiation claims under the CLRA or the UCL in California.[54]  Starbucks is correct, as far as *Kwan* goes.  However, *Kwan* does not save Starbucks from a false advertising claim entirely; rather, *Kwan* merely places the burden of proof on Myers.  *Kwan* held that "private plaintiffs, unlike prosecuting authorities, do not have the power to require defendants to substantiate their advertising claims, and that private plaintiffs, like prosecuting authorities, have the burden of proving that the marketing claims are false or misleading."  *Id.*  In other words, under *Kwan*, Myers must prove that Starbucks' claims are false or misleading; she may not simply allege that they are so and sit back while Starbucks scrambles to substantiate its claims.

Myers has alleged sufficient facts to clear this hurdle at the Rule 12(b)(6) stage.  Myers has alleged that child slavery is endemic to the chocolate trade; that it is difficult or impossible to produce chocolate without labor from child slaves; that a reasonable consumer is sensitive to these concerns and would consider ethically made chocolate and reliance on child slavery mutually exclusive; and that Starbucks claims that its hot chocolate is made from ethically sourced cocoa.  Moreover, Myers satisfies Rule 9(b)'s particularity requirement by identifying the specific misleading statement and the relevant consumer (*i.e.*, herself).  And finally, because Myers states a claim under the CLRA, she also states a claim under the UCL.

### 2. <u>Injunctive Standing</u>

Starbucks argues that Myers has not established standing for injunctive relief.[55]  In the Ninth Circuit,

---

[53]     Starbucks Motion at 13:14-15.

[54]     *Id.* at 13:10-13 (citing *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1095-1096 (9th Cir. 2017)).

[55]     Starbucks Motion at 16:6-18:4.

a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of future harm . . . . In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to.

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir.), *cert. denied*, 139 S. Ct. 640 (2018) (citations omitted).

The Court previously dismissed the injunctive claims of Myers' First Amended Complaint under this standard, finding that Myers had not "alleged any . . . interest in purchasing Defendants' products in the future . . . . To state a claim for injunctive relief, Plaintiff must allege a likelihood of future harm from Defendants' deceptive labelling practices."[56] After that ruling, Myers added the following language to the Second Amended Complaint:

Plaintiff would like to buy Defendants' products in the future if and when they were produced as advertised by Quaker and Starbucks, and if and when the products are actually traceable to ethical farms as advertised by Mars. She does not currently intend to do so because she cannot rely on the accuracy of the representations addressed below in deciding whether or not she should purchase Defendants' products, and furthermore, cannot independently or easily determine whether the particular products

---

[56] FAC MTD Order at 6:7-13.

1    at issue are or are not made by enslaved children, actually traceable,

2    or ecologically devastating.[57]

3        Starbucks argues that under *Lanovaz v. Twinings N. Am., Inc.*, 726

4    F. Appx. 590, 591 (9th Cir. 2018), Myers has not alleged a sufficiently concrete

5    plan to purchase chocolate in the future.[58]  But *Lanovaz* is inapposite; there, the

6    Ninth Circuit found that a plaintiff in a false-advertising lawsuit did not have

7    injunctive standing where she admitted, at her deposition, that she would not

8    purchase the defendant's products again, "even if the company removed the

9    allegedly misleading labels."  *Id.* at 591.  By contrast, here, Myers has not denied

10    that she will buy Starbucks' products again; she has alleged the exact opposite.

11    The Court previously required Myers to plead these exact allegations in order to

12    establish injunctive standing.  She has satisfied that requirement.

13        **3.**    **Nationwide Class Allegations**

14        Finally, Starbucks argues that the Court cannot certify a class for claims

15    based upon purchases made outside of California.[59]  Myers opposes this

16    argument as premature, pending a motion for class certification.[60]  The Court

17    agrees.  This is a nuanced issue better decided after full briefing and with the

18    benefit of a certain amount of class discovery.

19        The Court therefore **DENIES** Starbucks' Motion to Dismiss.

20                    **V.**  **CONCLUSION**

21        For the reasons described above, the Court hereby **ORDERS** as follows:

22        1.    Mars' Motion to Dismiss is **GRANTED**.  Myers' claims against

23    Mars are **DISMISSED**, **with prejudice**.

24

25    ---

[57]    Second Amended Complaint ¶ 15; *see* Redlined Second Amended

26    Complaint at ¶ 15 (showing additions to First Amended Complaint).

27    [58]    Starbucks Motion at 16:17-17:19 (citing *Lanovaz*, 726 F. Appx. at 591).

[59]    Starbucks Motion at 18:5-19:18.

28    [60]    Starbucks Opposition at 24:7-21.

2.     Quaker Oats' Motion to Dismiss is **GRANTED**.  Myers' claims against Quaker Oats are **DISMISSED**, **with prejudice**.

3.     Starbucks' Motion to Dismiss is **DENIED**.  Starbucks is **DIRECTED** to file its Answer to Myers' Second Amended Complaint on or before May 19, 2021.

**IT IS SO ORDERED.**

Dated: May 5, 2021

John W. Holcomb
UNITED STATES DISTRICT JUDGE

EXHIBIT B

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORI MYERS, individually and on behalf of all others similarly situated, | Case No. 5:20-cv-00335-JWH-SHK |
| Plaintiff, | **JUDGMENT** |
| v. | |
| STARBUCKS CORPORATION; MARS WRIGLEY CONFECTIONERY US, LLC; THE QUAKER OATS COMPANY; and, Does 1-10, inclusive, | |
| Defendants. | |

Pursuant to the "Order Granting Motion of Defendant Mars to Dismiss [ECF No. 67]; Granting Motion of Defendant Quaker Oats to Dismiss [ECF No. 69]; and Denying Motion of Defendant Starbucks to Dismiss [ECF No. 70]" entered on or about May 5, 2021 (the "Rule 12(b)(6) Order"), and pursuant to the "Stipulation of Dismissal Against Starbucks Corporation" filed on or about September 9, 2022, and in accordance with Rule 58 of the Federal Rules of Civil Procedure,

It is hereby **ORDERED**, **ADJUDGED**, and **DECREED** as follows:

1. This Court possesses subject matter jurisdiction over the above-captioned action pursuant to 28 U.S.C. § 1332(d).

2. The claims of Plaintiff Lori Myers against Defendant Mars Wrigley Confectionery US, LLC and Defendant The Quaker Oats Company were **DISMISSED with prejudice** on or about May 5, 2021, pursuant to the Rule 12(b)(6) Order.

3. The claims of Plaintiff Lori Myers against Defendant Starbucks Corporation were **DISMISSED with prejudice** on or about September 9, 2022, pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure.

4. Defendants Does 1 through 10 are **DISMISSED**.

5. Other than potential post-judgment remedies (including those provided in Rule 54(d) of the Federal Rules of Civil Procedure), to the extent that any party requests any other form of relief, such request is **DENIED**.

**IT IS SO ORDERED.**

Dated: September 30, 2022

John W. Holcomb
UNITED STATES DISTRICT JUDGE

EXHIBIT C

*Myers v. Starbucks Corporation, et al.*
**Representation Statement (Ninth Circuit Rule 3-2)**

**Counsel for Plaintiffs-Appellants Lori Myers, individually and on behalf of all
others similarly situated:**

**SCHONBRUN SEPLOW HARRIS
HOFFMAN & ZELDES, LLP**
HELEN I. ZELDES (SBN 220051)
*hzeldes@sshhzlaw.com*
JOSHUA A. FIELDS (SBN 242938)
*jfields@sshhzlaw.com*
AYA DARDARI (SBN 344039)
*adardari@sshhzlaw.com*
501 W. Broadway, Suite 800
San Diego, CA 92101
Telephone: (619) 400-4990

PAUL L. HOFFMAN (SBN 71244)
*hoffpaul@aol.com*
JOHN C. WASHINGTON (SBN 315991)
*jwashington@sshhzlaw.com*
200 Pier Avenue, #226
Hermosa Beach, CA 90245
Telephone: (310) 396-0731

**UCLA LAW CLINICS**
Catherine Sweetser (SBN 271142)
*sweetser@law.ucla.edu*
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 267-5068

**Counsel for Defendant Appellee Mars Wrigley Confectionery US, LLC:**

**WILLIAMS & CONNOLLY LLP**
David A. Forkner (pro hac vice)
David M. Horniak (State Bar No. 268441)
Youlin Yuan (pro hac vice)
725 Twelfth Street
N.W. Washington, DC 20005
Telephone: (202) 434-5000 / Facsimile: (202) 434-5029
E-mail: dforkner@wc.com
E-mail: dhorniak@wc.com
E-mail: yyuan@wc.com

**FREEMAN MATHIS & GARY, LLP**
John K. Rubiner (State Bar No. 155208)
550 South Hope Street, Suite 2200
Los Angeles, CA 90071
Telephone: (213) 615-7060
E-mail: jrubiner@fmglaw.com

**Counsel for Defendant-Appellee The Quaker Oats Company:**

**GIBSON, DUNN & CRUTCHER LLP**
ANDREW S. TULUMELLO, SBN 196484
atulumello@gibsondunn.com
ARIANNA M. SCAVETTI (pro hac vice)
ascavetti@gibsondunn.com
1050 Connecticut Avenue
N.W. Washington, DC 20036
Telephone: 202.955.8500 / Facsimile: 202.467.0539

PERLETTE JURA, SBN 242332
pjura@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000 / Facsimile: 213.229.7520